IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DIERDRE LEANE and IPNAV, LLC, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. <u>3:20-cv-03097</u> |
| UNIFIEDONLINE, INC. and | § | |
| CHANBOND, LLC, | § | |
| | § | |
| Defendants. | § | |

## <u>NOTICE OF REMOVAL</u>

Defendants UnifiedOnline, Inc. and ChanBond, LLC (collectively, "Defendants"), pursuant to 28 U.S.C. § 1441(a) and (b), submit this Notice of Removal to remove the civil action now pending in the District Court of Dallas County, Texas, 298th Judicial District.  In support of this Notice of Removal, Defendants state as follows:

1.     UnifiedOnline, Inc. ("UnifiedOnline") and ChanBond, LLC ("ChanBond") are the only defendants in an injunctive relief action filed by Plaintiffs Dierdre Leane ("Leane") and IPNav, LLC ("IPNav") (collectively "Plaintiffs") in the District Court of Dallas County, Texas, 298th Judicial District, styled *Dierdre Lane, et al. v. Unified Online, Inc., et al.*, Cause No. DC-20-14152.

2.     On September 29, 2020, Plaintiffs obtained an *ex parte* Temporary Restraining Order against Defendants in the state court action. *See* Ex. 4.  Plaintiffs effected service of the Temporary Restraining Order and the state court suit on October 2, 2020. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

3.      This Notice of Removal is filed pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, which provide for removal of civil actions concerning controversies between citizens of different states.  Removal is proper under 28 U.S.C. § 1332(a)(1), because there is complete diversity of citizenship between the parties and the requisite amount-in-controversy exists.

### COMPLETE DIVERSITY EXISTS

4.      Plaintiffs are citizens of Texas for diversity jurisdiction purposes.

5.      Plaintiff Leane is a foreign national and lawful permanent resident who resides in Texas.  See Ex. 2 at ¶ 3; *see also* 28 U.S.C. § 1332(a)(2) (indicating that a foreign national who has lawful permanent residence is treated as citizen of the State in which she is domiciled).

6.      Plaintiff IPNav is a limited liability company organized under the laws of the State of Texas, and Leane is the sole member of IPNav.  *See id.* at ¶ 4.  For diversity jurisdiction purposes, the citizenship of IPNav is determined by the citizenship of its members.  *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080-81 (5th Cir. 2008).  Therefore, IPNav also is a citizen of Texas.

7.      Defendant UnifiedOnline is a Delaware corporation with its principal place of business in Fairfax, Virginia.  *See id.* at ¶ 5.  Therefore, UnifiedOnline is a citizen of Delaware and Virginia.

8.      Defendant ChanBond is a limited liability company organized under the laws of the State of Delaware, and UnifiedOnline is the sole member of ChanBond.  *See id.* at ¶ 6.  Therefore, ChandBond is a citizen of Delaware and Virginia. *See Harvey*, 542 F.3d at 1080-81.

9.      Complete diversity exists between Plaintiffs and Defendants, and therefore, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

**THE REQUISITE AMOUNT-IN-CONTROVERSY EXISTS**

10.     Plaintiffs seek injunctive relief, *see* Ex. 2 at ¶¶ 34-49, and thus, "the amount in controversy is measured by the value of the object of the litigation." *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013) (marks and citation omitted).  Plaintiffs seek to enjoin Defendants from taking any action, including any settlement of pending patent infringement lawsuits filed by Defendants in Delaware federal court, that would allegedly violate Leane's alleged contractual right to preclude an assignment of interests in the patents without her prior consent. Based on Plaintiffs' allegations, the amount in controversy arising from the requested injunctive relief clearly exceeds $75,000, exclusive of interest and costs.

11.     Plaintiffs allege that Defendants' settlement of litigation, or other conduct with respect to the patents, without Leane's consent would cause Plaintiffs to "face the loss of incalculable millions of dollars."  Ex 2 at ¶ 44.  Further, in the alternative to the claim for injunctive relief, Plaintiffs alleged that "in its alternative causes of action Plaintiffs would seek monetary relief in excess of $1,000,000.00 including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys' fees." Id.  at ¶ 2.

12.     Therefore, on the face of Plaintiffs' petition, the amount in controversy exceeds $75,000, exclusive of interests and costs, and diversity jurisdiction exists under 28 U.S.C. § 1332(a).

**COMPLIANCE WITH REMOVAL PROCEDURES**

13.     This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) because it is filed prior to or, alternatively, within thirty days of, the service of process on Defendants.

14.     Pursuant to 28 U.S.C. § 1441(a), the United States District Court for the Northern District of Texas, Dallas Division, is the federal district court for the district embracing the place where the action is pending.

15.     Defendants are serving written notice of the filing of this Notice of Removal upon Plaintiffs and will cause a copy of this Notice to be filed with the Court Clerk of the District Court of Dallas County, State of Texas, in accordance with 28 U.S.C. § 1446(d).

16.     All documents to be attached to a notice of removal pursuant to 28 U.S.C. § 1446(a) and Local Rule 81.1 are attached hereto as Exhibits 1 – 23.

17.     Defendants reserve the right to amend or supplement this Notice of Removal.

**WHEREFORE**, Defendants remove to this Court the above-referenced action now pending in the District Court of Dallas County, Texas, 298th Judicial District.

Dated:  October 9, 2020

Respectfully submitted,

CARTER ARNETT PLLC

By:    */s/ Linda R. Stahl*
    E. Leon Carter
    Texas Bar No. 03914300
    lcarter@carterarnett.com
    Courtney Barksdale Perez
    Texas Bar No. 24061135
    cperez@carterarnett.com
    Linda R. Stahl
    Texas Bar No. 00798525
    lstahl@carterarnett.com
    Scott W. Breedlove
    Texas Bar No. 00790361
    sbreedlove@carterarnett.com
    Nathan Cox *(admission pending)*
    Texas Bar No. 24105751
    ncox@carterarnett.com

8150 N. Central Expressway, Suite 500
Dallas, Texas 75206
Telephone: (214) 550-8188
Facsimile: (214) 550-8185

ATTORNEYS FOR DEFENDANTS
UNIFIEDONLINE, INC. and CHANBOND, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been filed with the Clerk of Court using the Northern District of Texas CM/ECF System for filing and service on all counsel of record, in accordance with FED. R. CIV. P. 5(b)(2)(E), on October 9, 2020, as well as service by electronic mail.

BY E-SERVICE AND/OR ELECTRONIC MAIL

*/s/ Linda R. Stahl*
Linda R. Stahl

**EXHIBIT 1**

## Case Information

DC-20-14152 | DEIRDRE LEANE, et al vs. UNIFIEDONLINE, INC, et al

| Case Number | Court | Judicial Officer |
|---|---|---|
| DC-20-14152 | 298th District Court | TOBOLOWSKY, EMILY |
| File Date | Case Type | Case Status |
| 09/29/2020 | OTHER (CIVIL) | OPEN |

## Party

PLAINTIFF
LEANE, DEIRDRE

Address
6422 BRYAN PARKWAY
DALLAS TX 75214

Active Attorneys ▾
Lead Attorney
LEMOINE, J SEAN
Retained

PLAINTIFF
IPNAV, LLC

Address
6422 BRYAN PARKWAY
DALLAS TX 75214

Active Attorneys ▾
Lead Attorney
LEMOINE, J SEAN
Retained

DEFENDANT

UNIFIEDONLINE, INC

Address
SERVE REG AGENT, CORPORATION TRUST COMPANY, CORPORATION
1209 ORANGE STREET
WILMINGTON DE 19801

---

DEFENDANT
CHANBOND, LLC

Address
SERVE REG. AGENT, CORPORATION SERVICE COMPANY
251 LITTLE FALLS DRIVE
WILMINGTON DE 19808

## Bond

| Bond Type | Bond Number | Bond Amount | Current Bond Status |
|-----------|-------------|-------------|---------------------|
| TRO CASH BOND | | $5,000.00 | POSTED |

## Events and Hearings

09/29/2020 NEW CASE FILED (OCA) - CIVIL

09/29/2020 ORIGINAL PETITION ▾

ORIGINAL PETITION

09/29/2020 NON-SIGNED PROPOSED ORDER/JUDGMENT ▾

ORDER

Comment
TEMPORARY RESTRAINING ORDER

09/29/2020 ORDER - TEMPORARY RESTRAINING ORDER ▾

ORDER - TEMPORARY RESTRAINING ORDER

09/30/2020 BOND FILED

09/30/2020 REQUEST FOR SERVICE ▾

REQUEST FOR SERVICE

09/30/2020 ISSUE TRO AND NOTICE ▾

ISSUE TRO AND NOTICE

ISSUE TRO AND NOTICE

ISSUE TRO AND NOTICE

ISSUE TRO AND NOTICE

09/30/2020 ISSUE CITATION ▾

CITATION- CHANBOND LLC

CITATION- UNIFIEDONLINE INC

09/30/2020 MOTION - PRO HAC VICE ▾

MOTION PRO HAC VICE NON RESIDENT ATTORNEY-AKIVA COHEN-PLAINTIFF

Comment
NON RESIDENT ATTORNEY-AKIVA COHEN-PLAINTIFF

09/30/2020 MOTION - PRO HAC VICE ▾

MOTION PRO HAC VICE/SUPPORT NON RESIDENT ATTORNEY-AKIVA COHEN-PLAINTIFF

Comment
SUPPORT NON RESIDENT ATTORNEY-AKIVA COHEN-PLAINTIFF

09/30/2020 NON-SIGNED PROPOSED ORDER/JUDGMENT ▾

PROPOSED ORDER PRO HAC VICE/AKIVA COHEN

Comment
PROPOSED PRO HAC VICE/AKIVA COHEN

09/30/2020 TRUST RECEIPT ▾

TRUST RECEIPT

10/01/2020 TEMPORARY RESTRAINING ORDER▾

Served
10/02/2020

Anticipated Server
ESERVE

Anticipated Method
Actual Server
OUT OF STATE

Returned

10/05/2020
Comment
UNIFIEDONLINE INC

10/01/2020 TEMPORARY RESTRAINING ORDER▾

Served
10/02/2020

Anticipated Server
ESERVE

Anticipated Method
Actual Server
OUT OF STATE

Returned
10/05/2020
Comment
CHANBOND LLC

10/01/2020 NOTICE▾

Served
10/02/2020

Anticipated Server
ESERVE

Anticipated Method
Actual Server
OUT OF STATE

Returned
10/05/2020
Comment
UNIFIEDONLINE INC

10/01/2020 NOTICE▾

Served
10/02/2020

Anticipated Server
ESERVE

Anticipated Method
Actual Server
OUT OF STATE

Returned
10/05/2020
Comment
CHANBOND LLC

---

10/01/2020 CITATION ▼

Served
10/02/2020

Anticipated Server
ESERVE

Anticipated Method
Actual Server
OUT OF STATE

Returned
10/05/2020
Comment
UNIFIEDONLINE INC

---

10/01/2020 CITATION ▼

Served
10/02/2020

Anticipated Server
ESERVE

Anticipated Method
Actual Server
OUT OF STATE

Returned
10/05/2020
Comment

CHANBOND LLC

10/05/2020 RETURN OF SERVICE ▼

RETURN NOTICE TO SHOW CAUSE- UNIFIEDONLINE INC

Comment
RETURN NOTICE TO SHOW CAUSE- UNIFIEDONLINE INC

10/05/2020 RETURN OF SERVICE ▼

EXECUTED CITATION: UNIFIEDONLINE INC

Comment
EXECUTED CITATION: UNIFIEDONLINE INC

10/05/2020 RETURN OF SERVICE ▼

RETURN TEMPORARY RESTRAINING ORDER UNIFIEDONLINE INC

Comment
RETURN TEMPORARY RESTRAINING ORDER UNIFIEDONLINE INC

10/05/2020 RETURN OF SERVICE ▼

EXECUTED NOTICE: CHANBOND LLC

Comment
EXECUTED NOTICE: CHANBOND LLC

10/05/2020 RETURN OF SERVICE ▼

EXECUTED CITATION: CHANBOND LLC

Comment
EXECUTED CITATION: CHANBOND LLC

10/05/2020 RETURN OF SERVICE ▾

EXECUTED TEMPORARY RESTRAINING ORDER: CHANBOND LLC

Comment
EXECUTED TEMPORARY RESTRAINING ORDER: CHANBOND LLC

10/12/2020 Temporary Injunction ▾

ORIGINAL PETITION

ORDER

Judicial Officer
TOBOLOWSKY, EMILY

Hearing Time
9:00 AM

Comment
^OR BY REMOTE MEANS.

## Financial

LEANE, DEIRDRE
|  |  |
|---|---|
| Total Financial Assessment | $4.00 |
| Total Payments and Credits | $4.00 |

| 9/30/2020 | Transaction Assessment |  |  | $4.00 |
|---|---|---|---|---|
| 9/30/2020 | PAYMENT (CASE FEES) | Receipt # 60637-2020-DCLK | SPECIAL DELIVERY | ($4.00) |

IPNAV, LLC

| | Total Financial Assessment | | | $340.00 |
|---|---|---|---|---|
| | Total Payments and Credits | | | $340.00 |
| 9/29/2020 | Transaction Assessment | | | $292.00 |
| 9/29/2020 | CREDIT CARD - TEXFILE (DC) | Receipt # 60295-2020-DCLK | IPNAV, LLC | ($292.00) |
| 9/30/2020 | Transaction Assessment | | | $48.00 |
| 9/30/2020 | CREDIT CARD - TEXFILE (DC) | Receipt # 60639-2020-DCLK | IPNAV, LLC | ($48.00) |

## Documents

ORIGINAL PETITION

ORDER

ORDER - TEMPORARY RESTRAINING ORDER

REQUEST FOR SERVICE

MOTION PRO HAC VICE NON RESIDENT ATTORNEY-AKIVA COHEN-PLAINTIFF

MOTION PRO HAC VICE/SUPPORT NON RESIDENT ATTORNEY-AKIVA COHEN-PLAINTIFF

PROPOSED ORDER PRO HAC VICE/AKIVA COHEN

CITATION- CHANBOND LLC

CITATION- UNIFIEDONLINE INC

ISSUE TRO AND NOTICE

ISSUE TRO AND NOTICE

ISSUE TRO AND NOTICE

ISSUE TRO AND NOTICE

RETURN NOTICE TO SHOW CAUSE- UNIFIEDONLINE INC

EXECUTED CITATION: UNIFIEDONLINE INC

RETURN TEMPORARY RESTRAINING ORDER UNIFIEDONLINE INC

EXECUTED NOTICE: CHANBOND LLC

EXECUTED CITATION: CHANBOND LLC

EXECUTED TEMPORARY RESTRAINING ORDER: CHANBOND LLC

TRUST RECEIPT

FILED
9/29/2020 9:26 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Belinda Hernandez DEPUTY



DC-20-14152

**CAUSE NO. _____**

| | | |
|---|---|---|
| **DEIRDRE LEANE AND IPNav, LLC ,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | **DALLAS COUNTY, TEXAS** |
| **UNIFIEDONLINE, INC and** | § | |
| **CHANBOND, LLC,** | § | |
| | § | |
| **Defendants.** | § | M-298TH **JUDICIAL DISTRICT** |

---

### ORIGINAL VERIFIED PETITION AND EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF IN AID OF ARBITRATION

---

Plaintiffs Deirdre Leane and IPNav, LLC ("Plaintiffs") hereby brings this Original Verified Petition and Ex-Parte Application for Temporary Restraining Order and Injunctive Relief in Aid of Arbitration against Defendants UnifiedOnline, Inc. and ChanBond, LLC ("Defendants"), and would respectfully show the court as follows:

## I. INTRODUCTION

Consistent with Texas's commitment to freedom of contract, Texas has a policy of strongly protecting and enforcing anti-assignment provisions parties choose to include in their contracts. Plaintiff Deirdre Leane ("Ms. Leane") negotiated for and obtained this type of anti-assignment clause when she entered into the Interest Sale Agreement ("ISA") with Defendants Unified Online, Inc. ("Unified") and ChanBond, LLC ("ChanBond").

ChanBond owns patents and is actively engaged in litigation (and upon information and belief) settlement discussions concerning that litigation. The anti-assignment clause, Section 8.3 of the ISA, is designed to prevent ChanBond (or its sole member, Unified) from granting

---

**ORIGINAL VERIFIED PETITION AND EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF IN AID OF ARBITRATION**

PAGE 1

interests in the patents without Ms. Leane's approval, including by settling the litigations. ChanBond has expressly threatened to breach the anti-assignment provision by licensing certain patents without Ms. Leane's consent as part of a settlement, which could both torpedo the value that Plaintiffs are entitled to under their agreements with Defendants and moot the equitable relief of rescission of the ISA that Plaintiffs seek in arbitration. Under the circumstances, the Court should grant the requested *ex-parte* temporary restraining order to ensure that the subject matter of the ISA is not destroyed.

## II. BASIS FOR EX-PARTE REQUEST

As discussed below, the referenced patent litigations are trial-ready and Plaintiff Leane is personally aware that at least some defendants in those litigations, or their representatives, have made settlement offers, which would include licenses to the patents, that are unacceptable to her, but which, absent a restraining order, Defendants could accept at any time. Because notice of the arbitration and application for injunctive relief might trigger Defendants to accept such offers specifically to moot the relief sought by this application as well as the arbitration, Plaintiffs also seek an *ex parte* temporary restraining order in accordance with Dallas County Local Rule 2.02(b) restraining Defendants solely during the pendency of this application and until a temporary hearing can be expeditiously heard. The only harm to Defendants from such an *ex parte* order, if the Court ultimately determined (after a contested hearing) that a temporary restraining order or injunction was not warranted, would be the loss of the ability to settle pending that contested hearing. Further, such harm could be avoided by seeking consent from Ms. Leane.  As such, the Court should grant the requested temporary restraining order *ex parte*, to preserve the *status quo* pending a contested hearing on Plaintiffs' application for a temporary injunction.

### III. <u>NOTIFICATION OF COMPANION ARBITRATION FILING</u>

1.      Attached is the draft arbitration demand that Plaintiffs will file with the American Arbitration Association (the "Arbitration Demand") after determination of the *ex-parte* temporary restraining order request. Pursuant to Tex. Civ. Prac. & Rem. Code § 171.086(a)(3) and (b)[1] Plaintiffs seek a temporary restraining order and temporary injunction to aid in completion of the arbitration.[2]  Subsequent thereto, the case should be abated pending outcome of the arbitration.

### IV. <u>DISCOVERY PLAN AND RULE 47 COMPLIANCE</u>

2.      Plaintiffs intend to conduct discovery under Level 2 of Texas Rules of Civil Procedure. Further, in accordance with Rule 47 of the Texas Rules of Civil Procedure, Plaintiffs do not seek monetary relief based on its primary cause of action.  However, in its alternative causes of action Plaintiffs would seek monetary relief in excess of $1,000,000.00 including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys' fees. The damages sought are within the jurisdictional limits of the court.

---

[1] ("171.086.  ORDERS THAT MAY BE RENDERED.  (a) Before arbitration proceedings begin, in support of arbitration a party may file an application for a court order, including an order to: … ((3) restrain or enjoin: (A) the destruction of all or an essential part of the subject matter of the controversy; … (b) During the period an arbitration is pending before the arbitrators or at or after the conclusion of the arbitration, a party may file an application for a court order, including an order: (1)  that was referred to or that would serve a purpose referred to in Subsection (a) …"); *Senter Investments, L.L.C. v. Veerjee*, 358 S.W.3d 841, 845 (Tex. App.—Dallas 2012, no pet.) ("Among the orders a trial court has jurisdiction to render before or during an arbitration proceeding is an injunction in support of the arbitration. *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.086(a)(3), (b)(2) (allowing trial court to grant injunctions before or during arbitration proceedings and to enforce such orders); *Menna v. Romero*, 48 S.W.3d 247, 251 (Tex.App.-San Antonio 2001, pet. dism'd w.o.j.) (affirming temporary injunction, but reversing trial court's denial of motion to compel arbitration).").

[2] Attached hereto as Exhibit A is a true and correct copy of the draft Arbitration Demand. In the arbitration, Ms. Leane seeks recission of the ISA to restore her to ownership of ChanBond and control over the litigations. The requested injunctive relief is critical regardless of whether the arbitrators grant Ms. Leane recission; if Ms. Leane is granted recission, it will preserve the *status quo* and make such relief meaningful by preventing Defendants from settling ChanBond's claims on terms Ms. Leane would reject before Ms. Leane's control over ChanBond can be restored. If Ms. Leane is denied recission, and the ISA left in force, the injunction will preserve her rights under the ISA until they can be finally determined by the panel, preventing Defendants from mooting such rights by settling the litigations before the panel can rule that such a settlement requires Ms. Leane's consent.

---

**ORIGINAL VERIFIED PETITION AND EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF IN AID OF ARBITRATION**                                                                                   <span style="float:right">PAGE 3</span>

## V. **PARTIES**

3.        Plaintiff Deirdre Leane ("Ms. Leane") is a foreign national and lawful permanent resident of Texas, residing at 6422 Bryan Parkway, Dallas, TX 75214.

4.        Plaintiff IPNav, LLC ("IPNav") is a Texas limited liability company with a principal place of business located at 6422 Bryan Parkway, Dallas, TX 75214. Ms. Leane is the sole member of IPNav.

5.        Defendant Unified is a Delaware corporation with a principal place of business located at 4126 Leonard Drive, Fairfax, Virginia 22030. It may be served with service of process upon its registered agent, the Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, DE 19801, or upon William "Billy" Carter, its Chief Executive Officer, at 4309 Hoke LN, Greensboro, NC 27407 or wherever he may be found.

6.        Defendant ChanBond is a Delaware limited liability company, and upon information and belief, its sole member is Unified.  It may be served with service of process upon its registered agent, the Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808, or upon William "Billy" Carter, its Manager, at 4309 Hoke LN, Greensboro, NC 27407 or wherever he may be found.

## VI. **JURISDICTION AND VENUE**

7.        The Court has jurisdiction over this action by virtue of the relief sought herein and because the amount in controversy exceeds the minimum jurisdictional requirements of this Court. The Court has personal jurisdiction over both Defendants because they consented to litigation pursuant to forum selection clauses as further described herein.

8.        Venue is proper in Dallas County, Texas pursuant to Tex. Civ. Prac. & Rem. Code § 15.002(a)(4) and § 171.096, because Plaintiffs reside in Dallas County, Texas (at the time these causes of action accrued) whereas none of the Defendants reside in the State of Texas, and because

ChanBond contractually agreed that Dallas County would be the venue for any dispute arising out of its contract with IPNav (as more fully described herein).

## VII. BACKGROUND

### A.   ChanBond, Unified, and the ISA.

9.      Plaintiff Leane formed ChanBond on or about August 15, 2014, while she was employed at IPNav's business predecessor, IP Navigation Group, LLC ("IP Navigation").

10.     Like IPNav, IP Navigation was in the business of providing patent monetization consulting services to patent owner clients in exchange for an interest on the recovery generated by the client's patents, a process that often involves patent litigation (which Ms. Leane thus has extensive experience managing and directing on behalf of IPNav and IP Navigation clients). On or about October 31, 2014, IP Navigation's principal, Erich Spangenberg, decided to retire, and turn over his business to Ms. Leane (the "IPNav Transition"). Ms. Leane incorporated IPNav as a new entity through which to engage in the IPNav consulting business.

11.     While employed at IP Navigation, a third-party company, CBV, Inc. ("CBV"), reached out to IP Navigation about potentially monetizing the patents CBV owned (the "ChanBond Patents"). After the IPNav Transition, by a purchase contract dated April 9, 2015, Leane and CBV agreed that ChanBond would purchase the ChanBond Patents from CBV, while IPNav would provide patent monetization consulting to ChanBond for 22% of the gross proceeds recovered on the ChanBond Patents.

12.     The ChanBond Patents, and the prospect of recovery on the patent infringement litigations that have been filed on the basis of those patents, are ChanBond's only assets.  The patent litigations are approximately five years old and currently pending in the U.S. District Court for the District of Delaware, Cases Nos. 1:15-cv-00842-RGA, 1:15-cv-00843-RGA, 1:15-cv-00844-RGA, 1:15-cv-00845-RGA, 1:15-cv-00846-RGA, 1:15-cv-00847-RGA, 1:15-cv-00848-

RGA,_ 1:15-cv-00849-RGA, 1:15-cv-00850-RGA, 1:15-cv-00851-RGA, 1:15-cv-00852-RGA,_ 1:15-cv-00853-RGA, and 1:15-cv-00854-RGA (collectively, the "ChanBond Litigations").

13.    The ChanBond Litigations are trial ready, but the first scheduled trial has been postponed, and a new trial date has not yet been set, due to the logistical issues caused by Covid-19. It is unclear when the District of Delaware will be able to begin scheduling jury trials, leaving ChanBond facing the prospect of an extensive delay before it could achieve a verdict, a prospect that, in Ms. Leane's experience, will make Defendants more eager to settle.

14.    Unified is a Delaware corporation formed by Billy Carter, who Leane knew through her work at IP Navigation. On October 27, 2015, Ms. Leane and Unified entered into the ISA, by which Leane sold her membership interest in ChanBond to Unified.[3]

15.    ChanBond was also a party to the ISA.

16.    At the time of ChanBond's acquisition of the ChanBond Patents those patents were its only asset, and upon information and belief, ChanBond is Unified's only asset of value.

**B.    The Anti-Assignment Provision and Defendants' Breaches.**

17.    As set out in the Arbitration Demand, the structure of the ISA meant that Ms. Leane's consideration for the sale – a $5,000,000 note and roughly 45,000,000 shares of Unified – meant that achieving any value required monetization of the ChanBond Patents that was not merely successful, but that actually returned value *to Unified* (enabling Unified to pay the note and imbuing Ms. Leane's shares with value).

18.    A number of other entities already had interests in the recoveries on the ChanBond Patents: ChanBond's litigation funder ("Bentham"), patent litigators ("Mishcon"), its monetization consultant, IPNav, and the inventors (who, through CBV, had a right to 50% of any net recovery

---

[3] A true and correct copy of the ISA is attached as Exhibit 1 to the Arbitration Demand.

to ChanBond).[4] As a result – and based on the agreements that were in place at the time the ISA was signed – Unified might potentially have recovered as little as 14.75% of the proceeds of the ChanBond litigations.

19.     Ms. Leane required the inclusion of Section 8.3 of the ISA, which contained an anti-assignment provision barring Unified and/or ChanBond from "sell[ing], transfer[ring], or spin[ning]-off any of the interests in ChanBond or any of its material assets without the prior written consent of [Leane]."[5]  This clause ensured that Unified and ChanBond could not further decrease Unified's (and therefore Ms. Leane's) potential recovery by assigning or transferring out any interest in ChanBond or its "material assets."

20.     Moreover, Section 8.3 of the ISA provided that neither Unified nor ChanBond could "grant or assign any rights or delegate any duties under this Agreement to any Third Party" without Ms. Leane's prior written consent.

21.     Despite that, upon information and belief, ChanBond and Unified have repeatedly breached the anti-assignment provision, as detailed in the Arbitration Demand.

22.     Those breaches are not, however, the subject of this action.

---

[4] As discussed in the Arbitration Demand, Ms. Leane is the person who sourced Bentham and Mishcon to assist in the ChanBond Litigation.

[5] ("Section 8.3 Limitations on Assignment. Except as expressly permitted in this Section, none of Purchaser or ChanBond may grant or assign any rights or delegate any duties under this Agreement to any Third Party (including by way of a "change in control") or may sell, transfer, or spin-off any of the interests in ChanBond or any of its material assets without the prior written consent of Seller. Notwithstanding the foregoing, Purchaser shall be permitted to transfer or assign) its rights, interests and obligations under this Agreement, as applicable, without Seller's prior written consent as part of a sale of all or substantially all of its business, equity to, or a change in control transaction with a Third Party acquirer (an "**M&A Transaction**", and an "**Acquirer**," respectively); provided that (a) such transfer or assignment is subject to all of the terms and conditions of this Agreement; and (ii) such Acquirer executes a written undertaking towards Seller agreeing to be bound by all of the terms and conditions of this Agreement with respect to the rights being transferred or assigned. Except as otherwise expressly limited herein, the provisions hereof shall inure to the benefit of, and be binding upon, the successors, permitted assigns, heirs, executors, and administrators of the Parties hereto.").

---

C.      **ChanBond Threatens an Imminent and Ultimate Breach of the Anti-Assignment Provision.**

23.     Based on Plaintiffs analysis on behalf of ChanBond, the defendants in the ChanBond Litigations represent the universe of potential infringement claims relating to, or licensees of, the ChanBond Patents.

24.     Thus, once the ChanBond Litigations conclude – by settlement or verdict – the ChanBond Patents will have little to no further value to be extracted by the parties.

25.     The ChanBond Litigations, which were consolidated for purposes of discovery and case management under case No. 1:15-cv-00842-RGA, have completed pre-trial work; Covid-related complications are the only reason the first of the ChanBond Litigations has not yet been tried.

26.     Based on Ms. Leane's extensive experience in patent litigation, settlement of the ChanBond Litigations is imminent[6]; this is the time-frame in which she would expect a settlement to occur, and a settlement could happen any day and at any time.[7]

27.     In addition, Ms. Leane is aware from her connections that a settlement is likely to occur in the near future; she cannot say whether that means within a week or a month or a few months, but it could happen at any time.

28.     Indeed, Ms. Leane is personally aware that ChanBond has received at least one settlement offer to resolve the ChanBond Litigations, which ChanBond has the ability to elect to accept at any minute if not restrained.

---

[6] Ms. Leane has been involved in consulting on and resolving patent disputes for 13 years, including reviewing and commenting on settlement agreements.

[7] As discussed further in the Arbitration Demand, Ms. Leane continued to consult for ChanBond with regard to the ChanBond Litigations and was deposed as part of those lawsuits.

29.     In all events, based on Ms. Leane's extensive experience with patent litigation and the known information, it is likely that the ChanBond Litigations will settle before the Arbitration can conclude.

30.     Patent litigations generally settle on terms that include a payment to the patent owner, a release for the alleged past infringement, and a right for the alleged infringer to practice the invention going forward, typically in the form of a license. Thus, any settlement of the ChanBond Litigations will inevitably include a license to the ChanBond Patents, or the functional equivalent thereof (such as a release from past infringement and a covenant not to sue for future infringement).

31.     Given these circumstances, on August 29, 2020, Akiva Cohen, counsel for Plaintiffs reached out to ChanBond's patent litigation counsel to, among other things, ask for acknowledgement that the anti-assignment provision barred ChanBond from settling the ChanBond Litigations on terms that provided the defendants in those actions with a license to the ChanBond Patents (or the functional equivalent thereof).

32.     On August 31, ChanBond's patent litigation counsel, Mark Raskin, responded by asserting that "[n]othing in any of the agreements restrict [sic] ChanBond's ability or right to license the patents or permits Ms. Leane any say over settlement."

33.     Thus, absent the requested injunctive relief, it is likely that ChanBond will settle the ChanBond Litigations without Ms. Leane's written consent, in breach of the ISA's anti-assignment provision.

## VIII. SOLE CAUSE OF ACTION

### APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTIVE RELIEF IN AID OF ARBITRATION

34.     Plaintiffs incorporated by reference the allegations made in the foregoing

ORIGINAL VERIFIED PETITION AND EX-PARTE APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF IN AID OF
ARBITRATION

PAGE 9

paragraphs, as if fully copied herein.

35.     The ISA was entered as a valid and enforceable contract.  Because of the material breaches described herein, the consideration for the ISA has failed and Ms. Leane is entitled to rescission.   Alternatively, if the consideration has not failed then Ms. Leane is entitled to enforce the anti-assignment rights in Section 8.3 of the ISA.[8]   Under either scenario, a temporary restraining order is necessary to prevent the destruction of the subject matter of the arbitration.

36.     In accordance with Rule 680 of the Texas Rules of Civil Procedure and Chapters 61 and 172 of the Texas Civil Practices & Remedies Code, Plaintiffs seek an application for temporary restraining order and  temporary injunction in aid of arbitration against Defendants.

37.     Absent Ms. Leane's written consent, the grant of a license concerning the ChanBond Patents (or the functional equivalent thereof) would breach the anti-assignment provision of the ISA.

38.     The grant of such a license (or fundamental equivalent thereof) is an essential element to any settlement of a patent infringement action.

39.     If ChanBond (or Unified acting through its control of ChanBond) settles the ChanBond Litigations on terms Ms. Leane does not consent to, in breach of the anti-assignment provision, estimating her damages would be difficult, if not impossible.  Ms. Leane would be incapable of calculating her damages arising from Defendants' improper settlement because it would be based on the difference between the settlement ChanBond reached without her consent

---

[8] *See In re Hughes*, 513 S.W.3d 28, 32–33 (Tex. App.—San Antonio 2016, pet. denied) ("'As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy., *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 & n. 11 (Tex.2004); see also *Restatement (Second) of Contracts* § 317(2)(b) (1981) ('A contractual right can be assigned unless ... the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy.'). Absent a successful attack upon an anti-assignment clause, a party is entitled to have the trial court enforce the clause. *Tex. Pac. Indem. Co. v. Atlantic Richfield Co.*, 846 S.W.2d 580, 583 (Tex.App.–Houston [14th Dist.] 1993, writ denied)").

("Unauthorized Settlement") and a hypothetical and more lucrative settlement with her consent

("Hypothetical Settlement"). It would be almost impossible to prove the terms of the Hypothetical

Settlement and that the settling defendants would actually accept those terms after they agree to

the Unauthorized Settlement, and therefore impossible for Ms. Leane to be compensated by means

of a damages award.[9]

40.    Further, both Unified and ChanBond are insolvent and have no ability to answer in

damages. Upon information and belief, Unified's sole asset is ChanBond and ChanBond's sole

asset is the ChanBond Patents, which have, as yet, not generated any income for Unified or

ChanBond. Moreover, such insolvency is the reason that Unified has had ChanBond breach the

anti-assignment provision by modifying its litigation funding agreements, increasing its borrowing

from $200,000 as of 2015 to $1,685,250 to $3,367,180 as of May, 2019, with the ability to draw

up to $5,950,000 (increased from the original funding limit of $2,200,000). Upon information and

belief, ChanBond, Unified, and/or Carter have borrowed money from Bentham to pay not only

ChanBond's litigation expenses but also Unified's ordinary expenses and even personal expenses

of Unified's principal.[10]

41.    Moreover, settlement appears to be imminent, and the filing of the Arbitration will

provide incentive for Billy Carter – ChanBond's Manager and Unified's principal – to quickly

accept an Unauthorized Settlement that provide less than fair value to ChanBond, in order to allow

Defendants to address the claims in the Arbitration. For instance, a settlement for less than fair

---

[9] *See Ron v. Ron*, 604 S.W.3d 559 (Tex. App.—Houston [14th Dist.] 2020, no pet. h.) ("An injury is irreparable when the injured party cannot be adequately compensated in damages or if damages cannot be measured by any certain pecuniary standard.").

[10] *See Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 527 S.W.3d 579, 587 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("Texas cases hold that a plaintiff does not have an adequate remedy at law if the defendant faces insolvency or becoming judgment proof before trial.").

---

value on the ChanBond Patents might still provide Unified with desperately needed funds to finally pay the long-past-due Note and defend against Plaintiffs' claims in the arbitration, motivating Unified to accept a settlement it might otherwise reject as insufficient.

42.     Further, Defendants have rejected Plaintiffs request that they confirm that any settlement requires Leane's consent in accordance with the anti-assignment clause.

43.      Therefore, if this Court does not grant injunctive relief to prevent Defendants from settling the ChanBond Litigations without Ms. Leane's consent as required by the anti-assignment provision, Plaintiffs will have no adequate remedy at law.

44.     The threatened harm to Plaintiffs outweighs the threatened harm to Defendants. If a temporary restraining order is not issued prohibiting Defendants from entering an Unauthorized Settlement, Plaintiffs will have no adequate remedy at law and face the loss of incalculable millions of dollars. In contrast, the sole harm to Defendants will be the requirement that they comply with their contractual obligations, and their inability to sacrifice the value of the ChanBond Patents – to the detriment of every party entitled to a share in that value – in service of defending the arbitration.

45.     Absent the temporary restraining order prohibiting Defendants from entering an Unauthorized Settlement, Defendants will effectively destroy or impair the subject matter of the Arbitration Demand, which is rescission of the ISA.

46.     Plaintiffs have demonstrated through this pleading and the evidence attached hereto that they will likely succeed on the merits of the case and that they will suffer immediate and irreparable injury if Defendants, and those acting in active concert or participation with them, are not enjoined from entering into an Unauthorized Settlement.  By virtue of the foregoing, Plaintiffs

have also demonstrated that it has no adequate remedy at law, and that a balancing of the equities favors the issuance of an injunction against Defendants.

47.     The requested injunction will not in any way undermine the public interest, nor will it harm Defendants to comply with its obligation to obtain consent from Ms. Leane prior to settling the ChanBond Litigation.

48.     Plaintiffs are therefore, entitled to a temporary restraining order and temporary injunctive relief enjoining Defendants from taking any action in violation of the anti-assignment clause, including by settling the ChanBond Litigations on any terms that involve a license to the ChanBond Patents, the functional equivalent of a license to the ChanBond Patents, or the grant of any other interest in ChanBond or the ChanBond Patent without the consent of Ms. Leane.

49.     Therefore, Plaintiff requests that a temporary restraining order and later temporary injunction be awarded that orders Defendants and their agents, representatives, and any persons or entities in active concert or participation with them, not to enter into any such settlement of the ChanBond Litigation without obtaining the consent of Ms. Leane in accordance with § 8,3 of the ISA.

## IX. <u>CONDITIONS PRECEDENT</u>

50.     For each cause of action alleged herein, all conditions precedent have been performed by Plaintiffs or have occurred.

## X. <u>REQUEST FOR RELIEF</u>

WHEREFORE, premises considered, Plaintiffs requests that the Court enter an *ex-parte* temporary restraining order (followed by a temporary injunction hearing) upon the grounds stated herein, and then abate this lawsuit pending the outcome of the Arbitration, and such other and further relief to which they may be entitled.

Dated: September 29, 2020

Respectfully submitted,

/s/ *J. Sean Lemoine*
J. Sean Lemoine
State Bar No. 24027443
sean.lemoine@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN LLP**

3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: 214.692.6200
Facsimile: 214.692.6255

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF COMPLIANCE WITH EX-PARTE LOCAL RULES**

I hereby certify that, in accordance with Dallas County Local Rule 2.02(b), Defendants UnifiedOnline, Inc. and ChanBond, LLC have not been notified and provided with a copy of this Original Verified Petition and Application for Temporary Restraining Order in Aid of Arbitration because to notify the opposing party or counsel would impair or annul the court's power to grant relief because the subject matter of the application could be accomplished, if notice were required. I further certify in accordance with Local Rule 2.02(c) that, to the best of my knowledge, the case in which the application is presented is not subject to transfer under Local Rule 1.06.

/s/ *J. Sean Lemoine*
J. Sean Lemoine

**\*\*\* REMANDER OF PAGE INTENTIONALLY LEFT BLANK\*\*\***

**VERIFICATION**

My name is Deirdre Leane. My date of birth is 17 July, 1977, and my address is 6422 Bryan Parkway, Dallas, TX 75214.   I declare under penalty of perjury that I have read the Original Verified Petition and Application for Temporary Restraining Order in Aid of Arbitration, and that paragraphs 9-21, 23-32, 39-40, are true and correct, and within my personal knowledge, unless otherwise qualified within the text of the particular paragraph.

Executed in Dallas County, on September 29, 2020.

/s/_____
Deirdre Leane

CAUSE NO. _____

| | | |
|---|---|---|
| **DEIRDRE LEANE and IPNav, LLC,** | § | |
| | § | |
| **CLAIMANTS** | § | |
| | § | |
| **v.** | § | **AMERICAN ARBITRATION** |
| | § | **ASSOCIATION** |
| **UNIFIEDONLINE, INC. and** | § | |
| **CHANBOND, LLC** | § | |
| | § | |
| **RESPONDENTS.** | § | |
| | § | |
| | § | |

## CLAIMANTS' ARBITRATION DEMAND AND APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

Claimants Deirdre Leane ("Leane") and IPNav, LLC ("IPNav") (collectively, "Claimants'"") files this Original Demand and Application for Temporary and Permanent Injunction ("Demand") against Respondents UnifiedOnline, Inc. ("Unified") and ChanBond, LLC ("ChanBond") (collectively, "Respondents"), and would respectfully show the panel as follows:

### I.   INTRODUCTION

This Arbitration seeks: (a) recission, for failure of consideration, of the October 27, 2015 Interest Sale Agreement (the "ISA," a copy of which is annexed hereto as Exhibit 1) by and between Ms. Leane, on the one hand, and Unified and ChanBond, on the other, for Unified's purchase from Ms. Leane of all of the membership interests in ChanBond; (b) recission, for lack of consideration and fraud in the inducement, of the contract terminating the Advisory Services Agreement ("Advisory Services Agreement," a copy of which is annexed hereto as Exhibit 2) between ChanBond and Ms. Leane's limited liability company, IPNav; or, in the alternative (c) an order directing ChanBond to specifically perform its agreement to restore Ms. Leane to the economic position she held before terminating the Advisory Services Agreement, by entering into

a new agreement assigning Ms. Leane or IPNav a 22% interest in the gross proceeds of the patents owned by ChanBond (the "ChanBond Patents"), which was the promised consideration for Ms. Leane's agreement to have IPNav terminate the Advisory Services Agreement.

## II. <u>ARBITRATION PROVISION</u>

1.     This dispute is governed by the following arbitration provisions:

Section 8.2 of the ISA:

> 8.2 Governing Law; Arbitration; Prevailing Party. This Agreement and all claims or causes of action that may be based upon, arise out of or relate to this Agreement or the Collateral Agreements will be construed in accordance with and governed by the internal laws of the State of Texas applicable to agreements made and to be performed entirely within such State without regard to conflicts of laws principles thereof. Any dispute arising under or in connection with any matter of any nature (whether sounding in contract or tort) relating to or arising out of this Agreement, shall be resolved exclusively by arbitration. The arbitration shall be in conformity with and subject to the applicable rules and procedures of the American Arbitration Association. The arbitration shall be conducted before a panel of three (3) arbitrators, with one arbitrator to be selected by each of Seller and Buyer and the third arbitrator to be selected by the arbitrators selected by the Parties. The Parties agree to be (a) subject to the exclusive jurisdiction and venue of the arbitration in the Eastern District of Texas (b) bound by the decision of the arbitrator as the final decision with respect to the dispute, and (c) subject to the jurisdiction of both of the federal courts of the United States of America or the courts sitting in the Eastern District in the State of Texas for the purpose of confirmation and enforcement of any award. The prevailing party in any arbitration shall be entitled to recover its costs and expenses (including attorney's fees and expenses) from the non-prevailing party.[1]

Section 14 of the Advisory Services Agreement:

> 14. Choice of Law: This Agreement shall be governed by and construed under the laws of the State of Texas. Any disputes relating to or arising from this Agreement by or among the parties shall be resolved exclusively by arbitration to be conducted exclusively in Dallas, Texas, in accordance with the Commercial Rules of the American Arbitration Association. Any court of competent jurisdiction shall be authorized to enforce the provisions of the previous sentence and enforce the remedies imposed by such arbitration. The losing party in any action to adjudicate rights relating to this Agreement shall bear the costs of such action.[2]

---

[1] *See* Exhibit 1.

[2] *See* Exhibit 2.

### III. PARTIES

1.      Claimant Deirdre Leane is a resident of Texas, residing at 6422 Bryan Parkway, Dallas, TX 75214.

2.      Claimant IPNav is a Texas limited liability company with a principal place of business located at 6422 Bryan Parkway, Dallas, TX 75214.

3.      Claimants are represented by:

Akiva M. Cohen
Kamerman, Uncyk, Soniker, & Klein, P.C.
1700 Broadway
New York, NY 10019
acohen@kusklaw.com
212-400-4930

and

J. Sean Lemoine
Wick Phillips
3131 McKinney Ave #100
Dallas, TX 75204
sean.lemoine@wickphillips.com
214-740-4053

4.      Respondent Unified is a Delaware corporation with a principal place of business located at 4126 Leonard Drive, Fairfax, Virginia 22030.

5.      Respondent ChanBond is a Delaware limited liability company.

6.      Pursuant to notice of updated addresses given by Unified and ChanBond under the ISA, Respondents should each be contacted at chameleon9759@gmail.com, and by mail, to the attention of William "Billy" Carter, at 4309 Hoke LN, Greensboro, NC 27407. Upon information and belief, Unified is not yet represented by counsel in connection with its breach of the ISA.

## IV. FACTUAL BACKGOUND

### A. Leane Uses To Chanbond To Purchase The Chanbond Patents And Subsequently Sells Her Interests In Chanbond To Unified In Order To Monetize Those Patents.

7.     From 2011 to 2014, Ms. Leane worked for IP Navigation Group, LLC ("IP Navigation"), which also provided patent monetization consulting services to patent owner clients in exchange for an interest on the recovery generated by the client's patents. In 2014, IP Navigation's CEO, Erich Spangenberg, retired, and turned over his business to Ms. Leane, to be conducted out of her new LLC, IPNav.

8.     In 2014, CBV, Inc. ("CBV"), reached out to IP Navigation about potentially monetizing the patents its owners had invented, which covered DOCSIS technology for delivering high-speed data over cable systems.  The parties tentatively agreed to a consulting fee of 22% gross revenue.

9.     On April 9, 2015, Ms. Leane's wholly owned company ChanBond purchased the ChanBond Patents from CBV, on terms documented in a Patent Purchase Agreement dated as of April 9, 2015 (the "PPA").

10.     CBV and Ms. Leane also agreed that IPNav would provide patent monetization consulting to ChanBond on the terms previously discussed with IP Navigation, including the 22% fee.

11.     In accordance with that agreement, IPNav began providing services to ChanBond upon ChanBond's April 9, 2015 purchase of the patents.

12.     On or about July 31, 2015, Ms. Leane documented the relationship between ChanBond and IPNav by executing the Advisory Services Agreement on behalf of both ChanBond and IPNav and dating it as of April 9, 2015.

13.     The only assets of ChanBond are the ChanBond Patents, and its only business is the monetization of the ChanBond Patents through licensing and/or litigation.

14.     To maximize the ChanBond Patents, Lease sold Unified her interest in ChanBond, pursuant to the terms of the ISA.

15.     The ISA called for Unified to pay Ms. Leane for the ChanBond membership interests by: (1) issuing her 44,700,000 shares in Unified, representing a roughly 4.5% interest in Unified; and (2) $5,000,000.00 on or before October 27, 2020, pursuant to the terms of a promissory note executed together with the ISA (the "Note").

16.     The ISA also identifies and adopts the Advisory Services Agreement.

17.     Upon information and belief, Unified's only asset is its 100% ownership of ChanBond.  The entirety of the consideration Ms. Leane received for ChanBond was therefore tied to Unified's ability to profit from the ChanBond Patents.

18.     Unified's ability to pay the $5,000,000 purchase price, and the value of Ms. Leane's interest in Unified, depended on Unified profiting from the ChanBond Patents.

**B.      The ISA Contains An Anti-Assignment Provision To Protect Ms. Leane, And The Advisory Services Agreement Maximizes Recovery Of The Chanbond Patents For The Inventors.**

19.     For her protection, Ms. Leane insisted on the inclusion of an anti-assignment provision in the ISA, giving her veto power over any attempt by Unified to carve up or sell off ChanBond, the ChanBond Patents, or any interest in the ChanBond Patents (including licenses to the ChanBond Patents or interests in the proceeds of their monetization).

20.     Thus, Section 8.3 of the ISA provides as follows:

> Limitations on Assignment. Except as expressly permitted in this Section, none of Purchaser or ChanBond may … sell, transfer, or spin-off any of the interests in ChanBond or any of its material assets without the prior written consent of Seller [Leane].

21.     That provision was critical to the entire structure of the deal between Ms. Leane and ChanBond. Monetizing the ChanBond Patents required the retention of litigation counsel (on a contingency fee) and obtaining litigation funding (at the cost of a chunk of any eventual recovery on the ChanBond Patents).

22.     Under ChanBond's Advisory Services Agreement with IPNav, a patent-monetization firm in which Ms. Leane was the sole member, IPNav was entitled to 22% of the proceeds. And, under the agreement by which ChanBond initially purchased the ChanBond Patents, the inventors were entitled to 50% of the proceeds, net of payments to Bentham, Mishcon, and IPNav.

23.     As of the time the parties entered into the ISA, and pursuant to the terms of the agreement Ms. Leane had struck with ChanBond's patent counsel ("Mishcon"),[3] Mishcon was entitled to up to 28.5% of the proceeds of the ChanBond Patents.[4] In addition, pursuant to the terms of the agreement Ms. Leane had struck with ChanBond's litigation funder ("Bentham"), Bentham was entitled to as much as 20% of the proceeds.[5]

24.     Thus, at the time that the parties entered into the ISA, Unified's potential interest in any recovery on the ChanBond Patents was limited to a maximum of 24% of any recovery (if proceeds were recovered at the lowest possible interest for Bentham and Mishcon) and potentially

---

[3] The attorneys representing ChanBond have since left the Mishcon de Reya firm and joined King & Wood Mallesons. For ease of reference, and because the particulars of which firm the attorneys were with at particular moments is mostly irrelevant to the claims between Ms. Leane and Unified, the firms are referred to herein jointly as "Mishcon."

[4] The Mishcon retainer agreement provided Mishcon with an escalating share of the proceeds depending on the stage of litigation at which a settlement was reached, from 15% if a settlement was reached before an initial case management conference to 28.5% if a settlement or judgment was obtained at any point after 45-days pre-trial.

[5] The Bentham agreement likewise provided Bentham with an escalating share of the proceeds depending on the amount of funds disbursed, from 15% if Bentham disbursed $1,750,000 or less, to 20% if Bentham disbursed more than $2,000,000.

as little as 14.75% (or less) of any recovery (if Mishcon and Bentham each received the maximum recovery):

| PATENT WATERFALL | | |
|---|---|---|
| | % of Recovery (Vendor Minimum/ChanBond Maximum) | % of Recovery (Vendor Maximum/ChanBond Minimum) |
| Bentham | 15% | 20% |
| Mishcon | 15% | 28.5% |
| IPNav | 22% | 22% |
| CBV | 50% of remainder (24%) | 50% of remainder (14.75%) |
| Unified/ChanBond Remainder | 24% | 14.75% |

25.     On September 21, 2015, ChanBond filed 13 patent infringement litigations in the U.S. District Court for the District of Delaware against 18 defendants (the "ChanBond Litigations"), effectively covering the field of cable companies making unlicensed use of the DOCSIS technology subject to the ChanBond Patents.[6]

## C.     Unified/Chanbond Breach The Anti-Assignment Provision And Absurdly Refuse To Agree That They Must Obtain Approval From Ms. Leane Before Licensing The Chanbond Patents

26.     Unified and ChanBond have egregiously breached the anti-assignment provision of the contract, accelerating the payment date on the Note, rendering Unified's ability to pay the Note questionable at best, and utterly denuding Ms. Leane's interest in Unified of any value.

27.     For instance, almost immediately after executing the ISA, and without Ms. Leane's consent or even informing her, Unified entered into an agreement with a related entity – UO! IP of NC, LLC – to pay it "20% of the gross proceeds received by the Company from the sale or license of any or all of the ChanBond intellectual property." Since then, Unified has had ChanBond enter into modifications of its litigation funding agreements with Bentham, increasing Bentham's

---

[6] U.S. District Court for the District of Delaware, Cases Nos. 1:15-cv-00842-RGA, 1:15-cv-00843-RGA, 1:15-cv-00844-RGA, 1:15-cv-00845-RGA, 1:15-cv-00846-RGA, 1:15-cv-00847-RGA, 1:15-cv-00848-RGA,_ 1:15-cv-00849-RGA, 1:15-cv-00850-RGA, 1:15-cv-00851-RGA, 1:15-cv-00852-RGA,_ 1:15-cv-00853-RGA, and 1:15-cv-00854-RGA,

interest in any recovery without Ms. Leane's consent, or even advance awareness. Unified also renegotiated ChanBond's fee arrangement with Mishcon, again without providing notice to Ms. Leane and without her consent.

28.    The terms of the twice-amended Bentham litigation funding agreement now provide Bentham with a *minimum* 22.5% interest in the gross proceeds – 2.5% more than their maximum recovery under the prior agreement – and a maximum percentage of 25%. Moreover, to the extent that it would result in a larger payment to Bentham, Bentham is now entitled to recover as much as five-times the amount it loaned ChanBond, which payment, depending on the size of the recovery, might exceed 25% of the proceeds.

29.    Upon information and belief, Unified and ChanBond have purported to dole out other interests in the ChanBond Patents and the recovery thereon without Ms. Leane's written consent, all in violation of the anti-assignment provision and all to Ms. Leane's great detriment. As such, and without accounting for any other interests ChanBond and Unified have assigned, Bentham's potential entitlement to more than its percentage interest, or the changes to the attorneys' fee arrangement, the details of which are unknown to Ms. Leane, the revised waterfall would stand as follows:

| REVISED PATENT WATERFALL | | |
|---|---|---|
| | % of Recovery (Vendor Minimum/ChanBond Maximum) | % of Recovery (Vendor Maximum/ChanBond Minimum) |
| Bentham | 22.5% | 25% |
| Mishcon | 15% | 28.5% |
| IPNav | 22% | 22% |
| CBV | 50% of remainder (20.75%) | 50% of remainder (12.25%) |
| Unified/ChanBond Remainder | 20.75% | 12.25% |
| UO! IP Share | 20% of Unified Recovery | 20% of Unified Recovery |
| Unified Net | 16.4% | 9.8% |

30.     Each of these percentages are applied to the proceeds left **after** Bentham recovers the amounts it advanced for the litigation, and, as noted above Bentham's revised litigation funding agreement could provide it with an even larger share of the proceeds.

31.     Consistent with Unified's reduced share, Unified's principal, Billy Carter, recently circulated a draft waterfall illustrating the manner in which a hypothetical $50,000,000 recovery would be distributed among the stakeholders given the revised percentages to which Unified unilaterally (and **without authority**) agreed, that left **$0.00** available to Unified. That result, which Unified apparently concedes is well within the realm of possibility, would leave Ms. Leane entirely unpaid on the Note and holding shares in Unified worth less than the paper they were printed on. A copy of Carter's waterfall is reproduced below:

| ChanBond Waterfall Analysis | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Return Percentage** | **Return Amount** | **Litigation Proceeds Remaining** | **INPUTS** | | | |
| | | | $50,000,000 | Litigation Financing Deployed: | | | $5,950,000 |
| Litigation Financing | 100% of principal | $5,950,000 | $44,050,000 | Litigation Proceeds: | | | $50,000,000 |
| Litigation Financing Return | Greater of 5x deployed or 25% of gross (less principal) | $23,800,000 | $20,250,000 | Greater of: | 5.0 | or | 25.0% |
| Attorney's Fees | 25% of gross | $12,250,000 | $8,000,000 | | | | |
| IPNAV Return | 22% of gross | $8,000,000 | $0 | TOTAL RETURNS | | | |
| CBV Preference | 100% of net, up to $1M | $0 | $0 | Litigation Financing Return: | | | $29,750,000 |
| CBV Return | 50% of net thereafter | $0 | $0 | Attorney's Return: | | | $12,250,000 |
| ChanBond Return | 50% of net thereafter | $0 | $0 | CBV Return: | | | $0 |
| | | | | IPNAV Return | | | $8,000,000 |
| | | | | ChanBond Return: | | | $0 |
| | | | | | | | $50,000,000 |

32.     In sum, Unified's actions and serial breaches of the ISA have rendered the consideration by which it purchased ChanBond worthless.

33.     Moreover, the Note provided that the payment due thereunder would become immediately due and payable, without need for notice or other action by Ms. Leane, upon the occurrence of an "Event of Default."

34.     Unified's and ChanBond's breaches of the ISA were Events of Default under the Note.

35.     On September 2, 2020, Ms. Leane's counsel emailed Mr. Carter a demand letter asking Unified to make the payment due on the Note. Ms. Leane asked for a response by September 8, 2020. To date, Ms. Leane has received no response.

36.     There is no indication that Unified intends to make the payment on the Note (which is now due). Indeed, it cannot do so, as it has no source of income and no assets other than ChanBond itself, which has not generated any income or recovery. Upon information and belief, Unified is insolvent with no money to pay the Note, which is now due and owing, which is the reason for its (unauthorized) continued borrowing from Bentham over-and-above the amounts Ms. Leane arranged in the initial Litigation Funding Agreement.

37.     Upon information and belief, Unified has deployed some of the funds it obtained from Bentham to pay personal expenses of Billy Carter and costs unrelated to the ChanBond Litigations.

38.     It would be deeply inequitable to allow Unified to retain the membership interests in ChanBond in exchange for consideration that Unified then stripped of all value. And the parties could easily be returned to the *status quo ante* by Ms. Leane's return of the Unified stock and Unified's return of the ChanBond member interests. Under the circumstances, Ms. Leane is entitled to rescission of the ISA, and to an award of fees as provided for in Section 8.2 of the ISA.

39.     In addition, in August, 2020, counsel for Ms. Leane communicated with counsel for ChanBond regarding the anti-assignment provision, asking ChanBond to confirm that, in compliance with the anti-assignment provision, ChanBond would not execute a settlement of the

ChanBond Litigations (which settlement would involve a license to the ChanBond Patents) without Ms. Leane's consent.

40.    ChanBond's counsel responded by denying that Ms. Leane's consent to license the ChanBond Patents was required under the ISA.

41.    Thus, Unified (and its wholly owned subsidiary, ChanBond), are threatening to further breach the ISA by licensing the ChanBond Patents to the defendants in the ChanBond Litigations as part of a settlement.

42.    Upon information and belief, ChanBond has not yet licensed any of the ChanBond Patents (though CBV had licensed the patents to the inventors' operating entity, Z-Band, prior to ChanBond's purchase of the patents).

43.    Upon information and belief, the defendants in the ChanBond Litigations cover the universe of meaningful infringers of the ChanBond Patents.

**D.    Injunctive Relief Is Necessary To Protect Ms. Leane's Contractual Rights Under The ISA Or To Ensure That Unified Does Not Destroy The Value Of The Chanbond Patents.**

44.    The ChanBond Litigations have completed discovery, the Court has ruled on summary judgment motions and are awaiting trial. Upon information and belief, and based on Ms. Leane's experience and industry sources, the ChanBond Litigations will likely settle before trial.

45.    Were ChanBond to license the ChanBond Patents without Ms. Leane's consent, on terms Ms. Leane would not have consented to, Ms. Leane would be irreparably harmed; it would be difficult, if not impossible, to later prove that any licensee would have agreed to any different hypothetical terms, and therefore impossible for Ms. Leane to recover damages for ChanBond's breach of the ISA.

46.     Similarly, were ChanBond to settle the ChanBond Litigations on terms Ms. Leane would not consent to, she will be irreparably harmed, as it would be difficult, if not impossible, to prove that during or after a trial in the ChanBond Litigations that any settling defendant would also have settled on terms acceptable to Ms. Leane.

47.     As such, it is critical that ChanBond be preliminarily and permanently enjoined from violating the ISA by licensing the ChanBond Patents (in the context of a settlement or otherwise) without Ms. Leane's consent.

**E.      Unified And Chanbond Try And Eliminate The Advisory Services Agreement's Economic Benefits To Ms. Leane.**

48.     In accordance with IPNav's obligations under the Advisory Services Agreement, Ms. Leane continued to work with ChanBond and the counsel she hired (Mishcon) in connection with the ChanBond Litigation.

49.     On April 24, 2018, the ChanBond Litigation defendants deposed Ms. Leane. At the time of the deposition, Ms. Leane, IPNav, and ChanBond were all represented Mishcon, and Mishcon partner Bob Whitman represented Ms. Leane and ChanBond during the deposition.[7]

50.     Just prior to the lunch break, Ms. Leane testified about the Advisory Services Agreement. Counsel for the defendants noted that (for reasons unknown to Claimants) ChanBond had not produced the document.

51.     On the lunch break, Mr. Whitman advised Ms. Leane that ChanBond's failure to produce the Advisory Services Agreement would create problems for the ChanBond Litigations, including additional discovery and severe trial delays.

---

[7] Whitman described himself, on the record at the deposition, as Ms. Leane's attorney. Moreover, under the terms of the retainer agreement between ChanBond and Mishcon de Reya, IPNav was a joint client of Mishcon de Reya along with ChanBond.

52.     Mr. Whitman advised her that it was in ChanBond's, IPNav's, and her own interest to terminate and cancel the Advisory Services Agreement and enter a new agreement with ChanBond at a later date that would restore her to the same 22% economic position.

53.     Through its agent, Whitman, ChanBond and Unified represented to Ms. Leane that it would restore her 22% interest in the recovery on the ChanBond Patents, which she then held through IPNav and the Advisory Services Agreement, if she agreed to terminate the Advisory Services Agreement.

54.     In addition, Unified's principal, Billy Carter, specifically advised Ms. Leane that she would still get paid if she terminated the Advisory Services Agreement.

55.     Though the Advisory Services Agreement provided that IPNav could unilaterally terminate it, requiring no action by ChanBond, Whitman drafted a "Termination Agreement" between IPNav and ChanBond that terminated the Advisory Services Agreement effective as of April 9, 2015.

56.     The Termination Agreement provided that ChanBond and IPNav were entering into an agreement to terminate the Advisory Services Agreement, in exchange for their mutual agreements and "other good and valuable consideration."

57.     The only consideration IPNav received for terminating the Advisory Services Agreement was ChanBond's representation and agreement, conveyed by its attorneys, that ChanBond would execute a separate agreement binding itself to pay IPNav 22% of the proceeds of the ChanBond Patents, exactly as it had been required to do under the Advisory Services Agreement.

58.     Ms. Leane relied on ChanBond's representations, and the representations of its counsel, in executing the Termination Agreement.

59.     Ms. Leane's reliance on such representations was reasonable. Indeed, at the time the representations were first made, Whitman was expressly acting as her counsel.

60.     In or about October 2019, Ms. Leane reached out to ChanBond to begin the process of having ChanBond execute the contemplated agreement that would restore her and IPNav to their previous economic position.

61.     In response, ChanBond repeatedly reiterated its promise to restore Plaintiffs to their previous economic position, both expressly and implicitly.

62.     For example, on October 16, 2019, Ms. Leane texted Billy Carter, principal of Unified, to inform him that she "didn't see the replacement consulting Agreement" and asking if he had sent it to her Yahoo email account. The next day, Mr. Carter replied "Email will go out today …"

63.     On October 23, having not received the promised email, Ms. Leane again texted Mr. Carter to inquire about the status. The next day, Mr. Carter responded that they needed "to talk about the waterfall" before he sent the email.

64.     As discussed above, by "the waterfall," Mr. Carter was referring to the manner in which any recovery on the patents would be distributed among the various players who would be paid from the recovery: first to the litigation funder in agreed amounts, next to ChanBond's attorneys, and so on, until each of the litigation funder, attorneys, IPNav, inventors, and ChanBond had received distributions.

65.     Ms. Leane then asked if Mr. Carter could send her the waterfall "as it currently exists", and he agreed to do so, saying that he needed to make adjustments based on the "latest amendment" of ChanBond's agreement with its litigation funder ("Bentham").

66.     Later that evening, Mr. Carter sent Ms. Ms. Leane an email attaching the revised waterfall, reproduced above, reflecting, among other things, the terms of ChanBond's amended agreement with Bentham.

67.     Mr. Carter's email was sent at 10:51 p.m. on October 25, 2019 (the "10/25 Email"), and included four attachments: the initial litigation funding agreement with Bentham (which had been executed by Ms. Ms. Leane prior to her sale of ChanBond to Unified), two amendments to that litigation funding agreement, and an Excel spreadsheet.

68.     The file name of the Excel spreadsheet attached to the 10/25 Email was "Copy of Chanbond Waterfal_Billy Carter_Final.xlsx" (the "10/25 ChanBond Waterfall").

69.     Fully consistent with the parties' agreement that the "replacement consulting Agreement" would restore IPNav to its economic position under the Advisory Services Agreement, the 10/25 ChanBond Waterfall created by Mr. Carter identified the "IPNav Return" as "22% of gross."

70.     Similarly consistent, the 10/25 ChanBond Waterfall Carter created identified the "IPNav Return" as being paid from whatever proceeds were left over after payment of Bentham and ChanBond's litigation counsel.

71.     Despite that confirmation of the parties' agreement that IPNav's 22% interest would be reinstated, ChanBond simply refused to execute an agreement accomplishing that result.

72.     Instead, ChanBond attempted to leverage the fact that the Advisory Services Agreement had been cancelled and not formally replaced to extract a settlement from IPNav at a reduced percentage.

73.     After a series of text exchanges where Ms. Leane pressed Carter to sign the reinstated Advisory Services Agreement and Carter deflected, in February 2020, Carter finally came clean: He had no intent of reinstating IPNav as had been agreed.

74.     On February 17, 2020, Carter texted Ms. Leane: "I'm not signing another Advisory Services Agreement. Rob [Howe] and I executed one when you terminated the previous one to take the Technicolor job. We can discuss the split or your compensation, but I'm not going to terminate the existing agreement in favor of another one with IPNAV, LLC."

75.     Carter's claim that Ms. Leane had terminated the Advisory Services Agreement to 'take a job at Technicolor' was blatantly false.

76.     In fact, Ms. Leane had taken a position as Technicolor's head of IP in June of 2017, roughly a year before Whitman advised her that the case required that the Advisory Services Agreement be terminated.

77.     Indeed, Ms. Leane had affirmatively disclosed to Technicolor that she had a connection to and financial interest in the ChanBond Litigations, and her position at Technicolor had nothing at all to do with the termination of the Advisory Services Agreement.

78.     Thus, Ms. Leane immediately rejected Carter's claim, responding: "No f [sic] way. I had to execute because you didn't disclose during discovery and I spoke to it during deposition. That was always the deal – you got CB bc I had IPNAV and my big out …"

79.     On February 23, 2020, Ms. Leane texted Mark Raskin, another of ChanBond's (and IPNav's) attorneys, to discuss Carter's attempt to renegotiate the deal. Raskin responded "I spoke with him [Carter] briefly. He said he's not trying to screw you out of anything but is worried about anything afdexting [sic] the case at this point."

80.     Upon information and belief, the word "afdexting" was meant to be "affecting."

81.     Upon information and belief, Carter had claimed in his discussion with Raskin that he had no objection to reinstating IPNav at the full 22%, as previously agreed, and as reiterated in the updated waterfall Carter had circulated, but was concerned that doing so might somehow negatively impact ChanBond's chances of success in the litigation.

82.     On February 27, 2020, Raskin texted Ms. Leane.

83.     Raskin wrote "[a]t this point I don't think you need the 'ASA' per se. Just an agreement that you get paid whatever you were supposed to. I think he said he'd do that."

84.     Upon information and belief, the "he" Raskin was referring to in the text message was Billy Carter.

85.     Upon information and belief, Carter had again conveyed his acknowledgement that, pursuant to the terms of the parties' prior agreement, IPNav was "supposed to" get paid 22% of the gross recovery.

86.     As a result of the foregoing, Respondents have effectively stripped away the economic benefits and consideration that it accepted pursuant to the ISA.

### V.  CAUSES OF ACTION

#### COUNT ONE – BREACH OF CONTRACT
#### (LEANE AGAINST UNIFIED AND CHANBOND).

87.     Claimants restate and reallege each paragraph above as if fully stated herein.

88.     Ms. Leane, Unified, and ChanBond entered into a valid, enforceable contract, the ISA.

89.     Ms. Leane has performed all conditions precedent under the ISA.

90.     As described above, Unified and ChanBond have breached the ISA, including but not limited to their actions with regard to Section 8.3, and failure to pay the Note.

91.     As described above, Respondents' material breaches have stripped the purported consideration for Unified's purchase of ChanBond of all value, causing the consideration to fail.

92.     The parties can easily be returned to the *status quo ante* by Ms. Leane's tender of the Unified stock to Unified in exchange for the return of her membership interests in ChanBond, and Ms. Leane is prepared to, and hereby offers to, make such a tender in connection with a recission of the ISA.

93.     Ms. Leane stands ready, willing, and able to return the parties to the status quo prior to execution of the ISA.

94.     As such, Ms. Leane is entitled to recission of the ISA, in addition to an award of her litigation costs and attorneys' fees as the prevailing party.

COUNT TWO – DECLARATORY JUDGMENT
(LEANE AND IPNAV AGAINST UNIFIED AND CHANBOND).

95.     Respondents restate and reallege each paragraph above as if fully stated herein.

96.     Pleading in the alternative to all claims herein, Ms. Leane, Unified, and ChanBond entered into the ISA; IPNav and ChanBond entered into the Advisory Services Agreement, and IPNav and ChanBond entered into the Termination Agreement.

97.     As described above, Unified and ChanBond have breached the ISA and Advisory Services Agreement, requiring a determination of the rights and obligations of the parties.

98.     Pursuant to Tex. Civ. Prac. & Rem. Code §37.009 *et seq*, an actual and justiciable controversy exist upon which relief can be granted.  Therefore, the following declarations are sought:

     a.   Consideration for the ISA has failed, and the agreement is rescinded with the membership interests in ChanBond returned to Ms. Leane.

b. Consideration for the Termination Agreement has failed, and the agreement is rescinded with all of IPNav's rights under the Advisory Services Agreement returned to IPNav.

### COUNT THREE – FRAUD
### (LEANE AND IPNAV AGAINST UNIFIED AND CHANBOND).

99. Claimants restate and reallege each paragraph above as if fully stated herein.

100. Pleading in the alternative to all claims herein, as described above, Unified and ChanBond made material misrepresentations concerning the necessity for the Termination Agreement and their intent to enter into new agreement that would restore the 22% interest of IPNav for providing consulting to ChanBond pursuant to the Advisory Services Agreement.

101. Claimants reasonably relied upon those representations in entering the Termination Agreement, and absent those representation there was no basis to execute the Termination Agreement and voluntarily release the 22% in recovery from the ChanBond Litigations.

102. At time of misrepresentation, Respondents had not intent to enter into a new agreement as demonstrated by actions of Mr. Carter, described above.

103. Claimants therefore seek rescission of the Termination Agreement.

104. Alternatively, Claimants seek the benefit of the bargain of a new agreement returning the 22% interest in recovery from the ChanBond Litigations, and/or actual and consequential damages, including exemplary damages.

### COUNT FOUR: SPECIFIC PERFORMANCE
### (LEANE AND IPNAV AGAINST CHANBOND).

105. Respondents restate and reallege each paragraph above as if fully stated herein.

106. Pleading in the alternative to all claims herein, Ms. Leane and IPNav, on the one hand, and ChanBond, on the other, entered into a binding agreement (the "Restoration

Agreement") for Ms. Leane and IPNav to terminate the Advisory Services Agreement in exchange for ChanBond restoring Ms. Leane and IPNav to their 22% interest in the gross proceeds by means of a new agreement ChanBond would later execute.

107.    Ms. Leane and IPNav performed their obligations under the Restoration Agreement by executing the Termination Agreement.

108.    ChanBond has neglected and refused to perform its obligations under the Restoration Agreement by refusing to execute a new agreement granting Leane and IPNav a 22% interest in the gross proceeds.

109.    As such, Ms. Leane and IPNav are entitled to an order directing ChanBond to perform its obligations under the Restoration Agreement by executing an agreement granting Ms. Leane and IPNav a 22% interest in the gross proceeds.

### COUNT FIVE: SPECIFIC PERFORMANCE AND INJUNCTIVE RELIEF
### (LEANE AGAINST CHANBOND AND UNIFIED).

110.    Respondents restate and reallege each paragraph above as if fully stated herein.

111.    Pleading in the alternative to all claims herein, and to the extent that the ISA is not rescinded and remains in force, Unified and ChanBond have repeatedly breached the anti-assignment provision as described above.

112.    Moreover, as described above, Unified and ChanBond, through counsel, have threatened to further breach the anti-assignment provision by settling the ChanBond Litigations without first obtaining Ms. Leane's consent to the terms of such settlement.

113.    As such, Ms. Leane is entitled to an order directing Unified and ChanBond to specifically perform their obligations under the anti-assignment provision by obtaining Ms. Leane's consent to the terms of any settlement of the ChanBond Litigations before executing any such settlement.

114.    Moreover, given the difficulty in proving damages were Unified and ChanBond to breach the anti-assignment provision by settling the ChanBond Litigations without Ms. Leane's consent (an "Unauthorized Settlement"), Ms. Leane would have no adequate remedy at law for the threatened breach.

115.    The threatened harm to Ms. Leane outweighs the threatened harm to Unified and ChanBond. If an injunction is not issued prohibiting Respondents from entering an Unauthorized Settlement, Ms. Leane will have no adequate remedy at law and face the loss of incalculable millions of dollars. In contrast, the sole harm to Respondents will be the requirement that they comply with their contractual obligations.

116.    As such, and to the extent that the ISA is not rescinded and Unified remains the owner of ChanBond, Ms. Leane is entitled to an injunction barring Unified and ChanBond from entering into an Unauthorized Settlement.

## VI. REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Claimants respectfully requests that the Panel issue one or more of the following alternative forms of relief:

(1) Grant an order rescinding the ISA and Termination Agreement and returning the parties to their prior condition before entry of the ISA;

(2) Enter declaratory judgments as described herein;

(3) Grant an order for specific performance, ordering Unified and ChanBond to comply with anti-assignment clause of the ISA;

(4) Award Claimants attorneys' fees, litigation costs (including arbitration and expert fees), pre-and post-judgment interest, as against Respondents, in accordance with contracts or statutes identified herein;

(5) Award Claimants monetary damages, as well as all actual, consequential, and nominal damages as may be proven at the final arbitration hearing;

(6) Grant temporary and permanent injunctive relief to enjoin Respondents as described herein; and

(7) Grant Claimants such other and further relief, at law and in equity, to which they may be entitled.

Respectfully Submitted,

KAMERMAN, UNCYK, SONIKER & KLEIN P.C.

By: /s/    *Akiva M. Cohen*
    Akiva M. Cohen, Esq.
    1700 Broadway, 16th Floor
    New York, New York 10019
    Telephone: (212) 400-4930
    Facsimile:  (866) 221-6122
    acohen@kusklaw.com


By: *s/ J. Sean* Lemoine
    J. Sean Lemoine
    State Bar No.  24027443
    sean.lemoine@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

**ATTORNEYS FOR CLAIMANTS**

**Agreement - ChanBond**

This Agreement (this "**Agreement**"), is made as of October 27, 2015 (the "**Effective Date**"), by and among **Deirdre Leane**, an individual with an address of 2525 Carlisle St., Suite 439, Dallas, Texas 75201 ("**Seller**"), **ChanBond, LLC**, a Delaware limited liability company, of 2633 McKinney Ave., Suite 130-501, Dallas, Texas 75204 ("**ChanBond**") and **UnifiedOnline, Inc.**, a Delaware corporation, of 4126 Leonard Drive, Fairfax, Virginia 22030 ("**Purchaser**"). The parties to this Agreement shall be referred to collectively herein as the "Parties" and separately as a "Party".

W i t n e s s e t h :

WHEREAS, Seller owns 100% of the limited liability company membership interests (the "**Interests**") of **ChanBond**;

WHEREAS, Purchaser wishes to acquire Seller's entire interest in ChanBond, following which Purchaser will become the sole interest holder of ChanBond, all according to the provisions set forth herein below;

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein, the Parties hereto hereby agree as follows:

1. **Definitions**

   1.1   "**Affiliate**" means, with respect to a Party, any Person in any country that directly or indirectly Controls, is Controlled by or is under common Control with such Party.  For the purposes of this Agreement, the term "Control" of a Person means ownership, of record or beneficially, directly or through other Persons, of fifty percent (50%) or more of the voting equity of such Person or, in the case of a non-corporate Person, equivalent interests.

   1.2   "**Collateral Agreements**" means all such concurrent or subsequent agreements, documents and instruments, as amended, supplemented, or otherwise modified in accordance with the terms hereof or thereof, including without limitation, the License Agreement, the Pay Proceeds Agreement, the Common Interest Agreement and the Promissory Note.

   1.3   "**Contract Rights and Obligations**" means the rights and obligation assigned to ChanBond under the contracts ("**Contracts**") listed on **Schedule 1.3.**

   1.4   "**Entity**" means any corporation, partnership, limited liability company, association, joint stock company, trust, joint venture, unincorporated organization, Governmental Body (as defined below) or any other legal entity.

   1.5   "**Governmental Body**" means any (i) U.S. federal, state, county, municipal, city, town village, district, or other jurisdiction or government of any nature; (ii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or other entity and any court or other tribunal); or (iii) body exercising, or entitled or purporting to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

**EXHIBIT 1 ("ISA")**

1.6 "**Intellectual Property**" means all domestic or foreign rights in, to and concerning ChanBond's: (i) patents, patent applications, trademarks, service marks, brand names, certification marks, collective marks, d/b/a's, trade dress, logos, symbols, trade names, assumed names, fictitious names, corporate names and other indications or indicia of origin, including translations, adaptations, derivations, modifications, combinations and renewals thereof; (ii) published and unpublished works of authorship, whether copyrightable or not (including databases and other compilations of data or information), copyrights therein and thereto, moral rights, and rights equivalent thereto, including but not limited to, the rights of attribution, assignation and integrity; (iii) trade secrets, confidential and/or proprietary information (including ideas, research and development, know-how, formulas, compositions, manufacturing and production processes and techniques, technical data, schematics, designs, discoveries, drawings, prototypes, specifications, hardware configurations, customer and supplier lists, financial information, pricing and cost information, financial projections, and business and marketing methods plans and proposals), collectively "**Trade Secrets**"; (iv) computer software, including programs, applications, source and object code, data bases, data, models, algorithms, flowcharts, tables and documentation related to the foregoing; (v) other similar tangible or intangible intellectual property or proprietary rights, information and technology and copies and tangible embodiments thereof (in whatever form or medium); (vi) all applications to register, registrations, restorations, reversions and renewals or extensions of the foregoing; (vii) internet domain names; and (viii) all the goodwill associated with each of the foregoing and symbolized thereby; and (ix) all other intellectual property or proprietary rights and claims or causes of action arising out of or related to any infringement, misappropriation or other violation of any of the foregoing, including rights to recover for past, present and future violations thereof.

1.7 "**Lien**" means any mortgage, pledge, security interest, encumbrance, lien, charge or debt of any kind, any trust, any filing or agreement to grant, deposit or file a pledge or financing statement as debtor under applicable law, any subordination arrangement in favor of any Person, or any other Third Party right.

1.8 "**Person**" means any individual or Entity.

1.9 "**Proceeding**" means any claim, suit, litigation, arbitration, mediation, hearing, audit, charge, inquiry, investigation, governmental investigation, regulatory proceeding or other proceeding or action of any nature (whether civil, criminal, legislative, administrative, regulatory, prosecutorial, investigative, or informal) commenced, brought, conducted, or known to be threatened, or heard by or before, or otherwise involving, any Governmental Body, arbitrator or mediator or similar person or body.

1.10 "**Third Party**" means any Person other than a Party or its Affiliates.

2. **Sale and Purchase of Interests**

Subject to the terms and conditions hereof, at the Closing, Seller shall sell, assign, transfer, convey and deliver to Purchaser ChanBond and Purchaser shall purchase and accept the assignment, transfer conveyance and delivery of ChanBond from the Seller.

Closing of Sale and Purchase of Interests; Covenants of Purchaser

**EXHIBIT 1 ("ISA")**

2.1     Closing.  The sale, assignment, transfer and delivery of ChanBond by the Seller and the purchase thereof by the Purchaser, shall take place at a closing, to be held remotely via the exchange of documents and signatures within one business day following the execution of this Agreement (the "**Closing**" and the "**Closing Date**," respectively).

2.2     Transactions at Closing.  At the Closing, the following transactions shall occur, which transactions shall be deemed to take place simultaneously and no transaction shall be deemed to have been completed or any document delivered until all such transactions have been completed and all required documents delivered:

2.2.1   The Seller shall duly execute an interest assignment deed in the form attached hereto as **Schedule 2.2.1** (the "**Transfer Deed**") and shall deliver their respective Transfer Deed to Purchaser;

2.2.2   At Closing, ChanBond shall appoint William R. Carter, Jr. as sole manager ("**Manager**") and thereafter Manager shall have sole and exclusive authority over the business of ChanBond.

2.2.3   Purchaser shall deliver to the Seller copies of resolutions of its Board of Directors in the form attached hereto as **Schedule 2.2.3**, approving, *inter alia*, the transactions contemplated hereunder and the issuance of the Shares (as defined below) by Purchaser to Seller.

2.2.4   The Collateral Agreements shall have been executed and delivered by the respective parties thereto.

2.2.5   Purchaser shall deliver to the Seller a validly executed share certificate for the Shares (as defined below) issuable in the name of the Seller in such amounts as shall be directed by Seller not less than 72 hours after the Closing.

2.2.6   Purchaser shall deliver to Seller evidence that each Required Approval (as defined below) has been obtained.

2.2.7   Seller, ChanBond and Purchaser shall have entered into the Common Interest Agreement, in the form attached hereto as **Schedule 2.2.7**.

2.2.8   Purchaser shall deliver to Seller the Promissory Note (as defined below), in the form attached hereto as **Schedule 2.2.8**.

2.3     Conditions to Closing.  The obligations of each Party to consummate the transactions contemplated hereby shall be subject to the satisfaction at or prior to the Closing of the following conditions, any of which may be waived in writing by the Party entitled to the benefit thereof, in whole or in part, to the extent permitted by the applicable law:

2.3.1   No temporary restraining order, preliminary or permanent injunction or other order (whether temporary, preliminary or permanent) issued by any court of competent jurisdiction, or other legal restraint or prohibition shall be in effect which prevents the consummation of the transactions contemplated herein, nor shall any proceeding brought by any Governmental Body seeking any of the foregoing be pending, and there shall not be any action

**EXHIBIT 1 ("ISA")**

taken, or any law, regulation or order enacted, entered, enforced or deemed applicable to the transactions contemplated herein illegal.

2.3.2   The representations and warranties of the Seller and Purchaser contained herein shall be true and correct in all material respects on and as of the Closing Date, with the same force and effect as if made on and as of the Closing Date, except for those (i) representations and warranties that are qualified by materiality, which representations and warranties shall be true and correct in all respects and (ii) representations and warranties which address matters only as of a particular date, which representations and warranties shall be true and correct on and as of such particular date.

2.3.3   Each Party shall have performed or complied in all material respects with all agreements and covenants required by this Agreement and the Collateral Agreements ancillary hereto (collectively, the "**Transaction Documents**") to be performed or complied with by it on or prior to the Closing Date.

2.3.4   Each Party shall have received evidence, in form and substance reasonably satisfactory to it, that any and all approvals of Governmental Bodies and other Third Parties required to have been obtained by a Party to consummate the transactions under the Transaction Documents, if any, have been obtained (each a "**Required Approval**").

2.4   Covenant of Purchaser.   Promptly following the Closing, Purchaser shall (a) reimburse Seller for all of their costs and expenses (including reasonable attorneys' fees) incurred by Seller in connection with the consummation of the transactions contemplated by this Agreement and (b) file with the relevant Governmental Bodies all legally required reports in respect of the transactions contemplated under the Transaction Documents, including, but not limited to, the SEC Form 8-K and any Forms 3, Forms 4 or Schedule 13D's.

**3.**   **Consideration**

In consideration for the sale, assignment, transfer and delivery of ChanBond, Purchaser shall pay to the Seller (as directed by Seller) the consideration, as follows:

3.1   Cash Payment.   Five million U.S. Dollars ($5,000,000) payable on or before October 27, 2020 (the "**Cash Payment**"). The obligation to make the Cash Payment shall be evidenced by Purchaser's promissory note (the "**Promissory Note**") in the form of Schedule 2.2.8 attached hereto; and

3.2   Shares Payment.   Forty-four million, seven hundred thousand (44,700,000) shares of Purchaser's Common Stock (the "**Shares"**) par value of $0.001 each.

3.3   Release.   Purchaser for itself, its respective Affiliates, employees, officers, directors, representatives, predecessors in interest, successors and assigns (collectively, the "**Releasing Parties**") knowingly, voluntarily, and irrevocably releases, forever discharges and covenants not to sue the Seller, and their respective Affiliates, employees, officers, directors, representatives, predecessors in interest, successors and assigns (collectively, the "**Released Parties**") from and against any and all rights, claims, losses, lawsuits or causes of action (at law or in equity), liabilities, duties, actions, demands, expenses, breaches of duty, damages,

4

**EXHIBIT 1 ("ISA")**

obligations, proceedings, debts, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, agreements, promises, judgments, and executions of whatever nature, type, kind, description or character (each a "**Claim**"), whether known or unknown, suspected or unsuspected, vested or contingent, past or present, that a Releasing Party ever had, now has or hereafter can, shall or may have against or with respect to the Released Parties or any of them for, upon or by reason of any matter, cause or thing related to or arising from any agreement to which ChanBond is a party or by which it is bound prior to the Closing Date, which are listed on **Schedule 3.3** (the "**Company Agreements**"), except in the case that such Claim arises out of an act of fraud, intentional misconduct or gross negligence on the part of one or more of the Released Parties, as finally determined by a court of competent jurisdiction.  For the avoidance of doubt, the Company shall continue to be bound by the Company Agreements and neither the Seller nor any of the Released Parties has or shall have any further obligation or liability under the Company Agreement (other than confidentiality, common interest and other similar provisions).  The Releasing Parties hereby waive the benefits of any provisions of the law of any state or territory of the United States, or principle of common law, which provides that a general release does not extend to claims which the Releasing Parties do not know or suspect to exist in its favor at the time of executing the release, which if known to it, may have materially affected the release.  It is the intention, understanding and agreement of the Releasing Parties to forever discharge and release all known and unknown, present and future claims within the scope of the releases set forth in this Agreement, provided, however, this Release shall not affect or limit any Claims arising under this Agreement, for enforcement, gross negligence or willful misconduct, fraud, misrepresentation, or similar matters.

4.     **Representations and Warranties of the Seller**

The Seller hereby represents and warrants to Purchaser, and acknowledges that Purchaser is entering into this Agreement in reliance thereon, as follows:

4.1     The Seller is the sole lawful owners, beneficially and of record, of ChanBond and ChanBond constitute all of the membership interests in ChanBond, and upon the consummation of the transactions at the Closing, Purchaser will acquire from the Seller, good and marketable title to ChanBond sold by it.  There are no preemptive, anti-dilution or other participatory rights of any other parties with respect to the transactions contemplated hereunder.

4.2     The Seller has full and unrestricted legal right, power and authority to enter into and perform their obligations under the Transaction Documents and to sell and transfer ChanBond to Purchaser as provided herein.  The Transaction Documents, when executed and delivered by the Seller, shall constitute the valid and legally binding obligation of the Seller, legally enforceable against the Seller in accordance with their respective terms, except as may be limited by bankruptcy, insolvency or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

4.3     The Seller is acquiring the Shares for investment purposes only, for their own account, and not for the benefit of others, nor with any view to, or in connection with any distribution or public offering thereof within the meaning of the U.S. Securities Act of 1933 (the "**Securities Act**").

**EXHIBIT 1 ("ISA")**

4.4     The Seller understands that the Shares have been registered under the Securities Act.  The Seller also acknowledges that the Shares will be restricted for sale for six (6) months after the issuance.  The Seller acknowledges that any certificates evidencing the Shares will contain a legend to the foregoing effect.

4.5     Seller has sufficient knowledge and expertise in business and financial matters so as to enable it to analyze and evaluate the merits and risks of acquiring the Shares pursuant to the terms of this Agreement and is able to bear the economic risk of such acquisition, including a complete loss of its investment in the Shares.

4.6     Seller acknowledges that it has made detailed inquiries concerning Purchaser and its business, and that the officers of Purchaser have made available to the Seller any and all written information which it has requested and have answered to the Seller's satisfaction all inquiries made by the Seller.

4.7     The transactions provided for in this Agreement with respect to the Shares are not part of any pre-existing plan or arrangement for, and there is no agreement or other understanding with respect to, the distribution by the Seller of any of the Shares.

## 5.     Representations and Warranties of ChanBond

5.1     ChanBond hereby represents and warrants to Purchaser, and acknowledges that Purchaser is entering into this Agreement in reliance thereon, as follows:

(a)     ChanBond is duly formed, validly existing and in good standing under the laws of the State of Delaware, and has full limited liability company power and authority to own, lease and operate its properties and assets and to conduct its business as now being conducted and as currently proposed to be conducted.

(b)     As of the Closing Date, ChanBond is a party to the pending litigation identified in **Schedule 5.1(b)**.

(c)     As of the Closing Date the Contracts are in full force and effect and none of the respective parties to the Contracts are in breach of any material obligation under the Contracts.

(d)     To ChanBond's knowledge, ChanBond is not a party nor bound by any contracts, agreements, promises or commitments except the assignments related to the Contracts.

(e)     Other than the assignments related to the Contracts, ChanBond has no material assets.  None of ChanBond's employees will continue with ChanBond after the Closing.   ChanBond's bank accounts and the contents thereof will be transferred to Purchaser. Any amounts paid or payable to ChanBond (or any of its Affiliates) under licenses or other agreements or judgments entered into by or awarded to any Affiliates of ChanBond prior to the Closing Date, shall be retained as the exclusive property of such

6

**EXHIBIT 1 ("ISA")**

Affiliates and after the Closing Date, ChanBond or any of its Affiliates will disclaim any interest therein.

6.   **Representations and Warranties of Purchaser**

Purchaser, represents and warrants to the Seller and acknowledges that the Seller are entering into this Agreement in reliance thereon as follows:

6.1   Purchaser is duly organized, validly existing and in good standing under the laws of Delaware and has full corporate power and authority to own, lease and operate its properties and assets and to conduct its business as now being conducted and as currently proposed to be conducted. The corporate governance documents of Purchaser (including but not limited to its Certificate of Incorporation, Bylaws and any Voting Rights Agreements, Stockholders' Agreements, Investors' Rights Agreements and the like) as in effect on the date hereof have been provided or made available to the Seller (the "**Purchaser Governance Documents**").

6.2   The Transaction Documents, when executed and delivered by Purchaser, shall constitute the valid and legally binding obligation of Purchaser, respectively, legally enforceable against Purchaser in accordance with their respective terms, except as may be limited by bankruptcy, insolvency or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

6.3   The authorized capital stock of Purchaser consists of 6,000,000,000 shares of Common Stock and 10,000,000 shares of Convertible Preferred Stock, each having a par value of USD $0.001, of which 912,897,537 shares are issued and outstanding (exclusive of shares issued hereunder). Purchaser's fully-diluted capital structure before and after Closing is set forth in the capitalization table attached hereto as **Schedule 6.3**. All capital stock, preemptive rights, rights of first refusal, rights of co-sale, convertible, exercisable or exchangeable securities, outstanding warrants, options or other rights to subscribe for, purchase or acquire from Purchaser or any of its subsidiaries or Affiliates any capital stock of the Purchaser and/or any of its subsidiaries are set forth in detail on **Schedule 6.3**. Except for the transactions contemplated by this Agreement and the current Purchaser Governance Documents, there are no Liens, options to purchase, proxies, preemptive rights, convertible, exercisable or exchangeable securities, outstanding warrants, options, voting trust and other voting agreements, calls, promises or commitments of any kind and, Purchaser has no knowledge that any of the said stockholders owns any other stock, options or any other rights to subscribe for, purchase or acquire any capital stock of Purchaser from Purchaser or from each other.

6.4   All issued and outstanding capital stock of Purchaser has been duly authorized, and is validly issued and outstanding and fully-paid and non-assessable. The Shares, when issued and allotted in accordance with this Agreement:  (a) will be duly authorized, validly issued, fully paid, non-assessable, and free of any preemptive rights, (b) will have the rights, preferences, privileges, and restrictions set forth in Purchaser's Certificate of Incorporation, Certificate of Designation and By-laws, and (c) will be issued free and clear of any Liens of any kind.

**EXHIBIT 1 ("ISA")**

6.5     Purchaser is currently in material compliance with all applicable laws, including securities laws. Purchaser has timely filed all forms and reports required to be filed with the Securities Exchange Commission (the "**SEC**") including, without limitation, all exhibits required to be filed therewith, and has made available to the Seller true, complete and correct copies of all of the same so filed (including any forms, reports and documents incorporated by reference therein or filed after the date hereof, the "**Purchaser SEC Reports**"). For purposes hereof, such Purchaser SEC Reports shall be deemed delivered to Seller via the SEC's EDGAR database. The Purchaser SEC Reports: (i) at the time filed complied (or will comply when filed, as the case may be) in all material respects with the applicable requirements of the Securities Act and/or the Securities Exchange Act of 1934, as amended (the "**Exchange Act**") and the rules and regulations promulgated thereunder, and with the Sarbanes-Oxley Act of 2002, and the rules and regulations promulgated thereunder, in each case applicable to such Purchaser SEC Reports at the time they were filed; and (ii) did not at the time they were filed (or, if later filed, amended or superseded, then on the date of such later filing) contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements contained therein, in the light of the circumstances under which they were made, not misleading.

6.6     Purchaser has timely filed (or has been deemed to have timely filed pursuant to Rule 12b-25 under the Exchange Act) and made publicly available on the SEC's EDGAR system, and the Seller may rely upon, all certifications and statements required by (i) Rule 13a-14 or Rule 15d-14 under the Exchange Act and (ii) Section 906 of the Sarbanes Oxley Act of 2002 with respect to any documents filed with the SEC. Since the most recent filing of such certifications and statements, there have been no significant changes in Purchaser's internal control over financial reporting (as such term is defined in Rule 13a-15(f) under the Exchange Act), or in other factors that could significantly affect its disclosure controls and procedures.

6.7     The financial statements (including footnotes thereto) included in or incorporated by reference into the Purchaser SEC Reports (the "**Purchaser Financial Statements**") were complete and correct in all material respects as of their respective filing dates, complied as to form in all material respects with the Exchange Act and the applicable accounting requirements, rules and regulations of the SEC promulgated thereunder as of their respective dates and have been prepared in accordance with United States generally accepted accounting principles ("**GAAP**") applied on a consistent basis during the periods involved (except as otherwise noted therein). The Purchaser Financial Statements fairly present the financial condition of Purchaser as of the dates thereof and results of operations, cash flows and stockholders' equity for the periods referred to therein (subject, in the case of unaudited Purchaser Financial Statements, to normal recurring year-end adjustments which were not and will not be material in amount). Without limiting the generality of the foregoing, (i) no independent public accountant of Purchaser has resigned or been dismissed as independent public accountant of Purchaser as a result of or in connection with any disagreement with Purchaser on a matter of accounting principles or practices, financial statement disclosure or auditing scope or procedure, (ii) no executive officer of Purchaser has failed in any respect to make, without qualification, the certifications required of him or her under Section 302 or 906 of the Sarbanes-Oxley Act with respect to any form, report or schedule filed by Purchaser with the SEC since the enactment of the Sarbanes-Oxley Act and (iii) no enforcement action has been initiated or, to the knowledge of Purchaser, threatened against Purchaser by the SEC relating to disclosures contained in any

8

**EXHIBIT 1 ("ISA")**

Purchaser SEC Report.  There has been no change in Purchaser's accounting policies except as described in the notes to the Purchaser Financial Statements.

6.8     Purchaser is not in default and neither the execution and delivery of the Transaction Documents nor compliance by Purchaser with the terms and provisions hereof and thereof, will conflict with, or result in a breach or violation of, any of the terms, conditions and provisions of:  (i) the Purchaser Corporate Governance Documents, or (ii) any note, indenture, mortgage, lease, agreement, contract, purchase order or other instrument, document or agreement to which Purchaser is a party or by which it or any of its property is bound, or (iii) any law, statute, ordinance, regulation, order, writ, injunction, decree, or judgment of any court or any governmental department, commission, board, bureau, agency or instrumentality in any country in which Purchaser conducts business, with the exception of those judgments listed **Schedule 6.8**. Such execution, delivery and compliance with the Transaction Documents will not (a) give to others any rights, including rights of termination, cancellation or acceleration, in or with respect to any agreement, contract or commitment referred to in this paragraph, or to any of the properties of Purchaser, or (b) except for compliance with any applicable requirements under the Securities Act, the Exchange Act and any requirements of the Over-the-Counter Bulletin Board ("**OTCBB**"), no consent, approval, order or authorization of, or registration, declaration or filing with any Governmental Body or any other Person is required by or with respect to Purchaser in connection with the execution and delivery of the Transaction Documents or the consummation of the transactions contemplated hereby and thereby, which consent or approval has not heretofore been obtained or will be obtained by Closing.  To the knowledge of Purchaser, no third party is in default under any agreement, contract or other instrument or document to which Purchaser is a party.  To the knowledge of Purchaser, Purchaser is not a party to or bound by any order, judgment, decree or award of any Governmental Body.

6.9     No action, proceeding or governmental inquiry or investigation is pending or, to the knowledge of Purchaser, threatened against Purchaser or any of its officers, directors or employees (in their capacity as such or as shareholders, if applicable), or against any of Purchaser's properties, including, without limitation, assets, licenses and rights transferred to Purchaser under any written agreement or other binding undertaking, or with regard to Purchaser's business, before any court, arbitration board or tribunal or administrative or other governmental agency, nor does Purchaser believe that there is any basis for the foregoing.

**7.     Survival; Indemnification; Limitation of Liability; No Consequential Damages**

7.1     The representations and warranties of each Party hereunder shall survive the Closing and remain in effect for a period of one (1) year thereafter.

7.2     Indemnification.  The Seller, on the one side, and Purchaser on the other side (as applicable, the "**Indemnifying Party**") agree to indemnify and hold harmless the Parties of the other side and their respective Affiliates (as applicable, the "**Indemnified Parties**"), against any and all loss, liability, claim, damage and expense whatsoever (including, but not limited to, any and all expenses whatsoever reasonably incurred in investigating, preparing or defending against any litigation commenced or threatened or any claim whatsoever) arising out of or based upon (a) any breach of any of such Party's representations or warranties herein, misrepresentation or warranty or breach or failure by the Indemnifying Party to comply with any covenants or

**EXHIBIT 1 ("ISA")**

agreement made by it herein, in the other Transaction Documents or in any other document furnished by it to any of the foregoing in connection with this transaction and (b) any action for securities law violations instituted by an Indemnifying Party which is finally resolved by judgment against such Indemnifying Party.

7.3    Mechanics of Indemnification.   Whenever any claim arises for indemnification under this Agreement or an event which may result in a claim for such indemnification has occurred, the Indemnified Party(ies) will promptly notify the Indemnifying Party of the claim and, when known, the facts constituting the basis for such claim.  The Indemnifying Party shall have the obligation to dispute and defend all such Third Party claims and thereafter so defend and pay any adverse final judgment or award or settlement amount in regard thereto.  Such defense shall be controlled by the Indemnifying Party, and the cost of such defense shall be borne by the Indemnifying Party, provided that the Indemnified Parties shall have the right to participate in such defense at their own expense, unless the Indemnified Parties require their own attorney due to a conflict of interest, in which case, the expense of a single law firm acceptable to such Indemnified Party will be borne by the Indemnifying Party.  The Indemnified Parties shall cooperate in all reasonable respects in the investigation, trial and defense of any such claim at the cost of the Indemnifying Party. If the Indemnifying Party fails to take action within thirty (30) days of notice, then the Indemnified Parties shall have the right to pay, compromise or defend any third party claim, such costs to be borne by the Indemnifying Party.  The Indemnified Parties shall also have the right and upon delivery of ten (10) days advance written notice to such effect to the Indemnifying Party, exercisable in good faith, to take such action as may be reasonably necessary to avoid a default prior to the assumption of the defense of the Third Party claim by the Indemnifying Party, and any reasonable expenses incurred by the Indemnified Parties so acting shall be paid by the Indemnifying Party.   The Indemnifying Party will not settle or compromise any Third Party claim without the prior written consent of the Indemnified Parties, not to be unreasonably withheld.

7.4    Purchaser Indemnification.  Purchaser and ChanBond shall indemnify and hold the Seller harmless with respect to any loss, expense, cost, damage and settlement (collectively, "**Indemnified Expenses**") caused to Seller as a result of Purchaser's or ChanBond's or its Affiliates' actions or omissions with respect to the Patents following the Closing Date, provided Seller is not determined to responsible for such actions as a result of their fraud or intentional misconduct.  In particular, in the event that the enforcement or other activities with the Patents results in litigation or other dispute resolution processes with one or more Third Parties, with Seller being required to be involved or liable for the expenses arising through actions of ChanBond (*e.g.*, being added as a party to the process, even if such joinder is improper, or being subject to Third Party discovery requests or otherwise having any exposure for any claims arising through activities of ChanBond), Purchaser and ChanBond shall, at Seller's request, indemnify Seller all of Seller's Indemnified Expenses arising from that involvement.

7.5    Limitation of Liability.   SELLER'S TOTAL LIABILITY UNDER THE TRANSACTION DOCUMENTS WILL NOT EXCEED THE CASH CLOSING CONSIDERATION ACTUALLY RECEIVED BY SELLER HEREUNDER. THE PARTIES ACKNOWLEDGE THAT THIS LIMITATION ON POTENTIAL LIABILITIES WAS AN ESSENTIAL ELEMENT IN SETTING CONSIDERATION UNDER THE TRANSACTION DOCUMENTS.

# EXHIBIT 1 ("ISA")

7.6    Limitation on Consequential Damages.  NEITHER PARTY WILL HAVE ANY OBLIGATION OR LIABILITY (WHETHER IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE (WHETHER ACTIVE, PASSIVE OR IMPUTED), REPRESENTATION, STRICT LIABILITY OR PRODUCT LIABILITY), FOR ANY INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES OR LOSS OF REVENUE, PROFIT, SAVINGS OR BUSINESS ARISING FROM OR OTHERWISE RELATED TO THIS AGREEMENT, EVEN IF A PARTY OR ITS EMPLOYEES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## 8.    **Miscellaneous**

8.1    Each of the Parties hereto shall perform such further acts and execute such further documents as may reasonably be necessary to carry out and give full effect to the provisions of the Transaction Documents and the intentions of the Parties as reflected thereby.

8.2    Governing Law; Arbitration; Prevailing Party.  This Agreement and all claims or causes of action that may be based upon, arise out of or relate to this Agreement or the Collateral Agreements will be construed in accordance with and governed by the internal laws of the State of Texas applicable to agreements made and to be performed entirely within such State without regard to conflicts of laws principles thereof.  Any dispute arising under or in connection with any matter of any nature (whether sounding in contract or tort) relating to or arising out of this Agreement, shall be resolved exclusively by arbitration.  The arbitration shall be in conformity with and subject to the applicable rules and procedures of the American Arbitration Association. The arbitration shall be conducted before a panel of three (3) arbitrators, with one arbitrator to be selected by each of Seller and Buyer and the third arbitrator to be selected by the arbitrators selected by the Parties.  The Parties agree to be (a) subject to the exclusive jurisdiction and venue of the arbitration in the Eastern District of Texas (b) bound by the decision of the arbitrator as the final decision with respect to the dispute, and (c) subject to the jurisdiction of both of the federal courts of the United States of America or the courts sitting in the Eastern District in the State of Texas for the purpose of confirmation and enforcement of any award.  The prevailing party in any arbitration shall be entitled to recover its costs and expenses (including attorney's fees and expenses) from the non-prevailing party.

8.3    Limitations on Assignment.  Except as expressly permitted in this Section, none of Purchaser or ChanBond may grant or assign any rights or delegate any duties under this Agreement to any Third Party (including by way of a "change in control") or may sell, transfer, or spin-off any of the interests in ChanBond or any of its material assets without the prior written consent of Seller.  Notwithstanding the foregoing, Purchaser shall be permitted to transfer or assign) its rights, interests and obligations under this Agreement, as applicable, without Seller's prior written consent as part of a sale of all or substantially all of its business, equity to, or a change in control transaction with a Third Party acquirer (an "**M&A Transaction**", and an "**Acquirer**," respectively); provided that (a) such transfer or assignment is subject to all of the terms and conditions of this Agreement; and (ii) such Acquirer executes a written undertaking towards Seller agreeing to be bound by all of the terms and conditions of this Agreement with respect to the rights being transferred or assigned.  Except as otherwise expressly limited herein,

**EXHIBIT 1 ("ISA")**

the provisions hereof shall inure to the benefit of, and be binding upon, the successors, permitted assigns, heirs, executors, and administrators of the Parties hereto.

8.4     This Agreement and the Schedules hereto constitute the full and entire understanding and agreement between the Parties with regard to the subject matters hereof and thereof and any other written or oral agreement relating to the subject matter hereof existing between the Parties are expressly canceled.  Any term of this Agreement may be amended only with the written consent of all Parties thereto.  The observance of any term hereof may be waived (either prospectively or retroactively and either generally or in a particular instance) only with the written consent of the party against which such waiver is sought.

8.5     All notices and other communications required or permitted hereunder to be given to a Party to this Agreement shall be in writing and shall be faxed, emailed or mailed by registered or certified mail, postage prepaid, or prepaid air courier, or otherwise delivered by hand or by messenger, addressed to such Party's address as set forth above; or at such other address as the Party shall have furnished to each other Party in writing in accordance with this provision.  Any notice sent in accordance with this Section shall be effective (i) if mailed, seven (7) business days after mailing, (ii) if by air courier two (2) business days after delivery to the courier service, (iii) if sent by messenger, upon delivery, and (iv) if sent via facsimile or email, upon transmission and electronic confirmation of receipt or (if transmitted and received on a non-business day) on the first business day following transmission and electronic confirmation of receipt (provided, however, that any notice of change of address shall only be valid upon receipt).

8.6     No delay or omission to exercise any right, power, or remedy accruing to any Party upon any breach or default under this Agreement, shall be deemed a waiver of any other breach or default theretofore or thereafter occurring.  Any waiver, permit, consent, or approval of any kind or character on the part of any Party of any breach or default under this Agreement, or any waiver on the part of any Party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing.   All remedies, either under this Agreement or by law or otherwise afforded to any of the Parties, shall be cumulative and not alternative.

*[Signature Page Follows]*

# EXHIBIT 1 ("ISA")

IN WITNESS WHEREOF the Parties have signed this Agreement as of the date first hereinabove set forth.

SELLER:                          **DEIRDRE LEANE**

By: _Deirdre Leane_
Name: DEIRDRE LEANE
Date: 27 October 2015


PURCHASER:                       **UNIFIEDONLINE, INC.**

By: _[signature]_
Name: Rob Howe
Title: CEO
Date: 27 October, 2015


CHANBOND:                        **CHANBOND, LLC**

By: _Deirdre Leane_
Name: DEIRDRE LEANE
Title: MANAGER
Date: 27 October 2015


13

# EXHIBIT 1 ("ISA")

IN WITNESS WHEREOF the Parties have signed this Agreement as of the date first hereinabove set forth.

SELLER:                        **DEIRDRE LEANE**

By: _Deirdre Leane_
Name: _DEIRDRE LEANE_
Date: _27 October 2015_


PURCHASER:                     **UNIFIEDONLINE, INC.**

By: _[signature]_
Name: _Rob Howe_
Title: _CEO_
Date: _27 October, 2015_


CHANBOND:                      **CHANBOND, LLC**

By: _Deirdre Leane_
Name: _DEIRDRE LEANE_
Title: _MANAGER_
Date: _27 October 2015_

13

**EXHIBIT 1 ("ISA")**

## SCHEDULE 1.3

### Contracts

1. ChanBond, LLC – CBV, Inc. Patent Purchase Agreement dated April 9, 2015
2. ChanBond, LLC – Bentham IMF Litigation Funding Agreement dated September 9, 2015
3. ChanBond, LLC - IPNAV, LLC Advisory Services Agreement dated April 9, 2015
4. ChanBond, LLC - Mishcon de Reya Retention Agreement dated April 20, 2015
5. ChanBond, LLC - Bayard Law Engagement Agreement dated June 8, 2015
6. ChanBond, LLC - Ascenda Law Group Engagement Agreement dated July 14, 2015

**EXHIBIT 1 ("ISA")**

## SCHEDULE 2.2.1

### Interest Transfer Deed

**FOR VALUE RECEIVED**, the undersigned, Deirdre Leane ("**Transferor**") hereby assigns, transfers and conveys all of its membership interests in ChanBond, LLC, a Delaware limited liability company (the "**Interests**") to UnifiedOnline, Inc., a Delaware corporation ("**Transferee**") and Transferee hereby accepts the above mentioned Interests.

In witness whereof, we affix our signatures hereto this 27th day of October, 2015.

Transferor:

**Deirdre Leane**

27. October 2015
Date

Transferee:

**UnifiedOnline, Inc.**

10-27-2015
Date

Witness:

Name: Joseph Ghally

10/27/2015
Date

Witness:

Name: B. Rodriguez
10-27-2015

Date

# EXHIBIT 1 ("ISA")

## SCHEDULE 2.2.3

## UnifiedOnline, Inc.'s Board of Directors Resolutions

EXHIBIT 1 ("ISA")

STATEMENT OF UNANIMOUS
CONSENT TO ACTION TAKEN IN
LIEU OF A
SPECIAL MEETING OF THE BOARD OF
DIRECTORS OF
UNIFIEDONLINE, INC.

In lieu of a special meeting of the board of directors (the "Board") of UnifiedOnline, Inc., a Delaware corporation (the "Corporation"), and in accordance with the Bylaws of the Corporation and §141(f) of the General Corporation Law of the State of Delaware, the undersigned, being all of the members of the Board, do hereby consent to the adoption of, and do hereby adopt, the following resolutions and declare them to be in full force and effect as if they had been duly adopted at a meeting of the Board, duly called, noticed and held:

**WHEREAS,** the Board deems it to be in the best interests of the Corporation to enter into a Purchase Agreement dated October 26, 2015 (the "Agreement"), in connection with the acquisition of ChanBond, LLC ("ChanBond"), a Delaware limited liability company, the owner of that certain portfolio of Intellectual Property, known as the "ChanBond" patent portfolio, more particularly described as follows:

The Corporation and CHANBOND agree to an acquisition by the Corporation of 100% of the membership interests of CHANBOND for consideration generally defined as: 44,700,000 shares of the common stock of the Corporation , plus a $5MM 5-Year No-Interest Promissory Note, with a Maturity Date of October 27, 2020..

**NOW, THEREFORE BE IT RESOLVED,** that the Corporation is hereby authorized to enter into the Agreement and the Note.

**FURTHER RESOLVED,** that any executive officer of the Corporation be, and hereby is authorized, empowered and directed, from time to time, to take such additional action and to execute, certify and deliver to the transfer agent of the Corporation, as any appropriate or proper to implement the provisions of the foregoing resolutions; and be it

**FURTHER RESOLVED,** that this Consent may be executed in any number of counterparts, each of which shall be deemed to be an original but all of which together will constitute one and the same instrument, and that counterpart signature pages transmitted by facsimile transmission, by electronic mail in portable document format (.pdf) or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, shall have the same effect as physical delivery of the paper document bearing an original signature.

**IN WITNESS WHEREOF,** the undersigned members of the Board have executed this Consent as of October 26, 2015.

_____

Robert M. Howe, III

**EXHIBIT 1 ("ISA")**

## SCHEDULE 2.2.7

### Common Interest Agreement

THIS COMMON INTEREST AGREEMENT ("**Agreement**") is entered into as of April 9, 2015, by and among **ChanBond, LLC** (the "**Company**") having its principal offices at 2633 McKinney Avenue, Suite 130-501, Dallas, Texas 75204; **UnifiedOnline, Inc.** ("**UnifiedOnline**"), having its principal offices at 4126 Leonard Drive, Fairfax, Virginia 22030; and **Deirdre Leane ("Leane")**, located at 2525 Carlisle Street, Suite 439, Dallas, Texas 75201.

**EXHIBIT 1 ("ISA")**

1.      Background.

1.1.    Company, Unified and Leane are sometimes referred to herein as a "**party**" or the "**parties**" and are presently negotiating the closing of an agreement under which UnifiedOnline will purchase Company from Leane and continue to enforce and license patents and related rights owned by the Company "**IP Rights**" and the "**Patent Matters**" respectively).

1.2.    The parties have a common legal interest in upholding the validity and enforceability of the IP Rights, for purposes of enforcement.  The parties anticipate they will enforce inherent rights of the IP Rights against third parties through litigation.  The parties have agreed to treat their communications and those of their counsel relating to the Patent Matters as protected by the common interest doctrine.  Furtherance of the Patent Matters requires the exchange of proprietary documents and information, the joint development of legal strategies and the exchange of privileged information and attorney work product developed by the parties and their respective counsel.

2.      Common Interest.

2.1.    The parties have a common, joint and mutual legal interest in the monetization of valid and enforceable patents.  In furtherance of that common interest, the parties will cooperate with each other, to the extent permitted by law, to share information protected by the

attorney-client privilege, the work product doctrine, or other applicable privilege or immunity with respect to the Patent Matters.  Any counsel or consultant retained by a party or their counsel to assist in the Patent Matters shall be bound by, and entitled to the benefits of this Agreement.

2.2.    In order to further their common interest, the parties and their counsel may exchange privileged and work product information, orally and in writing, including, without limitation, factual analyses, mental impressions, legal memoranda, source materials, draft legal documents, evidence of use materials, claims charts, prosecution history files and other information (hereinafter "**Common Interest Materials**").  The sole purpose of the exchange of the Common Interest Materials is to support the parties' common interest with respect to the enforcement for the Patent Matters.  Any Common Interest Materials exchanged shall continue to be protected under all applicable privileges and no such exchange shall constitute a waiver of any applicable privilege or protection.  Nothing in this Agreement requires a party to share information with the other party.

3.      Nondisclosure.

3.1.    The parties and their counsel shall use the Common Interest Materials solely in connection with the Patent Matters and shall take appropriate steps to protect the privileged and confidential nature of the Common Interest Material.  No party nor

**EXHIBIT 1 ("ISA")**

their respective counsel shall produce privileged documents or information unless or until directed to do so by a final order of a court of competent jurisdiction, or upon the prior written consent of the other party. No privilege or objection shall be waived by a party hereunder without the prior written consent of the other party.

3.2. Except as herein provided, in the event that either party or its counsel is requested or required in the context of a litigation, governmental, judicial or regulatory investigation or other similar proceedings (by oral questions, interrogatories, requests for information or documents, subpoenas, civil investigative demands or similar process) to disclose any Common Interest Materials, the party or its counsel shall assert all applicable privileges, including, without limitation, the common interest doctrine, and shall immediately inform the other party and the other party's counsel of the request or requirement to disclose.

4. Relationship; Additions; Termination.

4.1. This Agreement does not create any agency or similar relationship among the parties. Through the term of the agreement between the parties, or any other agreement requiring confidentiality, (whichever term is longer), no party nor their respective counsel has the authority to waive any applicable privilege or doctrine on behalf of any other party.

4.2. Nothing in this Agreement affects the separate and independent representation of each party by its respective counsel or creates an attorney-client relationship between the counsel for a party and the other party to this Agreement.

4.3. This Agreement shall continue until terminated upon the written request of either party. Upon termination, each party and their respective counsel shall return any Common Interest Material furnished by the other party. Notwithstanding termination, this Agreement shall continue to protect all Common Interest Materials disclosed prior to termination. Sections 3 and 5 shall survive termination of this Agreement.

5. General Terms.

5.1. This Agreement is governed by the laws of the State of Delaware, without regard to its choice of law principles to the contrary. In the event any provision of the Agreement is held by any court of competent jurisdiction to be illegal, void or unenforceable, the remaining terms shall remain in effect. Failure of either party to enforce any provision of this Agreement shall not be deemed a waiver of future enforcement of that or any other provision.

5.2. The parties agree that a breach of this Agreement would result in irreparable injury, that money damages would not be a sufficient remedy and that the disclosing party shall be entitled to equitable relief, including injunctive relief, as a non-exclusive remedy for any

**EXHIBIT 1 ("ISA")**

such breach.

5.3.    Notices given under this Agreement shall be given in writing and delivered by messenger or overnight delivery service as set forth below, and shall be deemed to have been given on the day received:

ChanBond, LLC
2633 McKinney Avenue
Suite 130-501
Dallas, TX 75204

UnifiedOnline, Inc.
4126 Leonard Drive
Fairfax, VA 22030

Deirdre Leane
2525 Carlisle Street
Suite 439
Dallas, TX 75201

5.4.    This Agreement is effective and binding upon each party as of the date it is signed by or on behalf of a party and may be amended only by a writing signed by or on behalf of each party.   This Agreement may be executed in counterparts.  Any signature reproduced or transmitted via email of a .pdf file, photocopy, facsimile or other process of complete and accurate reproduction and transmission shall be considered an original for purposes of this Agreement.

***The remainder of this page has been intentionally left blank.**

**EXHIBIT 1 ("ISA")**

IN WITNESS WHEREOF, CHANBOND, LLC, UNIFIEDONLINE, INC. and DEIRDRE LEANE have executed this Common Interest Agreement by their duly authorized representatives.

CHANBOND, LLC

By: _Deirdre Leane_

     (Signature)

Name: DEIRDRE LEANE

Title: MANAGER

UNIFIEDONLINE, INC.

By: _____

     (Signature)

Name: Rob Howe

Title: CEO

DEIRDRE LEANE

By: _Deirdre Leane_

     (Signature)

Name: DEIRDRE LEANE

Title: DR.

**EXHIBIT 1 ("ISA")**

**SCHEDULE 2.2.8**

**Promissory Note**

**EXHIBIT 1 ("ISA")**

**THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS. THE SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR ASSIGNED (I) IN THE ABSENCE OF (A) AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS OR (B) AN OPINION OF COUNSEL, IN A GENERALLY ACCEPTABLE FORM, THAT REGISTRATION IS NOT REQUIRED UNDER SAID ACT OR APPLICABLE STATE SECURITIES LAWS OR (II) UNLESS SOLD PURSUANT TO RULE 144 UNDER SAID ACT. NOTWITHSTANDING THE FOREGOING, THE SECURITIES MAY BE PLEDGED IN CONNECTION WITH A BONA FIDE MARGIN ACCOUNT OR OTHER LOAN OR FINANCING ARRANGEMENT SECURED BY THE SECURITIES. ANY TRANSFEREE OF THIS NOTE SHOULD CAREFULLY REVIEW THE TERMS OF THIS NOTE. THE PRINCIPAL AMOUNT REPRESENTED BY THIS NOTE MAY BE LESS THAN THE AMOUNTS SET FORTH ON THE FACE HEREOF.**

**UNIFIEDONLINE, INC.**

**PROMISSORY NOTE**

Principal Amount: $5,000,000                    Original Issuance Date: October 27, 2015

FOR VALUE RECEIVED UnifiedOnline, Inc., a Delaware corporation (the "Company"), promises to pay to Deirdre Leane, an individual, of 2525 Carlisle St., Suite 439, Dallas, TX 75201 (the "Holder") an aggregate principal amount of Five Million Dollars ($5,000,000.00) (representing the Cash Payment as provided for and defined in the Interest Sale Agreement dated as of the date hereof (the "Interest Sale Agreement"), to which the Company and the Holder are parties) payable on or prior to October 27, 2020 (the "Maturity Date"), provided, however, that if this Note is not paid in full by the Maturity Date, the aggregate principal amount of this Note shall be increased by Twenty Five Thousand Dollars ($25,000.00) for each month such payment is delayed (or *pro rata* portion thereof) until paid in full (the "New Principal Balance").

The following is a statement of the rights of the Holder of this Note and the conditions to which this Note is subject, and to which the Holder, by the acceptance of this Note, agrees:

1.    Event of Default.

(a)    For purposes of this Note, an "Event of Default" means:

(i)    the Company shall default in the payment of principal on this Note on or prior to the applicable Maturity Date; or

(ii)    the Company shall be in breach of any obligation, covenant or representation made in this Note or the Interest Sale Agreement; or

(iii)    the Company shall (a) become insolvent; (b) dissolve or terminate its existence; (c) admit in writing its inability to pay its debts generally as they mature; (d) make an assignment for the benefit of creditors or commence proceedings for its

**EXHIBIT 1 ("ISA")**

dissolution; or (e) apply for or consent to the appointment of a trustee, liquidator, receiver or similar official for it or for a substantial part of its property or business; or

       (iv)    a trustee, liquidator or receiver shall be appointed for the Company or for a substantial part of its property or business without its consent and shall not be discharged within thirty (30) days after such appointment; or

       (v)    any governmental agency or any court of competent jurisdiction at the insistence of any governmental agency shall assume custody or control of the whole or any substantial portion of the properties or assets of the Company and shall not be dismissed within thirty (30) days thereafter; or

       (vi)    bankruptcy, reorganization, insolvency or liquidation proceedings or other proceedings, or relief under any bankruptcy law or any law for the relief of debt shall be instituted by or against the Company and, if instituted against the Company shall not be dismissed within thirty (30) days after such institution, or the Company shall by any action or answer approve of, consent to, or acquiesce in any such proceedings or admit to any material allegations of, or default in answering a petition filed in any such proceeding.

Upon the occurrence of an Event of Default, the entire unpaid and outstanding indebtedness due under this Note shall be immediately due and payable without notice and Holder shall be entitled to such additional rights and remedies as are provided by law.

Until the Note is paid in full, the Company shall be obligated to make payments on this Note to the Holder from 100% of any Net Revenues (as defined below) within thirty (30) calendar days after each calendar month commencing with the calendar month ending October 31, 2015.

"*Net Revenues*" shall mean the total aggregate Gross Recoveries less the total aggregate amount of costs and expenses - incurred by or on behalf of the Company in connection with the monetization, enforcement and/or sale of the Assigned Patent Rights of the ChanBond, LLC patent portfolio (described in Exhibit A) - which are exclusively limited to: (a) the reasonable fees and expenses of litigation counsel; (b) the reasonable fees and expenses of licensing counsel (c) the reasonable  fees and expenses of any re-examination or other patent prosecution counsel; (d) reasonable expert fees, court costs, deposition costs and other reasonable costs and expenses related to the maintenance, prosecution, enforcement, and licensing of the Patents; and (e) the reasonable fees and expenses of any other advisors or agents which the Parties mutually agree are required and the repayment of litigation financing.

Notwithstanding anything to the contrary contained in this Note, in no event shall the total of all charges payable under this Note, which are or could be held to be in the nature of interest exceed the maximum rate permitted to be charged under applicable law.  Should the Holder receive any payment which is or would be in excess of that permitted to be charged under any such applicable law, such payment shall have been, and shall be deemed to have been, made in error and shall automatically be applied to reduce the principal balance outstanding on this Note.

2

# EXHIBIT 1 ("ISA")

(b)     As soon as possible and in any event within two days after the Company becomes aware that an Event of Default has occurred, the Company shall notify the Holder in writing of the nature, extent and time of and the facts surrounding such Event of Default, and the action, if any, that the Company proposes to take with respect to such Event of Default.

2.     Prepayment. The Company may prepay this Note at any time, in whole or in part, without penalty or premium.

3.     Miscellaneous.

(a)     Loss, Theft, Destruction or Mutilation of Note.  Upon receipt of evidence reasonably satisfactory to the Company of the loss, theft, destruction or mutilation of this Note and delivery of an indemnity agreement reasonably satisfactory in form and substance to the Company and, in the case of mutilation, on surrender and cancellation of this Note (or what remains thereof), the Company shall execute and deliver, in lieu of this Note, a new note executed in the same manner as this Note, in the same principal amount as the unpaid principal amount of this Note and dated the date of this Note.

(b)     Payment.  All payments under this Note shall be made in lawful tender of the United States no later than 5:30 pm, Eastern Standard Time, on the date on which such payment is due, by wire transfer of immediately available funds to the account identified by the Holder. Time is of the essence as to all dates set forth herein, provided, however, that whenever any payment to be made under this Note shall be stated to be due on a Saturday, Sunday or a public holiday, or the equivalent for banks generally under the laws of the State of New York (any other day being a "Business Day"), such payment may be made on the next succeeding Business Day and such extension of time shall be included in the computation of the payment of interest.

(c)     Waivers.  The Company hereby waives notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor and all other notices or demands relative to this instrument.

(d)     Waiver and Amendment.  Any provision of this Note may be amended, waived or modified only by an instrument in writing signed by the party against which enforcement of the same is sought.

(e)     Notices.  Any notice or other communication required or permitted to be given hereunder shall be in writing sent by mail, facsimile with printed confirmation, nationally recognized overnight carrier or personal delivery and shall be effective upon actual receipt of such notice, to the following addresses until notice is received that any such address or contact information has been changed:

To the Company:

UnifiedOnline, Inc.
4126 Leonard Drive
Fairfax, VA 22030

# EXHIBIT 1 ("ISA")

To the Holder:

Deirdre Leane
2525 Carlisle St.
Suite# 439
Dallas, TX 75201

       (f)    <u>Expenses; Attorneys' Fees</u>.  If action is instituted to enforce or collect this Note, the Company promises to pay or reimburse all reasonable costs and expenses, including, without limitation, reasonable attorneys' fees and costs, incurred by the Holder in connection with such action.

       (g)    <u>Successors and Assigns</u>.  This Note may not be assigned or transferred by the Company without the express written consent of the Holder.  This Note may only be assigned or transferred by Holder subject to applicable securities laws.  Subject to the preceding sentence, the rights and obligations of the Company and the Holder of this Note shall be binding upon and benefit the successors, permitted assigns, heirs, administrators and permitted transferees of the parties.

       (h)    <u>No Waiver; Cumulative Remedies</u>.  No failure to exercise and no delay in exercising on the part of the Holder, any right, option, remedy, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, option, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, option, remedy, power or privilege.  The rights, options, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, options, remedies, powers and privileges provided by law.

       (i)    <u>Governing Law; Jurisdiction</u>.  THE PARTIES HEREBY AGREE THAT THIS NOTE IS MADE AND ENTERED INTO IN THE STATE OF DELAWARE AND FURTHER AGREE THAT ALL ACTS REQUIRED BY THIS NOTE AND ALL PERFORMANCE HEREUNDER ARE INTENDED TO OCCUR IN THE STATE OF DELAAWARE.  THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF DELAWARE WITHOUT REFERENCE TO PRINCIPLES OF CONFLICTS OF LAWS.  EACH PARTY HERETO HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE PERSONAL AND SUBJECT MATTER JURISDICTION OF THE STATE OR FEDERAL COURTS OF THE STATE OF DELAWARE OVER ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE.  EACH PARTY HEREBY IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW, (A) ANY OBJECTION THAT THEY MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT; AND (B) ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.  FINAL JUDGMENT IN ANY SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON EACH PARTY DULY SERVED WITH PROCESS THEREIN AND MAY BE ENFORCED IN THE COURTS OF THE JURISDICTION OF WHICH EITHER PARTY OR ANY OF THEIR PROPERTY IS

# EXHIBIT 1 ("ISA")

SUBJECT, BY A SUIT UPON SUCH JUDGMENT.  THE PARTIES HEREBY WAIVE ANY AND ALL RIGHTS TO TRIAL BY JURY.

IN WITNESS WHEREOF, the Company has caused this Note to be executed as of the date first above written by its duly authorized officer.

**UNIFIEDONLINE, INC.**

By: _____

Name: Robert M. Howe III
Title: CEO

5

**EXHIBIT 1 ("ISA")**

**EXHIBIT A**

| | |
|---|---|
| US Patent No. 7346918 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Patent No. 7941822 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Patent No. 8341679 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Patent No. 8984565 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Patent No. 9015774 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Application No. 13/799,749 October 10, 2013* | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Application No. 14/167,289 Filed January 29, 2014 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Application - 10/346,571 (Abandoned – CIP of 09/824,531) | |
| US Application - 09/824,531 (Abandoned – CIP of 7346918) | |
| PCT/US2001/049629 (Expired – no national phase) | |
| PCT/US2002/009863 (Expired – no national phase) | |

*Publication Date

EXHIBIT 1 ("ISA")

## SCHEDULE 3.3

## Company Agreements

**EXHIBIT 1 ("ISA")**

## SCHEDULE 5.1(b)

### Pending Litigation

1. ChanBond, LLC v. WaveDivision Holdings, LLC, Civil Case No. 1:15-cv-00853
2. ChanBond, LLC v. Comcast Corporation et al, Civil Case No. 1:15-cv-00848
3. ChanBond, LLC v. Charter Communications, Inc., Civil Case No. 1:15-cv-00847
4. ChanBond, LLC v. WideOpen West Finance, LLC, Civil Case No. 1:15-cv-00854
5. ChanBond, LLC v. Cequel Communications, LLC, Civil Case No. 1:15-cv-00846
6. ChanBond v. RCN Telecom Services, LLC, Civil Case No. 1:15-cv-00851
7. ChanBond v. Cox Communications, Inc. et al, Civil Case No. 1:15-cv-00849
8. ChanBond v. Time Warner Cable Inc. et al, Civil Case No. 1:15-cv-00852
9. ChanBond v. Mediacom Communications Corporation, Civil Case No. 1:15-cv-00850
10. ChanBond v. Bright House Networks, LLC, Civil Case No. 1:15-cv-00843
11. ChanBond v. Cablevision Systems Corporation et al, Civil Case No. 1:15-cv-00845
12. ChanBond v. Cable One, Inc., Civil Case No. 1:15-cv-00844
13. ChanBond v. Atlantic Broadband Group, LLC, Civil Case No. 1:15-cv-00842

# EXHIBIT 1 ("ISA")

### SCHEDULE 6.3

### Capitalization Table

EXHIBIT 1 ("ISA")

**EXHIBIT 1 ("ISA")**

## UnifiedOnline, Inc.  - 6,000,000,000 authorized shares
## Cap Table (10.26.15)

| Common Stock | | | Current | Own % | Series | $0.00750 | $ | 12.000 | $ | 60.000 | Total | Expiration Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Restricted | | | 904,088,389 | 99.0% | N | 205,805,872 | | | | | 205,805,872 | 09/30/16 |
| Float | | | 8,809,148 | 1.0% | O | | | 68,452 | | | 68,452 | 11/23/16 |
| | | | | | Q | | | 7,770 | | | 7,770 | 02/08/17 |
| | | | Common shares O/S | 912,897,537 | R | | | | | 37,004 | 37,004 | 06/30/17 |
| | | Warrants | | | Total | 205,805,872 | | 76,222 | | 37,004 | 205,919,098 | |

| | $ value if converted | Exercise Price | Shares |
|---|---|---|---|
| $ | 1,543,544 | $0.00750 | 205,805,872 |
| $ | 914,664 | $12.000 | 76,222 |
| $ | 2,220,240 | $60.000 | 37,004 |
| $ | 4,678,448 | Total Warrants | 205,919,098 |

| Vested | | Stock Options | O/S |
|---|---|---|---|
| | | | 7,232 |
| | 0 | Total O/S Options | 7,232 |

**Preferred Stock - Series B** — 1,567
**Preferred Stock - Series AA (0 shares)**

**Fully Diluted Shares before convertible debt** — 1,118,825,434

| Convertible debt | | | At prevailing share price | Conversion Price |
|---|---|---|---|---|
| Tangiers | $ | 68,750 | 13,750,000 | 22,916,667 |
| JMJ | $ | 30,500 | 6,100,000 | 10,166,667 |
| KBM | $ | 53,232 | 10,646,394 | 18,234,290 |
| Vis Vires | $ | 34,100 | 6,820,000 | 11,680,749 |
| | $ | 186,582 | 37,316,394 | 62,998,372 |

**Fully Diluted Shares after convertible debt** — 1,181,823,806

### SCHEDULE 6.8

### Judgments

1. Two judgments held by FedEx being pursued in the General District Court of Fairfax County, Virginia; and the Circuit Court of Fairfax County, Virginia, respectively:

   *FedEx Customer Information Services, Inc. vs. Iceweb Storage Corporation fka Inline Corporation,* In the Circuit Court of Fairfax County, Virginia, Case No. CL2010-7512 – Judgment awarded $16,321.66 plus interest and costs.

   *FedEx Customer Information Services, Inc. vs. Iceweb, Inc.,* In the General District Court of Fairfax County, Virginia, Case No. GV10-023543-00 – Judgment awarded $12,900.95 plus $58 in costs.

2. Judgment held by i-Cubed:

   *i-Cubed information, integration and imagins, LLC aka i-Cubed, information, integration and imagins, LLC vs. Iceweb Storage Corporation*, in the General District Court of Fairfax County, Case No. GV12-019582-00 – Judgment awarded of $12,920.60, plus interest and costs.

3. Judgment held by Pellegrino and Associates:

   *Pellegrino and Associates vs. Iceweb, Inc.,* in the Marion County Superior Court No. 12, Marion County, Indiana, Case No. 49D12-1408-CC-2714 – Judgment awarded of $20,158.73 plus interest and costs.

**EXHIBIT 1 ("ISA")**

April 9, 2015

ChanBond, LLC
2633 McKinney Avenue
Suite 130 501
Dallas, Texas 75204

Re: Advisory Services

Dear Deirdre:

This letter agreement ("Agreement") confirms the agreement of ChanBond LLC, a limited liability corporation organized under the laws of Delaware, with a principal place of business at 2633 McKinney Avenue, Suite 130 501, Dallas, Texas 75204 (including any and all of its current and future affiliates, associates, subsidiaries, successors and assigns, or any combination of the foregoing, the "Company") to engage IPNAV, LLC, a limited liability company organized under the laws of Texas, of 2525 Carlisle Street, Suite 439, Dallas, TX 75201 ("IPNAV") to provide specified services to the Company on the following terms and conditions:

RESPONSIBILITIES

1. IPNAV:
   a. IPNAV has and will continue to act as the Company's worldwide intellectual property licensing agent, and will provide strategic advisory services relating to the acquisition: sale, licensing, commercialization, enforcement, prosecution, and settlement with respect to the intellectual property owned or controlled by the Company, including without limitation, the patents identified in Exhibit A, as the same may be amended from time to time upon mutual agreement of the parties hereto (the "Services" and the "IP Rights," respectively).
   b. IPNAV will introduce the Company to individuals and entities that may, among other things, act as counsel, consultants, vendors and experts relating to the Services.
   c. The Services will be provided' by IPNAV from such locations, and at such times, as IPNAV shall reasonably determine. IPNAV agrees to provide the Services to the best of its reasonable abilities, but guarantees no particular outcome.
   d. IPNAV will provide additional services as may be reasonably requested by the Company and approved by IPNAV.
   e. IPNAV will act as an independent contractor, and is not a fiduciary for the Company.

2. The Company:
   a. IPNAV will advise and make recommendations within the framework of the Services, but decision making rests solely with the Company. The Company confirms that IPNAV is not affiliated with the Company and does not directly or indirectly control the Company.
   b. IPNAV is not a law or accounting firm, or a tax advisor, and the Company will not rely on IPNAV to provide any such advice or services. The Company will seek separate legal, accounting, tax and other similar advice and services at its discretion.
   c. The Company identifies Deirdre Leane (the "Company Designee") as the point of contact for IPNAV. IPNAV will exclusively report to and coordinate with the Company Designee and may rely on him/her as the official spokesperson and authorized officer of the Company, with full authority to bind the Company.
   d. The Company will cooperate with IPNAV so that the Services may be performed in an efficient and prompt manner.
   e. The Company will promptly inform IPNAV of any materially relevant information relating to the IP Rights.
   f. The Company will retain full, clear, and exclusive title to the IP Rights, free and clear of any liens, pledges, encumbrances or any other third party rights, except as set forth on Exhibit B and as discussed and recommended by IPNAV in writing in connection with the monetization activities conducted in connection with the Services.

**Exhibit 2 ("Advisory Agreement")**

April 9, 2015

ChanBond, LLC
2633 McKinney Avenue
Suite 130 501
Dallas, Texas 75204

Re: Advisory Services

Dear Deirdre:

This letter agreement ("Agreement") confirms the agreement of ChanBond LLC, a limited liability corporation organized under the laws of Delaware, with a principal place of business at 2633 McKinney Avenue, Suite 130 501, Dallas, Texas 75204 (including any and all of its current and future affiliates, associates, subsidiaries, successors and assigns, or any combination of the foregoing, the "Company") to engage IPNAV, LLC, a limited liability company organized under the laws of Texas, of 2525 Carlisle Street, Suite 439, Dallas, TX 75201 ("IPNAV") to provide specified services to the Company on the following terms and conditions:

RESPONSIBILITIES

1.  IPNAV:
    a.  IPNAV has and will continue to act as the Company's worldwide intellectual property licensing agent, and will provide strategic advisory services relating to the acquisition: sale, licensing, commercialization, enforcement, prosecution, and settlement with respect to the intellectual property owned or controlled by the Company, including without limitation, the patents identified in Exhibit A, as the same may be amended from time to time upon mutual agreement of the parties hereto (the "Services" and the "IP Rights," respectively).
    b.  IPNAV will introduce the Company to individuals and entities that may, among other things, act as counsel, consultants, vendors and experts relating to the Services.
    c.  The Services will be provided' by IPNAV from such locations, and at such times, as IPNAV shall reasonably determine.   IPNAV agrees to provide the Services to the best of its reasonable abilities, but guarantees no particular outcome.
    d.  IPNAV will provide additional services as may be reasonably requested by the Company and approved by IPNAV.
    e.  IPNAV will act as an independent contractor, and is not a fiduciary for the Company.

2.  The Company:
    a.  IPNAV will advise and make recommendations within the framework of the Services, but decision making rests solely with the Company.  The Company confirms that IPNAV is not affiliated with the Company and does not directly or indirectly control the Company.
    b.  IPNAV is not a law or accounting firm, or a tax advisor, and the Company will not rely on IPNAV to provide any such advice or services. The Company will seek separate legal, accounting, tax and other similar advice and services at its discretion.
    c.  The Company identifies Deirdre Leane (the "Company Designee") as the point of contact for IPNAV.  IPNAV will exclusively report to and coordinate with the Company Designee and may rely on him/her as the official spokesperson and authorized officer of the Company, with full authority to bind the Company.
    d.  The Company will cooperate with IPNAV so that the Services may be performed in an efficient and prompt manner.
    e.  The Company will promptly inform IPNAV of any materially relevant information relating to the IP Rights.
    f.  The Company will retain full, clear, and exclusive title to the IP Rights, free and clear of any liens, pledges, encumbrances or any other third party rights, except as  set forth on Exhibit B  and  as discussed and recommended  by IPNAV in writing in connection with the monetization activities conducted in connection with the Services.

**Exhibit 2 ("Advisory Agreement")**

g.  In the event of a transfer, sale, exchange, acquisition, or other event impacting title to the IP Rights (including a change of control or sale of the Company) (a "Transfer"), which Transfer was not recommended by IPNAV in writing, the Company will ensure that the obligations hereunder will be assumed (in a contract acceptable in form to IPNAV) by the third party involved in such Transfer (the "Transferee"), such that the compensation, payment, and other obligations of the Company hereunder after the Transfer shall be the same upon the Transferee. Prior to any such Transfer, the Company shall offer an entity designated by IPNAV an opportunity to complete the Transfer on substantially similar terms, and shall hold such offer open for a period of twenty (20) business days.

h.  The Company has secured (and will secure) the agreement of any holders of indebtedness of the Company that they will not foreclose or exercise rights that would adversely impact the Company, IPNAV or the IP Rights.

3.  Both IPNAV and the Company:

a.  IPNAV and the Company will act in a reasonable manner so as to preserve the other's goodwill and reputation.

b.  Neither IPNAV nor the Company will undertake actions intended to circumvent this Agreement.

c.  Both IPNAV and the Company will take reasonable actions to preserve the confidential nature of any information exchanged during the course of this Agreement. To the extent the parties have not already done so, together with the execution of this Agreement, the parties shall execute a Mutual Nondisclosure Agreement in the form attached hereto as Exhibit C.

d.  Both IPNAV and the Company will maintain records (including financial records) sufficient to determine their respective rights and obligations under this Agreement, and will make such records available promptly upon written request.

COSTS AND EXPENSES

4.  IPNAV and the Company will each pay their own travel, lodging, copying, fax, telephone and other ordinary business expenses incurred by it in connection with this Agreement. The Company will be responsible for and will pay any costs and expenses payable to third parties in connection with this Agreement (e.g., all litigation, patent prosecution and any other third party costs).

DISTRIBUTION OF CONSIDERATION FROM THE IP RIGHTS; THE IPNAV FEE

5.  IPNAV Fee: As consideration for IPNAV to enter into this Agreement and to provide the Services, the Company shall pay IPNAV twenty two percent (22%) of the Gross Consideration with respect to any Monetization Event (the "IPNAV Fee").

For the purposes hereof:

"Gross Consideration" means the gross amount (prior to any deductions or reductions) of any licensing fee, litigation settlement fee, payment of damages or other remedies, sale or transaction payment, and any other consideration, assets and/or proceeds collected by or made available to the Company in respect of the IP Rights.

"Monetization Event" means any event in which Gross Consideration is realized, including without limitation, by way of a licensing, monetization, enforcement or settlement transaction; the acquisition or disposition of the IP Rights; or an equity sale or merger of the Company which is concluded pursuant to or in connection with the Services.

6.  Certain Actions: If the Company takes or fails to take any action the result of which could adversely impact IPNAV's current or future ability to collect payment that is due or may become due under the terms of this Agreement, the Company will enter into an amendment to the

**Exhibit 2 ("Advisory Agreement")**

Agreement with IPNAV (in a form reasonably acceptable to IPNAV) to eliminate the adverse impact of such action or failure to take action.

7.  Timing: The Company shall wire the IPNAV Fee within five (5) business days of the Gross Consideration being received by the Company. If the Company receives non-cash consideration (e.g., stock), the Company and IPNAV will cooperate to divide the non-cash consideration in a manner consistent with the terms of this Agreement.  Any amounts that are not paid in a timely manner will bear interest at the lower of (i) 22% per annum and (ii) the maximum rate permitted by law.  IPNAV's wire information is:

IPNAV, LLC

Bank: Wells Fargo Private Banking

Dallas, TX 75201

Routing No.: 111900659

Swift International: WFBIUS6S

Account Name: IPNAV, LLC

Account Number: 7921420746

## TERMINATION

8.  Generally: Survival: This Agreement will terminate one (1) year after the last to expire of the patents included within the definition of IP Rights unless earlier terminated by mutual written consent of the parties or as set forth in Sections 9 and 10.  Sections 9-13 and 15-16 of this Agreement shall survive any termination of this Agreement and survive until the expiration of the applicable statute of limitations.

9.  Termination by IPNAV:
    a.  IPNAV may terminate this Agreement in the event of a material breach by the Company that is not cured, if capable of being cured, within ten (10) days of notice to the Company of the breach.  In the event of such a termination the Company will remain responsible for and shall pay the IPNAV Fee under and in accordance with this Agreement.
    b.  IPNAV may terminate this Agreement at its discretion upon five (5) days written notice to the Company. In the event of such a termination, the Company will remain responsible for and shall pay the IPNAV Fee with respect to Gross Consideration received prior to termination, but the Company shall otherwise have no further payment obligation to IPNAV under this Agreement.

10. Termination by the Company: The Company may terminate this Agreement in the event of a material breach by IPNAV that is not cured, if capable of being cured, within ten (10) days of notice to IPNAV of the breach. In the event of such a termination, the Company will remain responsible for and shall pay the IPNAV Fee with respect to Gross Consideration received prior to breach, but the Company shall otherwise have no further payment obligation to IPNAV under this Agreement.

## REPRESENTATIONS AND WARRANTIES

11. By the Company: The Company represents and warrants that:
    a.  It exclusively owns and has full, clear and exclusive title to the IP Rights, free and clear of any liens, pledges, encumbrances or any other third party rights, except as otherwise set forth on Exhibit B.
    b.  All prior licenses, covenants, and other third party rights granted under the IP Rights

**Exhibit 2 ("Advisory Agreement")**

are set forth on Exhibit B.

c.  It has disclosed to IPNAV and listed on Exhibit B, all prior attempts to enforce or monetize the IP Rights, whether through correspondence, litigation or otherwise.

d.  The IP Rights have never been held invalid or unenforceable.

e.  It has disclosed to IPNAV all prior art it is aware of in connection with the IP Rights.

f.  Other than as provided on Exhibit D, there are no terminal disclaimers of any kind related to or arising from the IP Rights.  Exhibit D includes a list of all terminal disclaimers that exist with respect to the IP Rights and a detailed description of each such terminal disclaimer.  Further, other than as provided on Exhibit D, there are no US patent applications of any kind constituting an Assigned Patent Right.  Exhibit D includes a list of all pending US patent applications and the respective confirmation numbers issued by the USPTO therefor.

## MISCELLANEOUS

12.  Common Interest: From time to time, the parties may share information with each other that is covered by the attorney client privilege, work product immunity, or other privileges and immunities.  This Agreement memorializes the parties' understanding that any such communications are covered by a community of interest that exists between them with respect to the Services.  The parties intend that all applicable privileges and immunities have been, are, and will be preserved.  Simultaneous with the execution of this Agreement, the parties shall execute a Common Interest Agreement, in the form attached hereto as Exhibit E.

13.  Conflicts of Interest: IPNAV is now, and may in the future be, engaged by other entities that may hold intellectual property in a field of technology similar to the IP Rights.  The Company has assessed the risks of any potential conflicts and has determined that the benefit of engaging an advisor with relevant experience outweighs the risks of any potential conflicts.  Notwithstanding the foregoing, pursuant to that certain Mutual Non Disclosure Agreement by and between the parties, IPNAV shall protect the Confidential Information (as defined therein) of the Company and shall take those steps necessary to ensure that no Confidential Information shall be used by IPNAV in any manner or for any purpose other than in connection with the Services.

14.  Choice of Law: This Agreement shall be governed by and construed under the laws of the State of Texas. Any disputes relating to or arising from this Agreement by or among the parties shall be resolved exclusively by arbitration to be conducted exclusively in Dallas, Texas, in accordance with the Commercial Rules of the American Arbitration Association. Any court of competent jurisdiction shall be authorized to enforce the provisions of the previous sentence and enforce the remedies imposed by such arbitration. The losing party in any action to adjudicate rights relating to this Agreement shall bear the costs of such action.

15.  Indemnification: The Company shall indemnify, hold harmless and reimburse IPNAV, its affiliates, directors, officers, controlling persons, employees, attorneys and agents ("Indemnified Persons") to the fullest extent lawful against any and all claims, losses, damages, liabilities, expenses; costs, actions, joint or several, of any nature or type whatsoever ("Indemnified Expenses"), relating to or arising from this Agreement, the Services provided hereunder or any other matter whatsoever relating to or involving the IP Rights, except to the extent (and only to the extent) that a court of competent jurisdiction determines that such Indemnified Expenses arose exclusively from such Indemnified Person's reckless or willful misconduct.

16.  Other:

a.  There are no third-party beneficiaries under this Agreement.

b.  This Agreement shall be binding on and inure to the benefit of the Company and IPNAV, and their respective successors, assigns, heirs and representatives.  This Agreement may only be modified or amended by a written agreement signed by both parties.

c.  This Agreement constitutes the entire agreement between the parties and supersedes any prior written or oral agreements or understandings between the parties hereto.  No oral explanation or oral information by either party hereto shall alter the meaning or interpretation of this Agreement.

## Exhibit 2 ("Advisory Agreement")

d.  In the event that a party executes this Agreement by an electronic or scanned signature, such electronic or scanned signature shall create a valid and binding obligation of the party executing the same with the same force and effect as if such electronic or scanned signature were an original signed signature.

******

If the foregoing correctly sets forth our understanding, please sign below and return an executed copy of this Agreement to IPNAV. We look forward to working with you.

Regards,
IPNAV, LLC

By: _____
    Duly Authorized


Accepted and Agreed to:

ChanBond, LLC

By: _____
    Duly Authorized


**Exhibit 2 ("Advisory Agreement")**

EXHIBIT A

IP Rights

| US Patent No. 7346918 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
|---|---|
| US Patent No. 7941822 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Patent No. 8341679 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Patent No. 8984565 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Patent No. 9015774 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Application No. 13/799,749<br><br>October 10, 2013* | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Application No. 14/167,289<br><br>Filed January 29, 2014 | Intelligent device system and method for distribution of digital signals on a wideband signal distribution system |
| US Application   10/346,571<br>(Abandoned – CIP of 09/824,531) | |
| US Application - 09/824,531<br>(Abandoned – CIP of 7346918) | |
| PCT/US2001/049629 (Expired – no national phase) | |
| PCT/US2002/009863 (Expired – no national phase) | |

**Exhibit 2 ("Advisory Agreement")**

<u>EXHIBIT B</u>

Prior Rights and Monetization Efforts

1.   Nonexclusive license from ChanBond, LLC to Z-Band, Inc. dated April 9, 2015

**Exhibit 2 ("Advisory Agreement")**

EXHIBIT C

Possible Vendor Arrangements

IPNAV has negotiated arrangements with various vendors at what are believed to be favorable rates. As vendors recommended by IPNav, their fees would be covered under Section 4b of the Agreement as Advanced Costs. Examples of such vendor arrangements are presented below.

A. Litigation counsel to handle all legal aspects of any litigation filed by the Company

B. Vendors to (i) collect, electronically format, review for privilege and produce responsive documents in the Company's control and to (i) analyze, review and compile documents received from third parties, including documents produced in the course of any litigation.

C. Counsel and vendors to (i) prepare Rule 11 analysis, (ii) prepare infringement contentions and (iii) review and analyze invalidity contentions.

D. Various technical, damages and patent experts required to support Licensing Transactions ("Consulting and Testifying Experts").

E. Graphics presentation experts and vendors to prepare (i) graphics for Markman, (ii) graphics for key motions and (iii) graphics for trial and appellate matters.

F. If requested by the Company to be coordinated by counsel that IPNav has preferred rate arrangements with, fees and expenses of prosecution counsel to handle regular portfolio services and possible reexamination counsel.

G. Foreign litigation counsel to handle all legal aspects of any litigation filed by the Company in any jurisdiction outside of the United States.

H. ITC counsel to handle all legal aspects of any action filed by the Company in the United States International Trade Commission.

I. Licensing counsel to handle licensing matters.

IPNAV has longstanding relationship with many of these counsel and vendors and regularly recommends new counsel and vendors. IPNAV and its affiliates regularly refer business to these counsel or vendors. IPNAV or its affiliates may invest in or have other significant relationships with these counsel or vendors. IPNAV is not impartial in recommending counsel or vendors that IPNAV believes provide superior service. The Company, should it choose to work with such counsel and/or vendors, hereby waives, and agrees to sign any required waiver of, any conflicts of interest in connection with any services provided by any such counsel and/or vendors.

**Exhibit 2 ("Advisory Agreement")**

<u>EXHIBIT D</u>

Terminal Disclaimers

None.

Exhibit 2 ("Advisory Agreement")

EXHIBIT E

COMMON INTEREST AGREEMENT

THIS COMMON INTEREST AGREEMENT ("**Agreement**") is entered into as of April 9, 2015, by and between **ChanBond, LLC** and its affiliates, as such affiliates may exist from time to time (the "Company") having its principal offices at 2633 McKinney Avenue, Suite 130-501, Dallas, Texas 75204, and **IPNAV, LLC** ("IPNAV"), having its principal offices at 2525 Carlisle Street, Suite 439, Dallas, Texas 75201.

1.      **Background.**

1.1.      Companies and IPNAV are sometimes referred to herein as a "**party**" or the "**parties**" and are presently negotiating the closing of an agreement under which IPNAV will act as the worldwide intellectual property enforcement and licensing agent of the Companies and will provide services related to the existing and future enforcement and monetization opportunities of the patents and related rights owned by the Companies (the "**IP Rights**" and the "**Patent Matters**" respectively).

1.2.      The parties have a common legal interest in upholding the validity and enforceability of the IP Rights, for purposes of enforcement.  The parties anticipate they will enforce inherent rights of the IP Rights against third parties through litigation.  The parties have agreed to treat their communications and those of their counsel relating to the Patent Matters as protected by the common interest doctrine.  Furtherance of the Patent Matters requires the exchange of proprietary documents and information, the joint development of legal strategies and the exchange of privileged information and attorney work product developed by the parties and their respective counsel.

2.      **Common Interest.**

2.1.      The parties have a common, joint and mutual legal interest in the monetization of valid and enforceable patents.  In furtherance of that common interest, the parties will cooperate with each other, to the extent permitted by law, to share information protected by the attorney-client privilege, the work product doctrine, or other applicable

privilege or immunity with respect to the Patent Matters.  Any counsel or consultant retained by a party or their counsel to assist in the Patent Matters shall be bound by, and entitled to the benefits of this Agreement.

2.2.      In order to further their common interest, the parties and their counsel may exchange privileged and work product information, orally and in writing, including, without limitation, factual analyses, mental impressions, legal memoranda, source materials, draft legal documents, evidence of use materials, claims charts, prosecution history files and other information (hereinafter "**Common Interest Materials**").  The sole purpose of the exchange of the Common Interest Materials is to support the parties' common interest with respect to the enforcement for the Patent Matters.  Any Common Interest Materials exchanged shall continue to be protected under all applicable privileges and no such exchange shall constitute a waiver of any applicable privilege or protection.  Nothing in this Agreement requires a party to share information with the other party.

3.      **Nondisclosure.**

3.1.      The parties and their counsel shall use the Common Interest Materials solely in connection with the Patent Matters and shall take appropriate steps to protect the privileged and confidential nature of the Common Interest Material.  No party nor their respective counsel shall produce privileged documents or information unless or until directed to do so by a final order of a court of competent jurisdiction, or upon the prior written consent of the other party.  No privilege or objection shall be waived by a

9

**Exhibit 2 ("Advisory Agreement")**

party hereunder without the prior written consent of the other party.

3.2.    Except as herein provided, in the event that either party or its counsel is requested or required in the context of a litigation, governmental, judicial or regulatory investigation or other similar proceedings (by oral questions, interrogatories, requests for information or documents, subpoenas, civil investigative demands or similar process) to disclose any Common Interest Materials, the party or its counsel shall assert all applicable privileges, including, without limitation, the common interest doctrine, and shall immediately inform the other party and the other party's counsel of the request or requirement to disclose.

4.    **Relationship; Additions; Termination.**

4.1.    This Agreement does not create any agency or similar relationship among the parties. Through the term of the agreement between the parties, or any other agreement requiring confidentiality, (whichever term is longer), no party nor their respective counsel has the authority to waive any applicable privilege or doctrine on behalf of any other party.

4.2.    Nothing in this Agreement affects the separate and independent representation of each party by its respective counsel or creates an attorney-client relationship between the counsel for a party and the other party to this Agreement.

4.3.    This Agreement shall continue until terminated upon the written request of either party. Upon termination, each party and their respective counsel shall return any Common Interest Material furnished by the other party. Notwithstanding termination, this Agreement shall continue to protect all Common Interest Materials disclosed prior to termination. Sections 3 and 5 shall survive termination of this Agreement.

5.    **General Terms.**

5.1.    This Agreement is governed by the laws of the State of Delaware, without regard to its choice of law principles to the contrary.   In the event any provision of the Agreement is held by any court of competent jurisdiction to be illegal, void or unenforceable, the remaining terms shall remain in effect. Failure of either party to enforce any provision of this Agreement shall not be deemed a waiver of future enforcement of that or any other provision.

5.2.    The parties agree that a breach of this Agreement would result in irreparable injury, that money damages would not be a sufficient remedy and that the disclosing party shall be entitled to equitable relief, including injunctive relief, as a non exclusive remedy for any such breach.

5.3.    Notices given under this Agreement shall be given in writing and delivered by messenger or overnight delivery service as set forth below, and shall be deemed to have been given on the day received:

ChanBond, LLC
2633 McKinney Avenue
Suite 130-501
Dallas, Texas 75204

IPNAV, LLC
2525 Carlisle Street
Suite 439
Dallas, Texas 75201

5.4.    This Agreement is effective and binding upon each party as of the date it is signed by or on behalf of a party and may be amended only by a writing signed by or on behalf of each party.   This Agreement may be executed in counterparts.   Any signature reproduced or transmitted via email of a .pdf file, photocopy, facsimile or other process of complete and accurate reproduction and transmission shall be considered an original for purposes of this Agreement.

**Exhibit 2 ("Advisory Agreement")**

**\*\*\*The remainder of this page has been intentionally left blank.\*\***

11

# Exhibit 2 ("Advisory Agreement")

IN WITNESS WHEREOF, CHANBOND, LLC and IPNAV, LLC have executed this Common Interest Agreement by their duly authorized representatives.

**IPNAV, LLC**

By: _____
(Signature)

Name: DEIRDRE LEANE

Title: 9th April 2015

**CHANBOND, LLC** (on behalf of and including its affiliates)

By: _____
(Signature)

Name: DEIRDRE LEANE

Title: 9th April 2015

**Exhibit 2 ("Advisory Agreement")**



CAUSE NO. _____

| | | |
|---|---|---|
| DEIRDRE LEANE AND IPNAV, LLC , | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiffs, | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| UNIFIEDONLINE, INC and CHANBOND, | § | |
| LLC, | § | |
| | § | _____ JUDICIAL DISTRICT |
| Defendants. | § | |

## TEMPORARY RESTRAINING ORDER

On this day, the Court considered Plaintiffs' Original Verified Petition and Ex-Parte Application for Temporary Restraining Order and Injunctive Relief in Aid of Arbitration ("Petition") filed by Plaintiffs Deirdre Leane ("Leane") and IPNAV, LLC ("IPNav") (collectively, "Plaintiffs"). After reviewing the Petition and arguments of Plaintiffs' counsel the Court makes the following findings and orders:

In accordance with Rule 680 of the Texas Rules of Civil Procedure and Chapters 61 and 172 of the Texas Civil Practices & Remedies Code, by its application, Plaintiffs seek a Temporary Restraining Order enjoining Defendants  UnifiedOnline, Inc. ("Unified") and ChanBond, LLC ("ChanBond") (collectively, "Defendants") from entering into any settlement of the "ChanBond Litigations"[1] without obtaining the consent of Leane in accordance with § 8.3 of the Interest Sale Agreement entered into by and between Leane, Unified, and ChanBond on or about Oct. 27, 2015 (the "ISA").

---

[1] The ChanBond Litigations are defined as the following cases currently pending in the U.S. District Court for the District of Delaware, Cases Nos. 1:15-cv-00842-RGA, 1:15-cv-00843-RGA, 1:15-cv-00844-RGA, 1:15-cv-00845-RGA, 1:15-cv-00846-RGA, 1:15-cv-00847-RGA, 1:15-cv-00848-RGA,_ 1:15-cv-00849-RGA, 1:15-cv-00850-RGA, 1:15-cv-00851-RGA, 1:15-cv-00852-RGA,_ 1:15-cv-00853-RGA, and 1:15-cv-00854-RGA.

The Court has jurisdiction over this action by virtue of the relief sought herein and because the amount in controversy exceeds the minimum jurisdictional requirements of this Court. This Court has personal jurisdiction over both Defendants because, among other things, they entered into contracts with a residents of the State of Texas (Ms. Leane or IPNav) and they consented to litigation in the State of Texas pursuant to forum selection clauses contained in the ISA and the contract between IPNav and ChanBond, dated April 5, 2015 (the "Advisory Agreement").

Venue is proper in Dallas County, Texas pursuant to Tex. Civ. Prac. & Rem. Code § 15.002(a)(4) and § 171.096, because Plaintiffs reside in Dallas County, Texas (at the time these causes of action accrued) whereas none of the Defendants reside in the State of Texas, and because ChanBond contractually agreed that Dallas County would be the venue for any dispute arising out of its contract with IPNav (as more fully described herein).

This dispute is subject to arbitration and Plaintiffs have satisfied the requirements of Tex. Civ. Prac. & Rem. Code §171.081-171.083, and 171.085 by attaching a draft of the anticipated arbitration demand which they intend to file subject to this Order.

Plaintiffs have presented sufficient evidence that the only assets of ChanBond are its patents which are subject to litigation in the ChanBond Litigations, and the only asset of value for Unified is its interest in ChanBond. The Court further finds that sufficient evidence exists that any settlement of the ChanBond Litigations would require a license in the material assets of ChanBond, i.e. the ChanBond patents, or the functional equivalent thereof (such as a release from past infringement and a covenant not to sue for future infringement) which requires consent from Leane pursuant to Section 8.3 of the ISA.[2]

---

[2] ("Section 8.3 Limitations on Assignment. Except as expressly permitted in this Section, none of Purchaser or ChanBond may grant or assign any rights or delegate any duties under this Agreement to any Third Party (including by way of a "change in control") or may sell, transfer, or spin-off any of the interests in ChanBond or any of its material assets without the prior written consent of Seller. Notwithstanding the foregoing, Purchaser shall be permitted

The Court finds that sufficient evidence exists that absent sufficient monetization of the ChanBond patents through the ChanBond Litigations that Unified will not be able to satisfy its obligations to Leane in accordance with the ISA.  The Court finds that sufficient evidence exists that settlement of the ChanBond Litigations is imminent and that ChanBond, which is controlled by Unified, has stated it has no obligation to obtain consent from Leane to settle the ChanBond Litigations.

If the ChanBond Litigations are settled without Leane's consent she would be incapable of calculating her damages arising from Plaintiffs' improper settlement because it would be based on the difference between the settlement ChanBond reached without her consent ("Unauthorized Settlement") and a hypothetical and more lucrative settlement with her consent ("Hypothetical Settlement").  The Court  further finds that sufficient evidence exists that because of the difficulty in proving the terms of the Hypothetical Settlement and that the settling defendants would actually accept those terms after they agree to the Unauthorized Settlement that Leane cannot be adequately compensated in damages and that damages cannot be measured to any certain pecuniary standard.

The Court also finds that sufficient evidence exists that ChanBond and Unified face insolvency prior to conclusion of the arbitration.

---

to transfer or assign) its rights, interests and obligations under this Agreement, as applicable, without Seller's prior written consent as part of a sale of all or substantially all of its business, equity to, or a change in control transaction with a Third Party acquirer (an "**M&A Transaction**", and an "**Acquirer**," respectively); provided that (a) such transfer or assignment is subject to all of the terms and conditions of this Agreement; and (ii) such Acquirer executes a written undertaking towards Seller agreeing to be bound by all of the terms and conditions of this Agreement with respect to the rights being transferred or assigned. Except as otherwise expressly limited herein, the provisions hereof shall inure to the benefit of, and be binding upon, the successors, permitted assigns, heirs, executors, and administrators of the Parties hereto.").

The Court further finds that sufficient evidence exists that if the actions of Defendants are not enjoined they threaten to cause imminent and irreparable harm to Plaintiffs, and that Leane is substantially likely to succeed on the merits of her claim on breach of the ISA.

The Court therefore finds that pursuant to Tex. Civ. Prac. & Rem. Code § 171.086(a)(3)(A) and/or (b)(1) a temporary restraining order is necessary to prevent the destruction of the subject matter of the arbitration which is either rescission of the ISA and/or its enforcement prior to settlement of the ChanBond Litigations. Therefore, if this Court does not grant injunctive relief to prevent Defendants from settling the ChanBond Litigations without Ms. Leane's consent as required by the anti-assignment provision, Plaintiffs will have no adequate remedy at law.

**IT IS THEREFORE ORDERED** that Defendants, and any of their respective officers, directors, agents, employees, representatives, attorneys, and any other parties acting on their behalf, in active concert or participation with them, or on instructions from Defendants are hereby restrained and enjoined from taking any action in violation of the anti-assignment clause (§ 8.3 of the ISA), including by settling the ChanBond Litigations on any terms that involve a license to the ChanBond Patents, the functional equivalent of a license to the ChanBond Patents, or the grant of any other interest in ChanBond or the ChanBond Patent without the consent of Leane.

It is further **ORDERED** that the hearing on Plaintiffs' Application for Temporary Injunction shall commence on October _____, 2020 at _____ a.m./p.m. in the ___ District Court, Dallas County, Texas, and Defendants shall appear and show cause, if any exists, why this Temporary Restraining Order should not be continued as a temporary injunction.

It is further **ORDERED** that, prior to the issuance of such a Temporary Restraining Order, Plaintiffs shall file a bond with the Dallas County District Clerk in the amount of $_____, by cash deposit in the form of a check that may be paid from Plaintiffs'

law firm, which amount the Court finds will adequately protect the interests of Defendants, pending a hearing on Plaintiff's Application for Temporary Injunction.

It is further ORDERED that, upon filing of the bond or deposit in lieu required herein, the District Clerk of Dallas County shall prepare and issue this notice of Temporary Restraining Order and/or writ of injunction for service upon Defendants.

SIGNED at _____ o'clock a.m./p.m. on the __ day of September 2020.


_____
JUDGE PRESIDING

**EXHIBIT**

**4**

CAUSE NO. DC-20-14152 _____

| | | |
|---|---|---|
| DEIRDRE LEANE AND IPNAV, LLC , | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| UNIFIEDONLINE, INC and CHANBOND, | § | |
| LLC, | § | |
| | § | *296* JUDICIAL DISTRICT |
| Defendants. | § | |

---

## TEMPORARY RESTRAINING ORDER

---

On this day, the Court considered Plaintiffs' Original Verified Petition and Ex-Parte Application for Temporary Restraining Order and Injunctive Relief in Aid of Arbitration ("Petition") filed by Plaintiffs Deirdre Leane ("Leane") and IPNAV, LLC ("IPNav") (collectively, "Plaintiffs"). After reviewing the Petition and arguments of Plaintiffs' counsel the Court makes the following findings and orders:

In accordance with Rule 680 of the Texas Rules of Civil Procedure and Chapters 61 and 172 of the Texas Civil Practices & Remedies Code, by its application, Plaintiffs seek a Temporary Restraining Order enjoining Defendants  UnifiedOnline, Inc. ("Unified") and ChanBond, LLC ("ChanBond") (collectively, "Defendants") from entering into any settlement of the "ChanBond Litigations"[1] without obtaining the consent of Leane in accordance with § 8.3 of the Interest Sale Agreement entered into by and between Leane, Unified, and ChanBond on or about Oct. 27, 2015 (the "ISA").

---

[1] The ChanBond Litigations are defined as the following cases currently pending in the U.S. District Court for the District of Delaware, Cases Nos. 1:15-cv-00842-RGA, 1:15-cv-00843-RGA, 1:15-cv-00844-RGA, 1:15-cv-00845-RGA, 1:15-cv-00846-RGA, 1:15-cv-00847-RGA, 1:15-cv-00848-RGA,_ 1:15-cv-00849-RGA, 1:15-cv-00850-RGA, 1:15-cv-00851-RGA, 1:15-cv-00852-RGA,_ 1:15-cv-00853-RGA, and 1:15-cv-00854-RGA.

---

The Court has jurisdiction over this action by virtue of the relief sought herein and because the amount in controversy exceeds the minimum jurisdictional requirements of this Court. This Court has personal jurisdiction over both Defendants because, among other things, they entered into contracts with a residents of the State of Texas (Ms. Leane or IPNav) and they consented to litigation in the State of Texas pursuant to forum selection clauses contained in the ISA and the contract between IPNav and ChanBond, dated April 5, 2015 (the "Advisory Agreement").

Venue is proper in Dallas County, Texas pursuant to Tex. Civ. Prac. & Rem. Code § 15.002(a)(4) and § 171.096, because Plaintiffs reside in Dallas County, Texas (at the time these causes of action accrued) whereas none of the Defendants reside in the State of Texas, and because ChanBond contractually agreed that Dallas County would be the venue for any dispute arising out of its contract with IPNav (as more fully described herein).

This dispute is subject to arbitration and Plaintiffs have satisfied the requirements of Tex. Civ. Prac. & Rem. Code §171.081-171.083, and 171.085 by attaching a draft of the anticipated arbitration demand which they intend to file subject to this Order.

Plaintiffs have presented sufficient evidence that the only assets of ChanBond are its patents which are subject to litigation in the ChanBond Litigations, and the only asset of value for Unified is its interest in ChanBond. The Court further finds that sufficient evidence exists that any settlement of the ChanBond Litigations would require a license in the material assets of ChanBond, i.e. the ChanBond patents, or the functional equivalent thereof (such as a release from past infringement and a covenant not to sue for future infringement) which requires consent from Leane pursuant to Section 8.3 of the ISA.[2]

---

[2] ("Section 8.3 Limitations on Assignment. Except as expressly permitted in this Section, none of Purchaser or ChanBond may grant or assign any rights or delegate any duties under this Agreement to any Third Party (including by way of a "change in control") or may sell, transfer, or spin-off any of the interests in ChanBond or any of its material assets without the prior written consent of Seller. Notwithstanding the foregoing, Purchaser shall be permitted

The Court finds that sufficient evidence exists that absent sufficient monetization of the ChanBond patents through the ChanBond Litigations that Unified will not be able to satisfy its obligations to Leane in accordance with the ISA. The Court finds that sufficient evidence exists that settlement of the ChanBond Litigations is imminent and that ChanBond, which is controlled by Unified, has stated it has no obligation to obtain consent from Leane to settle the ChanBond Litigations.

If the ChanBond Litigations are settled without Leane's consent she would be incapable of calculating her damages arising from Plaintiffs' improper settlement because it would be based on the difference between the settlement ChanBond reached without her consent ("Unauthorized Settlement") and a hypothetical and more lucrative settlement with her consent ("Hypothetical Settlement"). The Court further finds that sufficient evidence exists that because of the difficulty in proving the terms of the Hypothetical Settlement and that the settling defendants would actually accept those terms after they agree to the Unauthorized Settlement that Leane cannot be adequately compensated in damages and that damages cannot be measured to any certain pecuniary standard.

The Court also finds that sufficient evidence exists that ChanBond and Unified face insolvency prior to conclusion of the arbitration.

---

to transfer or assign) its rights, interests and obligations under this Agreement, as applicable, without Seller's prior written consent as part of a sale of all or substantially all of its business, equity to, or a change in control transaction with a Third Party acquirer (an "**M&A Transaction**", and an "**Acquirer**," respectively); provided that (a) such transfer or assignment is subject to all of the terms and conditions of this Agreement; and (ii) such Acquirer executes a written undertaking towards Seller agreeing to be bound by all of the terms and conditions of this Agreement with respect to the rights being transferred or assigned. Except as otherwise expressly limited herein, the provisions hereof shall inure to the benefit of, and be binding upon, the successors, permitted assigns, heirs, executors, and administrators of the Parties hereto.").

The Court further finds that sufficient evidence exists that if the actions of Defendants are not enjoined they threaten to cause imminent and irreparable harm to Plaintiffs, and that Leane is substantially likely to succeed on the merits of her claim on breach of the ISA.

The Court therefore finds that pursuant to Tex. Civ. Prac. & Rem. Code § 171.086(a)(3)(A) and/or (b)(1) a temporary restraining order is necessary to prevent the destruction of the subject matter of the arbitration which is either rescission of the ISA and/or its enforcement prior to settlement of the ChanBond Litigations. Therefore, if this Court does not grant injunctive relief to prevent Defendants from settling the ChanBond Litigations without Ms. Leane's consent as required by the anti-assignment provision, Plaintiffs will have no adequate remedy at law.

**IT IS THEREFORE ORDERED** that Defendants, and any of their respective officers, directors, agents, employees, representatives, attorneys, and any other parties acting on their behalf, in active concert or participation with them, or on instructions from Defendants are hereby restrained and enjoined from taking any action in violation of the anti-assignment clause (§ 8.3 of the ISA), including by settling the ChanBond Litigations on any terms that involve a license to the ChanBond Patents, the functional equivalent of a license to the ChanBond Patents, or the grant of any other interest in ChanBond or the ChanBond Patent without the consent of Leane.

It is further **ORDERED** that the hearing on Plaintiffs' Application for Temporary Injunction shall commence on October _12_, 2020 at _9:00_ a.m. ~~/p.m.~~ in the _298_ District Court, ✓ or by remote means, Dallas County, Texas, and Defendants shall appear and show cause, if any exists, why this Temporary Restraining Order should not be continued as a temporary injunction.

It is further **ORDERED** that, prior to the issuance of such a Temporary Restraining Order, Plaintiffs shall file a bond with the Dallas County District Clerk in the amount of $ _5,000.00_, by cash deposit in the form of a check that may be paid from Plaintiffs'

---

law firm, which amount the Court finds will adequately protect the interests of Defendants, pending a hearing on Plaintiff's Application for Temporary Injunction.

It is further ORDERED that, upon filing of the bond or deposit in lieu required herein, the District Clerk of Dallas County shall prepare and issue this notice of Temporary Restraining Order and/or writ of injunction for service upon Defendants.

SIGNED at __11:06__ o'clock a.m./p.m. on the __29__ day of September 2020.

_____
JUDGE PRESIDING

FILED
9/30/2020 9:14 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Stephanie Clark DEPUTY



EXHIBIT
**5**

**WP** Wick Phillips
ATTORNEYS & COUNSELORS

2 CIT/TRONOT ESERVE

**Barb Morgan**
**(972) 971-9615 Direct Dial**
barb.morgan@wickphillips.com
www.wickphillips.com

September 30, 2020

**VIA E-FILE**

District Clerk
298th Judicial District Court
600 Commerce Street
Dallas County, Texas 75202

> Re:   *Deirdre Leane and IPNav, LLC v. Unifiedonline, Inc. and Chanbond,* LLC,
> Cause No. DC-20-14152, 298th Judicial District Court, Dallas County, Texas

Dear Clerk:

This letter is to request the issuance of (1) Citations; (2) Show Cause; and (3) Temporary Restraining Order for the following Defendants:

Defendant UnifiedOnline, Inc., may be served with service of process upon its registered agent, the Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, DE 19801, or upon William "Billy" Carter, its Chief Executive Officer, at 4309 Hoke LN, Greensboro, NC 27407 or wherever he may be found.

Defendant ChanBond, LLC, may be served with service of process upon its registered agent, the Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808, or upon William "Billy" Carter, its Manager, at 4309 Hoke LN, Greensboro, NC 27407 or wherever he may be found.

A fee of $48.00 for issuance of the Notices have been paid with the filing of this letter. Once the Citations and Notices are issued, please email me at barb.morgan@wickphillips.com and attorney Sean Lemoine at sean.lemoine@wickphillips.com  If you need anything further, you can contact me at (972) 971-9615.

Sincerely,

/s/Barb Morgan

**Dallas —** 3131 McKinney Avenue, Suite 100 • Dallas, Texas 75204 • 214.692.6200 • 214.692.6255 Fax

**Fort Worth —** 100 Throckmorton, Suite 1500 • Fort Worth, Texas 76102 • 817.332.7788 • 817.332.7789 Fax

**Austin —** 7004 Bee Caves Road, Bldg. 1, Suite 1100 • Austin, Texas 78746 • 512.681.3732 • 512.681.3741 Fax

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Barbara Morgan on behalf of J. Sean Lemoine
Bar No. 24027443
barb.morgan@wickphillips.com
Envelope ID: 46695795
Status as of 9/30/2020 9:45 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Sean Lemoine | | sean.lemoine@wickphillips.com | 9/30/2020 9:14:44 AM | SENT |
| Barb Morgan | | barb.morgan@wickphillips.com | 9/30/2020 9:14:44 AM | SENT |

FILED
9/30/2020 1:57 PM
FELICIA PITRE
DISTRICT CLERK
Treva Parker-Ayodele D
DALLAS CO., TEXAS

**EXHIBIT 6**

## CAUSE NO. DC-20-14152

| | | |
|---|---|---|
| **DEIRDRE LEANE AND IPNav, LLC ,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | **DALLAS COUNTY, TEXAS** |
| **UNIFIEDONLINE, INC and** | § | |
| **CHANBOND, LLC,** | § | |
| | § | |
| **Defendants.** | § | **298TH JUDICIAL DISTRICT** |

## MOTION OF NON-RESIDENT ATTORNEY
## AKIVA M. COHEN FOR ADMISSION PRO HAC VICE

Comes now Akiva M. Cohen, Applicant herein, and moves this court to grant admission to the District Court of Dallas County, Texas *pro hac vice* to represent Plaintiffs Deirdre Leane and IPNav, LLC in this case, and would respectfully show the Court as follows:

1.      Applicant is an attorney and a member of the law firm: Kamerman Uncyk Soniker & Klien, P.C., 1700 Broadway, 16th Floor New York, NY 1001; Telephone 212-400-4930; Facsimile: 866-221-6122.

2.      Applicant has been and presently is a member of and in good standing with the Bar of the State of New York, bar license number is 4328969. He is also admitted to the U.S. Eastern District of New York, U. S. Southern District of New York, Second Circuit of New York, and the Third Circuit of New York.

3.      Applicant has not been admitted to practice in any state, other than New York.

4.      Applicant is presently a member in good standing of the bars of the courts listed above.

5.      Applicant has not previously applied to appear *pro hac vice* in this district court or in any Texas court within the past two years.

6.      Applicant has never been subject to grievance proceedings or involuntary removal proceedings while a member of the bar of any state or federal court.

7.      Applicant has not been charged, arrested, or convicted of a criminal offense or offenses.

8.      Applicant has read and is familiar With the Local Rules for the District Court of Dallas County and will comply with the standards of practice set out therein.

9.      Applicant has paid the required fee to the Texas Board of Law Examiners and attached the Letter of Acknowledgment (Exhibit A) evidencing that the fee has been paid.

10.     Applicant has co-counsel in this case who is admitted to practice in the state of Texas and is in good standing with the Texas State Bar:

> J. Sean Lemoine
> Texas State Bar No. 24027443
> sean.lemoine@wickphillips.com
> **WICK PHILLIPS, LLP**
> 3131 McKinney Ave.
> Suite 100
> Dallas, Texas 75204
> Telephone: 214-692-6200
> Facsimile: 214-692-6255

Wherefore, Applicant prays that this Court enter an order permitting the admission of Akiva M. Cohen to the District Court 0f Dallas County, Texas, *pro hac vice* for this case only.

Respectfully submitted,

By: */s/ J. Sean Lemoine*
      J. Sean Lemoine
      Texas State Bar No. 24027443
      sean.lemoine@wickphillips.com
      **WICK PHILLIPS, LLP**
      3131 McKinney Ave., Suite 100
      Dallas, Texas 75204
      Telephone: 214-692-6200
      Facsimile: 214-692-6255

      -and-

By: */s/ Akiva M. Cohen*
      Akiva M. Cohen
      New York State Bar No. 4328969
      acohen@kusklaw.com
      KAMERMAN UNCYK SONIKER & KLIEN, P.C.
      1700 Broadway, 16th Floor
      New York, NY 1001
      Telephone 212-400-4930
      Facsimile: 866-221-6122

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of this document was served on all counsel of record, via electronic filing, pursuant to the Texas Rules of Civil Procedure on September 30, 2020.

      */s/ J. Sean Lemoine*
      J. Sean Lemoine

# Board of Law Examiners

Appointed by the Supreme Court of Texas

September 29, 2020

Akiva M. Cohen
Via: E-Mail

Acknowledgment Letter

Non-Resident Attorney Fee

According to Texas Government Code §82.0361, "a nonresident attorney requesting permission to participate in proceedings in a court in this state shall pay a fee of $250 for each case in which the attorney is requesting to participate."

**This Acknowledgement Letter serves as proof that the Board of Law Examiners has received $250 in connection with the following matter:**

**Non-resident attorney: Akiva M. Cohen**

**Case: DC-20-14152**

**Texas court or body: District Court of Dallas County**

After satisfying the fee requirement, a non-resident attorney shall file a motion in the Texas court or body in which the non-resident attorney is requesting permission to appear. The motion shall contain the information and statements required by Rule 19(a) of the Rules Governing Admission to the Bar of Texas. The motion must be accompanied by this Acknowledgment Letter and by a motion from a resident practicing Texas attorney that contains the statements required by Rule 19(b).

The decision to grant or deny a non-resident attorney's motion for permission to participate in the proceedings in a particular cause is made by the Texas court or body in which it is filed.

For more information, please see Rule 19 of the Rules Governing Admission to the Bar of Texas and §82.0361, of the Texas Government Code, which can be found on the Board's website.

Signed,

*Susan Henricks*

Susan Henricks
Executive Director

**EXHIBIT A**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Barbara Morgan on behalf of J. Sean Lemoine
Bar No. 24027443
barb.morgan@wickphillips.com
Envelope ID: 46713899
Status as of 10/1/2020 10:56 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Sean Lemoine | | sean.lemoine@wickphillips.com | 9/30/2020 1:57:15 PM | SENT |
| Barb Morgan | | barb.morgan@wickphillips.com | 9/30/2020 1:57:15 PM | SENT |



FILED
9/30/2020 1:57 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Treva Parker-Ayodele DEPUTY

## CAUSE NO. DC-20-14152

| | | |
|---|---|---|
| **DEIRDRE LEANE AND IPNav, LLC ,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | **DALLAS COUNTY, TEXAS** |
| **UNIFIEDONLINE, INC and** | § | |
| **CHANBOND, LLC,** | § | |
| | § | |
| **Defendants.** | § | **298TH JUDICIAL DISTRICT** |

## MOTION IN SUPPORT OF NON-RESIDENT ATTORNEY
## AKIVA M. COHEN FOR ADMISSION PRO HAC VICE

Comes now J. Sean Lemoine ("Movant"), as counsel for Plaintiffs, and hereby respectfully requests the Court enter an order in this case permitting the *pro hac vice* admission of Akiva M. Cohen to appear before the Court in the above-captioned action as attorney for the Plaintiffs.

In support of this motion, Movant would show the Court that Mr. Cohen is a member in good standing of the bar of the State of New York. Attached hereto as Exhibit A in support of this motion is the Certificate of Good Standing from The Supreme Court of New York for Mr. Coehn. Further, Mr. Cohen's appearance shall solely be in representation of Plaintiffs and shall be associated with Movant, who is a member in good standing of the Texas Bar. Based on the foregoing, Movant respectfully requests the Court grant the order allowing and permitting the appearance of Akiva M. Cohen *pro hac vice* in this action.

Respectfully submitted,

By: */s/ J. Sean Lemoine*  _____
    J. Sean Lemoine
    Texas State Bar No. 24027443
    sean.lemoine@wickphillips.com
    **WICK PHILLIPS, LLP**
    3131 McKinney Ave., Suite 100
    Dallas, Texas 75204
    Telephone: 214-692-6200
    Facsimile: 214-692-6255

    **ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was served on all counsel of record, via electronic filing, pursuant to the Texas Rules of Civil Procedure on September 30, 2020.

                */s/ J. Sean Lemoine*  _____
                J. Sean Lemoine



## Appellate Division of the Supreme Court
## of the State of New York
## Second Judicial Department

I, Aprilanne Agostino,    Clerk of the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, do hereby certify that    Akiva Meir Cohen    was duly licensed and admitted to practice as an Attorney and Counselor-at-Law in all the courts of the State, according to the laws of the State and the court rules and orders, on the  15 th   day of        June 2005, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors-at-Law on file in my office, has duly registered with the administrative office of the courts, and according to the records of this court is in good standing as an Attorney and Counselor-at-Law.



In Witness Whereof, I have hereunto set my hand and affixed the seal of said Appellate Division on  September 28, 2020.

*Aprilanne Agostino*

Clerk of the Court

**EXHIBIT A**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Barbara Morgan on behalf of J. Sean Lemoine
Bar No. 24027443
barb.morgan@wickphillips.com
Envelope ID: 46713899
Status as of 10/1/2020 10:56 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barb Morgan | | barb.morgan@wickphillips.com | 9/30/2020 1:57:15 PM | SENT |
| Sean Lemoine | | sean.lemoine@wickphillips.com | 9/30/2020 1:57:15 PM | SENT |



**CAUSE NO. DC-20-14152**

| | | |
|---|---|---|
| **DEIRDRE LEANE AND IPNav, LLC ,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | **DALLAS COUNTY, TEXAS** |
| **UNIFIEDONLINE, INC and** | § | |
| **CHANBOND, LLC,** | § | |
| | § | |
| **Defendants.** | § | **298TH JUDICIAL DISTRICT** |

---

## ORDER GRANTING THE MOTION OF NON-RESIDENT ATTORNEY, AKIVA M. COHEN FOR ADMISSION PRO HAC VICE

---

On this the _____ day of _____, 2020, the Application for Admission *Pro Hac Vice* filed by Akiva M. Cohen, counsel for Plaintiffs was presented to the Court. The Court, having reviewed and considered the Application, enters the following order:

IT IS ORDERED that the Application for Admission *Pro Hac Vice* is GRANTED, and Akiva M. Cohen is hereby admitted to practice before this Honorable Court, *pro hac vice*, for the purposes of this litigation, and may appear on behalf of Plaintiffs as counsel of record along with J. Sean Lemoine, of the law firm Wick Phillips.

Signed this _____ day of _____, 2020

_____
PRESIDING JUDGE

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Barbara Morgan on behalf of J. Sean Lemoine
Bar No. 24027443
barb.morgan@wickphillips.com
Envelope ID: 46713899
Status as of 10/1/2020 10:56 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barb Morgan | | barb.morgan@wickphillips.com | 9/30/2020 1:57:15 PM | SENT |
| Sean Lemoine | | sean.lemoine@wickphillips.com | 9/30/2020 1:57:15 PM | SENT |



**EXHIBIT 9**

# FORM NO. 353-3 - CITATION
# THE STATE OF TEXAS

To:

**CHANBOND, LLC
ITS REGISTERED AGENT, THE CORPORATION SERVICE COMPANY,
251 LITTLE FALLS DRIVE
WILMINGTON, DE 19808**

GREETINGS:
You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty  days after you were served this citation and  petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the **298th District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **DEIRDRE LEANE AND IPNav , LLC,**

Filed in said Court  **29th day of September, 2020** against

**UNIFIEDONLINE, INC AND CHANBOND LLC**

For Suit, said suit being numbered <u>**DC-20-14152,**</u> the nature of which demand is as follows:
Suit on **OTHER (CIVIL)** etc. as shown on said petition, a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 1st day of October, 2020.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By_____, Deputy
        COURTNEY RUTLEDGE



---

**ESERVE**

**CITATION**

**DC-20-14152**

**DEIRDRE LEANE, et al
vs.
UNIFIEDONLINE, INC, et al**

ISSUED THIS
**1st day of October, 2020**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By: COURTNEY RUTLEDGE, Deputy

_____

**Attorney for Plaintiff**
J SEAN LEMOINE
WICK PHILIPS GOULD & MARTIN LLP
3131 MCKINNEY AVENUE
SUITE 100
DALLAS TX  75204
214-692-6200
SEAN.LEMOINE@WICKPHILLIPS.COM

**DALLAS COUNTY
SERVICE FEES
NOT PAID**

# OFFICER'S RETURN

Case No. :  DC-20-14152

Court No.298th District Court

Style: DEIRDRE LEANE, et al

 vs.

UNIFIEDONLINE, INC, et al

Came to hand on the _____day of _____, 20_____, at _____o'clock_____.M. Executed at _____,

within the County of _____ at _____ o'clock _____ .M. on the _____day of_____,

20_____, by delivering to the within named

_____

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by

me in serving such process was _____miles and my fees are as follows:   To certify which witness my hand.

|  |  |  |
|---|---|---|
| For serving Citation | $_____ | _____ |
| For mileage | $_____ | of_____County, _____ |
| For Notary | $_____ | By_____Deputy |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said_____before me this_____day of _____, 20_____,

to certify which witness my hand and seal of office.

_____

Notary Public_____County_____



**EXHIBIT 10**

# FORM NO. 353-3 - CITATION
# THE STATE OF TEXAS

 To:
**UNIFIEDONLINE, INC
SERVE REG AGENT CORPORATION TRUST COMPANY CORPORATION 1209
ORANGE STREET WILMINGTON DE 19801**

GREETINGS:
You have been sued.  You may employ an attorney.  If you or your attorney do not file a written
answer with  the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the
expiration of twenty   days after you were served this citation and  petition, a default judgment may be
taken against you.  Your answer should be addressed to the clerk of the **298th District Court** at 600
Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **DEIRDRE LEANE AND IPNav , LLC,**

Filed in said Court  **29th day of September, 2020** against

**UNIFIEDONLINE, INC AND CHANBOND LLC**

For Suit, said suit being numbered **DC-20-14152,** the nature of which demand is as follows:
Suit on **OTHER (CIVIL)** etc. as shown on said petition, a copy of which accompanies this citation.  If
this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 1st day of October, 2020.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By_____, Deputy
          COURTNEY RUTLEDGE



---

**ESERVE**

CITATION

**DC-20-14152**

**DEIRDRE LEANE, et al
vs.
UNIFIEDONLINE, INC, et al**

ISSUED THIS
**1st day of October, 2020**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By:  COURTNEY RUTLEDGE, Deputy

_____

**Attorney for Plaintiff**
J SEAN LEMOINE
WICK PHILIPS GOULD & MARTIN LLP
3131 MCKINNEY AVENUE
SUITE 100
DALLAS TX  75204
214-692-6200
SEAN.LEMOINE@WICKPHILLIPS.COM

**DALLAS COUNTY
SERVICE FEES
NOT PAID**

# OFFICER'S RETURN

Case No. :  DC-20-14152

Court No.298th District Court

Style: DEIRDRE LEANE, et al

 vs.

UNIFIEDONLINE, INC, et al

Came to hand on the _____day of _____, 20_____, at _____o'clock_____.M. Executed at _____,

within the County of _____ at _____ o'clock _____ .M. on the _____day of_____,

20_____, by delivering to the within named

_____

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by

me in serving such process was _____miles and my fees are as follows:   To certify which witness my hand.

|  | For serving Citation | $_____ | _____ |
|  | For mileage | $_____ | of_____County, _____ |
|  | For Notary | $_____ | By_____Deputy |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said_____before me this_____day of _____, 20_____,

to certify which witness my hand and seal of office.

_____

Notary Public_____County_____

**Form 375—NOTICE TO SHOW CAUSE**



**EXHIBIT 11**

No. <u>**DC-20-14152**</u>

SUIT PENDING IN THE DISTRICT COURT OF DALLAS COUNTY, TEXAS

<u>**DEIRDRE LEANE, ET AL**</u>
<u>**VS.**</u>
<u>**UNIFIEDONLINE, INC, ET AL**</u>

# THE STATE OF TEXAS

To: <u>**CHANBOND, LLC**</u>
<u>**ITS REGISTERED AGENT, THE CORPORATION SERVICE COMPANY,251 LITTLE FALLS DRIVE WILMINGTON, DE 19808**</u>
YOU ARE HEREBY COMMANDED TO BE AND APPEAR BEFORE THE HONORABLE JUDGE OF THE <u>**298TH DISTRICT COURT**</u> OF TEXAS, at the Courthouse in Dallas, Texas, on
<u>**12TH DAY OF OCTOBER 2020**</u>
THEN AND THERE TO SHOW CAUSE, if any, WHY
<u>**OF ANY EXISTS WHY THIS TEMPORARY ORDER SHOULD NOT ( SEE ATTACH ORDER)**</u>

Herein Fail Not, but of this writ, and how you have executed the same, make due return.

WITNESS: FELICIA PITRE, Clerk of the District Court of Dallas County, Texas.

Given under my hand and seal of office, at Dallas, **ON THIS THE 1ST DAY OF OCTOBER, 2020.**

Attest:     FELICIA PITRE
Clerk, District Courts, Dallas County, Texas

_____, Deputy.
<u>**COURTNEY RUTLEDGE**</u>



SHERIFF'S RETURN

Came to hand on the_____day of _____A.D. 20_____, and
executed on the_____day of _____A.D. 20_____, by delivering to
_____

_____
the within named_____, in person, a true copy of
this Notice.


_____
                              Sheriff, Dallas County, Texas


By_____Deputy.
                    FEES:
Serving Notice      $_____
Mileage             $_____

ESERVE

No. : **DC-20-14152**

======================================

**DEIRDRE LEANE, ET AL**
**VS.**
**UNIFIEDONLINE, INC, ET AL**

======================================

# NOTICE

======================================
ISSUED

**ON THIS THE 1ST DAY OF OCTOBER,**
**2020**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas


By **COURTNEY RUTLEDGE**, Deputy
======================================


**J SEAN LEMOINE**
**WICK PHILIPS GOULD & MARTIN LLP**
**3131 MCKINNEY AVENUE**
**SUITE 100**
**DALLAS TX 75204**
**214-692-6200**
SEAN.LEMOINE@WICKPHILLIPS.COM

## DALLAS COUNTY
## SERVICE FEES
## NOT PAID

Form 375—NOTICE TO SHOW CAUSE



**EXHIBIT**
**12**

No. **DC-20-14152**

SUIT PENDING IN THE DISTRICT COURT OF DALLAS COUNTY, TEXAS

**DEIRDRE LEANE, ET AL**
**VS.**
**UNIFIEDONLINE, INC, ET AL**

# THE STATE OF TEXAS

To: **UNIFIEDONLINE, INC**
**SERVE REG AGENT CORPORATION TRUST COMPANY CORPORATION 1209 ORANGE STREET WILMINGTON DE 19801**
YOU ARE HEREBY COMMANDED TO BE AND APPEAR BEFORE THE HONORABLE JUDGE OF THE **298TH DISTRICT COURT** OF TEXAS, at the Courthouse in Dallas, Texas, on
**12TH DAY OF OCTOBER 2020**
THEN AND THERE TO SHOW CAUSE, if any, WHY
**OF ANY EXISTS WHY THIS TEMPORARY ORDER SHOULD NOT ( SEE ATTACH ORDER)**

Herein Fail Not, but of this writ, and how you have executed the same, make due return.

WITNESS: FELICIA PITRE, Clerk of the District Court of Dallas County, Texas.

Given under my hand and seal of office, at Dallas, **ON THIS THE 1ST DAY OF OCTOBER, 2020.**

Attest:    FELICIA PITRE
Clerk, District Courts, Dallas County, Texas

_____, Deputy.
**COURTNEY RUTLEDGE**



SHERIFF'S RETURN

Came to hand on the_____day of _____A.D. 20_____, and

executed on the_____day of _____A.D. 20_____, by delivering to

_____

_____

the within named_____, in person, a true copy of

this Notice.

_____
Sheriff, Dallas County, Texas

By_____Deputy.

FEES:

Serving Notice      $_____
Mileage             $_____

No. : **DC-20-14152**

========================

**DEIRDRE LEANE, ET AL**
**VS.**
**UNIFIEDONLINE, INC, ET AL**

========================

# NOTICE

========================

ISSUED

**ON THIS THE 1ST DAY OF OCTOBER,**
**2020**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By **COURTNEY RUTLEDGE**, Deputy

========================

**J SEAN LEMOINE**
**WICK PHILIPS GOULD & MARTIN LLP**
**3131 MCKINNEY AVENUE**
**SUITE 100**
**DALLAS TX 75204**
**214-692-6200**
SEAN.LEMOINE@WICKPHILLIPS.COM

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

**TEMPORARY RESTRAINING ORDER – Form 322**

# THE STATE OF TEXAS

EXHIBIT

**13**

TO    **UNIFIEDONLINE, INC**
**SERVE REG AGENT CORPORATION TRUST COMPANY CORPORATION 1209 ORANGE STREET WILMINGTON DE 19801**

    WHEREAS, in a certain suit pending in the District Court of the **298th District Court** of Texas, wherein **DEIRDRE LEANE ET AL** Plaintiff (s) and **UNIFIEDONLINE, INC AND CHANBOND LLC** Defendant (s), and the said **DEIRDRE LEANE AND IPNav , LLC,** Prayed for and obtained from the Hon. **TOBOLOWSKY EMILY** Judge of the **298th District Court** , his most gracious TEMPORARY RESTRAINING ORDER and the said having given bond, as required by the fiat of the judge of the **298th District Court**.

    Now, therefore, you, the said **CHANBOND, LLC** your Counselors, Solicitors, Attorneys, Agents, Servants and employees are hereby commanded to DESIST and REFRAIN from **SEE ATTACHED COPY OF TRO** until further order of the District Court to be holden within and for the County of Dallas Judicial District of Texas at the Courthouse thereof, in the City of Dallas, at **9:00AM ON OCTOBER 12 2020**, when and where this writ is returnable.

    HEREIN FAIL NOT, under the penalty of the law.

    WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas County, Texas.

    Given under my hand and the seal of said Court, at office in the City of Dallas, **ON THIS THE 1ST DAY OF OCTOBER, 2020**.

Attest:    FELICIA PITRE
Clerk, District Courts, Dallas County, Texas.

By_____, Deputy
**COURTNEY RUTLEDGE**

SHERIFF'S RETURN

Came to hand on the _____ day of _____ 20_____ at _____ o'clock_____M., and executed the _____ day of _____ 20_____ at _____o'clock_____M., by delivering to _____ _____ _____ _____ _____ the within named defendant_____in person, a true copy of this writ.

_____
Sheriff_____County, Texas.

By_____Deputy
            FEES:
Serving Copy            $_____
Mileage                 $_____
            Total  $_____

ESERVE
================================
No. **DC-20-14152**
================================

# IN
**298th District Court**
================================

**DEIRDRE LEANE, ET AL**
**VS.**
**UNIFIEDONLINE, INC, ET AL**
================================

Temporary Restraining Order
================================
ISSUED
**ON THIS THE 1ST DAY OF OCTOBER, 2020**

FELICIA PITRE
Clerk, District courts, Dallas County, Texas
By **COURTNEY RUTLEDGE**,  Deputy
================================

**J SEAN LEMOINE**
**WICK PHILIPS GOULD & MARTIN LLP**
**3131 MCKINNEY AVENUE**
**SUITE 100**
**DALLAS TX 75204**
**214-692-6200**
**SEAN.LEMOINE@WICKPHILLIPS.COM**

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

# THE STATE OF TEXAS

TO     **CHANBOND, LLC,  ITS REGISTERED  AGENT, THE CORPORATION SERVICE COMPANY, 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808**

WHEREAS, in a certain suit pending in the District Court of the **298th District Court** of Texas, wherein **DEIRDRE LEANE ET AL** Plaintiff (s) and **UNIFIEDONLINE, INC AND CHANBOND LLC** Defendant (s), and the said **DEIRDRE LEANE AND IPNav , LLC,** Prayed for and obtained from the Hon. **TOBOLOWSKY EMILY** Judge of the **298th District Court** , his most gracious TEMPORARY RESTRAINING ORDER and the said having given bond, as required by the fiat of the judge of the  **298th District Court**.

Now, therefore, you, the said **CHANBOND, LLC,**   your Counselors, Solicitors, Attorneys, Agents, Servants and employees are hereby commanded to DESIST and REFRAIN from **SEE ATTACHED COPY OF TRO** until further order of the District Court to be holden within and for the County of Dallas Judicial District of Texas at the Courthouse thereof, in the City of Dallas, at **9:00AM ON OCTOBER 12 2020**, when and where this writ is returnable.

HEREIN FAIL NOT, under the penalty of the law.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas County, Texas.

Given under my hand and the seal of said Court, at office in the City of Dallas,  **ON THIS THE 1ST DAY OF OCTOBER, 2020**.

Attest:         FELICIA PITRE
Clerk, District Courts, Dallas County, Texas.

By_____, Deputy
**COURTNEY RUTLEDGE**



SHERIFF'S RETURN

Came to hand on the _____day of_____ 20_____ at
_____o'clock_____M., and executed the _____day of _____
20_____ at _____o'clock_____M., by delivering to _____
_____
_____
_____
_____
the within named defendant_____in person, a true copy of this writ.

_____
Sheriff_____County, Texas.

By_____Deputy
            FEES:
Serving Copy          $_____
Mileage               $_____
            Total   $_____

**ESERVE**
================================
No. **DC-20-14152**
================================

# IN

**298th District Court**
================================

**DEIRDRE LEANE, ET AL**
**VS.**
**UNIFIEDONLINE, INC, ET AL**
================================

Temporary Restraining Order
================================
ISSUED
**ON THIS THE 1ST DAY OF OCTOBER, 2020**

FELICIA PITRE
Clerk, District courts, Dallas County, Texas
By **COURTNEY RUTLEDGE**,  Deputy
================================

**J SEAN LEMOINE**
**WICK PHILIPS GOULD & MARTIN LLP**
**3131 MCKINNEY AVENUE**
**SUITE 100**
**DALLAS TX 75204**
**214-692-6200**
**SEAN.LEMOINE@WICKPHILLIPS.COM**

## DALLAS COUNTY
## SERVICE FEES
## NOT PAID

EXHIBIT
**15**

FILED
10/5/2020 1:26 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Angela Conejo DEPUTY

CAUSE NO. <u>DC-20-14152</u>

| | | |
|---|---|---|
| **DEIRDRE LEANE AND IPNAW, LLC,** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **Plaintiff(s),** | § | |
| **VS.** | § | **298TH JUDICIAL DISTRICT** |
| | § | |
| **UNIFIEDONLINE, INC AND CHANBOND,** | § | |
| **LLC,** | § | |
| **Defendant(s).** | § | **DALLAS COUNTY, TEXAS** |

## <u>RETURN OF SERVICE</u>

Came to my hand on **Friday, October 2, 2020 at 7:51 AM,**
Executed at: **1209 ORANGE STREET, WILMINGTON, DE 19801**
within the county of **NEW CASTLE** at **10:02 AM, on Friday, October 2, 2020,**
by individually and personally delivering to the within named:

### UNIFIEDONLINE, INC

By delivering to its **Registered Agent, CORPORATION TRUST COMPANY**
By delivering to its **Authorized Agent, AMY MCLAREN**
a true copy of this

### NOTICE TO SHOW CAUSE and TEMPORARY RESTRAINING ORDER

**BEFORE ME,** the undersigned authority, on this day personally appeared **KEVIN DUNN** who after being duly sworn on oath states: "My name is **KEVIN DUNN.** I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Delaware. I have personal knowledge of the facts and statements contained in this affidavit and aver that each is true and correct. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude."

By: _____
**KEVIN DUNN -** Process Server
served@specialdelivery.com

Subscribed and Sworn to by KEVIN DUNN, Before Me, the undersigned authority, on this
___5___ day of October, 2020.

_____
<u>Notary</u> Public in and for the State of Delaware

| |
|---|
| **DENORRIS ANGELO BRITT** |
| **NOTARY PUBLIC** |
| **STATE OF DELAWARE** |
| **My Commission Expires May 1, 2022** |

Form 375—NOTICE TO SHOW CAUSE

## No. **DC-20-14152**

SUIT PENDING IN THE DISTRICT COURT OF DALLAS COUNTY, TEXAS

### **DEIRDRE LEANE, ET AL**
### **VS.**
### **UNIFIEDONLINE, INC, ET AL**
# **THE STATE OF TEXAS**

To: **UNIFIEDONLINE, INC**
**SERVE REG AGENT CORPORATION TRUST COMPANY CORPORATION 1209 ORANGE STREET WILMINGTON DE 19801**
YOU ARE HEREBY COMMANDED TO BE AND APPEAR BEFORE THE HONORABLE JUDGE OF THE **298TH DISTRICT COURT** OF TEXAS, at the Courthouse in Dallas, Texas, on
**12TH DAY OF OCTOBER 2020**
THEN AND THERE TO SHOW CAUSE, if any, WHY
**OF ANY EXISTS WHY THIS TEMPORARY ORDER SHOULD NOT ( SEE ATTACH ORDER)**

Herein Fail Not, but of this writ, and how you have executed the same, make due return.

WITNESS: FELICIA PITRE, Clerk of the District Court of Dallas County, Texas.

Given under my hand and seal of office, at Dallas, **ON THIS THE 1ST DAY OF OCTOBER, 2020.**

Attest:   FELICIA PITRE
Clerk, District Courts, Dallas County, Texas

_Courtney Rutledge_ , Deputy.
**COURTNEY RUTLEDGE**



** SEE ATTACHED**
*** AFFIDAVIT***

SHERIFF'S RETURN

Came to hand on the_____day of_____A.D. 20_____, and
executed on the_____day of_____A.D. 20_____, by delivering to
_____

the within named_____, in person, a true copy of
this Notice.

_____
Sheriff, Dallas County, Texas

By_____Deputy.

FEES:

Serving Notice      $_____
Mileage             $_____

ESERVE

No. : **DC-20-14152**

**DEIRDRE LEANE, ET AL**
**VS.**
**UNIFIEDONLINE, INC, ET AL**

# NOTICE

ISSUED

**ON THIS THE 1ST DAY OF OCTOBER, 2020**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By **COURTNEY RUTLEDGE**, Deputy

**J SEAN LEMOINE**
**WICK PHILIPS GOULD & MARTIN LLP**
**3131 MCKINNEY AVENUE**
**SUITE 100**
**DALLAS TX 75204**
**214-692-6200**
**SEAN.LEMOINE@WICKPHILLIPS.COM**

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

** SEE ATTACHED**
*** AFFIDAVIT***

FILED
10/5/2020 1:35 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Deondria Grant DEPUTY

**EXHIBIT**

**16**

## CAUSE NO. <u>DC-20-14152</u>

| | | |
|---|---|---|
| DEIRDRE LEANE AND IPNAW, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| **Plaintiff(s)**, | § | |
| VS. | § | 298TH JUDICIAL DISTRICT |
| | § | |
| UNIFIEDONLINE, INC AND CHANBOND, | § | |
| LLC, | § | |
| **Defendant(s)**. | § | DALLAS COUNTY, TEXAS |

## <u>RETURN OF SERVICE</u>

Came to my hand on **Friday, October 2, 2020 at 7:51 AM,**
Executed at: **1209 ORANGE STREET, WILMINGTON, DE 19801**
within the county of **NEW CASTLE** at 10:02 AM, on Friday, October 2, 2020,
by individually and personally delivering to the within named:

### UNIFIEDONLINE, INC

By delivering to its Registered Agent, **CORPORATION TRUST COMPANY**
By delivering to its Authorized Agent, **AMY MCLAREN**
a true copy of this

### CITATION and ORIGINAL VERIFIED PETITION AND EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF IN AID OF ARBITRATION with EXHIBITS attached

**BEFORE ME,** the undersigned authority, on this day personally appeared **KEVIN DUNN** who after being duly sworn on oath states: "My name is **KEVIN DUNN**. I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Delaware. I have personal knowledge of the facts and statements contained in this affidavit and aver that each is true and correct. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude."

By: _____

**KEVIN DUNN** - **Process Server**
served@specialdelivery.com

Subscribed and Sworn to by KEVIN DUNN, Before Me, the undersigned authority, on this
**5** day of October, 2020.

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 1, 2022

Notary Public in and for the State of Delaware

# FORM NO. 353-3 - CITATION
# THE STATE OF TEXAS

**To:**
**UNIFIEDONLINE, INC**
**SERVE REG AGENT CORPORATION TRUST COMPANY CORPORATION 1209**
**ORANGE STREET WILMINGTON DE 19801**

GREETINGS:
You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with  the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty  days after you were served this citation and  petition, a default judgment may be taken against you.  Your answer should be addressed to the clerk of the **298th District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **DEIRDRE LEANE AND IPNav , LLC,**

Filed in said Court  **29th day of September, 2020** against

**UNIFIEDONLINE, INC AND CHANBOND LLC**

For Suit, said suit being numbered **DC-20-14152,** the nature of which demand is as follows:
Suit on **OTHER (CIVIL)** etc. as shown on said petition, a copy of which accompanies this citation.  If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 1st day of October, 2020.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By_____, Deputy
                COURTNEY RUTLEDGE



---

**ESERVE**

**CITATION**

**DC-20-14152**

**DEIRDRE LEANE, et al**
**vs.**
**UNIFIEDONLINE, INC, et al**

**ISSUED THIS**
**1st day of October, 2020**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By:  COURTNEY RUTLEDGE, Deputy

**Attorney for Plaintiff**
J SEAN LEMOINE
WICK PHILIPS GOULD & MARTIN LLP
3131 MCKINNEY AVENUE
SUITE 100
DALLAS TX  75204
214-692-6200
SEAN.LEMOINE@WICKPHILLIPS.COM

# DALLAS COUNTY
# SERVICE FEES
# NOT PAID

# OFFICER'S RETURN

Case No. : DC-20-14152

Court No.298th District Court

Style: DEIRDRE LEANE, et al

vs.

UNIFIEDONLINE, INC, et al

**\*\* SEE ATTACHED\*\***
**\*\*\*AFFIDAVIT\*\*\***

Came to hand on the _____ day of _____, 20_____, at _____ o'clock_____.M. Executed at _____.

within the County of _____ at _____ o'clock _____ .M. on the _____ day of_____.

20_____, by delivering to the within named

_____

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery. The distance actually traveled by

me in serving such process was _____miles and my fees are as follows:  To certify which witness my hand.

|  | For serving Citation | $_____ | _____ |
|--|--|--|--|
|  | For mileage | $_____ | of_____County, _____ |
|  | For Notary | $_____ | By_____Deputy |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said_____before me this_____day of _____. 20_____.

to certify which witness my hand and seal of office.

_____

Notary Public_____County_____

FILED
10/5/2020 1:36 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Angela Conejo DEPUTY

**EXHIBIT 17**

## CAUSE NO. DC-20-14152

| | | |
|---|---|---|
| DEIRDRE LEANE AND IPNAW, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| Plaintiff(s), | § | |
| VS. | § | 298TH JUDICIAL DISTRICT |
| | § | |
| UNIFIEDONLINE, INC AND CHANBOND, | § | |
| LLC, | § | |
| Defendant(s). | § | DALLAS COUNTY, TEXAS |

## RETURN OF SERVICE

Came to my hand on **Friday, October 2, 2020 at 7:51 AM,**
Executed at: **1209 ORANGE STREET, WILMINGTON, DE 19801**
within the county of **NEW CASTLE** at **10:02 AM, on Friday, October 2, 2020,**
by individually and personally delivering to the within named:

### UNIFIEDONLINE, INC

By delivering to its **Registered Agent, CORPORATION TRUST COMPANY**
By delivering to its **Authorized Agent, AMY MCLAREN**
a true copy of this

### TEMPORARY RESTRAINING ORDER and TEMPORARY RESTRAINING ORDER INJUNCTIVE RELIEF IN AID OF ARBITRATION with EXHIBITS attached

**BEFORE ME,** the undersigned authority, on this day personally appeared **KEVIN DUNN** who after being duly sworn on oath states: "My name is KEVIN DUNN. I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Delaware. I have personal knowledge of the facts and statements contained in this affidavit and aver that each is true and correct. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude."

By: _____
**KEVIN DUNN - Process Server**
served@specialdelivery.com

Subscribed and Sworn to by KEVIN DUNN, Before Me, the undersigned authority, on this ____ day of October, 2020.

_____
Notary Public in and for the State of Delaware

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 1, 2022

**TEMPORARY RESTRAINING ORDER – Form 322**

# THE STATE OF TEXAS

TO   **UNIFIEDONLINE, INC**
**SERVE REG AGENT CORPORATION TRUST COMPANY CORPORATION 1209 ORANGE STREET WILMINGTON DE 19801**

WHEREAS, in a certain suit pending in the District Court of the **298th District Court** of Texas, wherein **DEIRDRE LEANE ET AL** Plaintiff (s) and **UNIFIEDONLINE, INC AND CHANBOND LLC** Defendant (s), and the said **DEIRDRE LEANE AND IPNav , LLC,** Prayed for and obtained from the Hon. **TOBOLOWSKY EMILY** Judge of the **298th District Court** , his most gracious TEMPORARY RESTRAINING ORDER and the said having given bond, as required by the fiat of the judge of the  **298th District Court**.

Now, therefore, you, the said **UNIFIEDONLINE, INC** your Counselors, Solicitors, Attorneys, Agents, Servants and employees are hereby commanded to DESIST and REFRAIN from **SEE ATTACHED COPY OF TRO**
until further order of the District Court to be holden within and for the County of Dallas
Judicial District of Texas at the Courthouse thereof, in the City of Dallas, at **9:00AM ON OCTOBER 12 2020**, when and where this writ is returnable.

HEREIN FAIL NOT, under the penalty of the law.
WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas County, Texas.
Given under my hand and the seal of said Court, at office in the City of Dallas,  **ON THIS THE 1ST DAY OF OCTOBER, 2020.**

Attest:     FELICIA PITRE
Clerk, District Courts, Dallas County, Texas.

By _____ , Deputy
   **COURTNEY RUTLEDGE**

\*\* SEE ATTACHED\*\*
\*\*\* AFFIDAVIT\*\*\*

### SHERIFF'S RETURN

Came to hand on the _____ day of _____ 20_____ at _____ o'clock_____M., and executed the _____ day of _____
20_____ at _____ o'clock_____M., by delivering to _____

_____
_____
_____

the within named defendant_____in person, a true copy of this writ.

_____
Sheriff_____County, Texas.

By_____Deputy
      FEES:
Serving Copy    $_____
Mileage        $_____
    Total  $_____

\*\* SEE ATTACHED\*\*
\*\*\*AFFIDAVIT\*\*\*

**ESERVE**

No. **DC-20-14152**

**IN**
**298th District Court**

**DEIRDRE LEANE, ET AL**
**VS.**
**UNIFIEDONLINE, INC, ET AL**

Temporary Restraining Order

ISSUED
**ON THIS THE 1ST DAY OF OCTOBER,**
**2020**

FELICIA PITRE
Clerk, District courts, Dallas County, Texas
By **COURTNEY RUTLEDGE**, Deputy

**J SEAN LEMOINE**
**WICK PHILIPS GOULD & MARTIN LLP**
**3131 MCKINNEY AVENUE**
**SUITE 100**
**DALLAS TX 75204**
**214-692-6200**
**SEAN.LEMOINE@WICKPHILLIPS.COM**

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

FILED
10/5/2020 1:36 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Deondria Grant DEPUTY

**EXHIBIT 18**

## CAUSE NO. DC-20-14152

| | | |
|---|---|---|
| **DEIRDRE LEANE AND IPNAW, LLC,** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **Plaintiff(s),** | § | |
| **VS.** | § | **298TH JUDICIAL DISTRICT** |
| | § | |
| **UNIFIEDONLINE, INC AND CHANBOND,** | § | |
| **LLC,** | § | |
| **Defendant(s).** | § | **DALLAS COUNTY, TEXAS** |

## RETURN OF SERVICE

Came to my hand on **Friday, October 2, 2020 at 7:51 AM,**
Executed at: **251 LITTLE EALLS DRIVE, WILMINGTON, DE 19808**
within the county of **NEW CASTLE** at 1:45 PM, on **Friday, October 2, 2020,**
by individually and personally delivering to the within named:

### CHANBOND, LLC

By delivering to its **Registered Agent, CORPORATION SERVICE COMPANY**
By delivering to its **Authorized Agent, LYNANNE GARES**
a true copy of this

### NOTICE TO SHOW CAUSE and TEMPORARY RESTRAINING ORDER

**BEFORE ME,** the undersigned authority, on this day personally appeared **KEVIN DUNN** who after being duly sworn on oath states: "My name is **KEVIN DUNN**. I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Delaware. I have personal knowledge of the facts and statements contained in this affidavit and aver that each is true and correct. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude."

By: _____
**KEVIN DUNN** Process Server
served@specialdelivery.com

Subscribed and Sworn to by KEVIN DUNN, Before Me, the undersigned authority, on this
___5___ day of October, 2020.

_____
Notary Public in and for the State of Delaware

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 1, 2022

Form 375—NOTICE TO SHOW CAUSE

No. **DC-20-14152**

SUIT PENDING IN THE DISTRICT COURT OF DALLAS COUNTY, TEXAS

**DEIRDRE LEANE, ET AL**
**VS.**
**UNIFIEDONLINE, INC, ET AL**

# THE STATE OF TEXAS

To: **CHANBOND, LLC**
**ITS REGISTERED AGENT, THE CORPORATION SERVICE COMPANY,251 LITTLE FALLS DRIVE WILMINGTON, DE 19808**
YOU ARE HEREBY COMMANDED TO BE AND APPEAR BEFORE THE HONORABLE JUDGE OF THE **298TH DISTRICT COURT** OF
TEXAS, at the Courthouse in Dallas, Texas, on
**12TH DAY OF OCTOBER 2020**
THEN AND THERE TO SHOW CAUSE, if any, WHY
**OF ANY EXISTS WHY THIS TEMPORARY ORDER SHOULD NOT ( SEE ATTACH ORDER)**

Herein Fail Not, but of this writ, and how you have executed the same, make due return.

WITNESS: FELICIA PITRE, Clerk of the District Court of Dallas County, Texas.

Given under my hand and seal of office, at Dallas, **ON THIS THE 1ST DAY OF OCTOBER, 2020.**

Attest:     FELICIA PITRE
Clerk, District Courts, Dallas County, Texas

_Courtney Rutledge_
_____, Deputy.
**COURTNEY RUTLEDGE**

\*\* SEE ATTACHED\*\*
\*\*\* AFFIDAVIT\*\*\*

**SHERIFFS RETURN**

Came to hand on the_____day of_____A.D. 20_____, and
executed on the_____day of_____A.D. 20_____, by delivering to

_____

the within named_____, in person, a true copy of
this Notice.

_____
Sheriff, Dallas County, Texas

By_____Deputy.

FEES:

Serving Notice      $_____
Mileage             $_____

**ESERVE**

No. : **DC-20-14152**

**DEIRDRE LEANE, ET AL**
**VS.**
**UNIFIEDONLINE, INC, ET AL**

# NOTICE

ISSUED

**ON THIS THE 1ST DAY OF OCTOBER,**
**2020**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By **COURTNEY RUTLEDGE**, Deputy

**J SEAN LEMOINE**
**WICK PHILIPS GOULD & MARTIN LLP**
**3131 MCKINNEY AVENUE**
**SUITE 100**
**DALLAS TX 75204**
**214-692-6200**
**SEAN.LEMOINE@WICKPHILLIPS.COM**

## DALLAS COUNTY
## SERVICE FEES
## NOT PAID

FILED
10/5/2020 1:36 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Deondria Grant DEPUTY

**EXHIBIT 19**

## CAUSE NO. DC-20-14152

| | | |
|---|---|---|
| DEIRDRE LEANE AND IPNAW, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| Plaintiff(s), | § | |
| VS. | § | 298TH JUDICIAL DISTRICT |
| | § | |
| UNIFIEDONLINE, INC AND CHANBOND, | § | |
| LLC, | § | |
| | § | |
| Defendant(s). | § | DALLAS COUNTY, TEXAS |

## RETURN OF SERVICE

Came to my hand on **Friday, October 2, 2020 at 7:51 AM,**
Executed at: **251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808**
within the county of **NEW CASTLE** at 1:45 PM, on **Friday, October 2, 2020,**
by individually and personally delivering to the within named:

### CHANBOND, LLC

By delivering to its **Registered Agent, CORPORATION SERVICE COMPANY**
By delivering to its **Authorized Agent, LYNANNE GARES**
a true copy of this

### CITATION and ORIGINAL VERIFIED PETITION AND EX-PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF IN AID OF ARBITRATION with EXHIBITS attached

**BEFORE ME,** the undersigned authority, on this day personally appeared **KEVIN DUNN** who after being duly sworn on oath states: "My name is **KEVIN DUNN**. I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Delaware. I have personal knowledge of the facts and statements contained in this affidavit and aver that each is true and correct. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude."

By: _____
**KEVIN DUNN -** Process Server
served@specialdelivery.com

Subscribed and Sworn to by KEVIN DUNN, Before Me, the undersigned authority, on this
___5___ day of October, 2020.

_____
Notary Public in and for the State of Delaware

DENORRIS ANGELO BRIT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 1, 2022

## OFFICER'S RETURN

**\*\* SEE ATTACHED\*\***
**\*\*\*AFFIDAVIT\*\*\***

Case No. : DC-20-14152

Court No.298th District Court

Style: DEIRDRE LEANE, et al

vs.

UNIFIEDONLINE, INC, et al

Came to hand on the _____day of_____, 20_____, at _____o'clock_____.M. Executed at _____,

within the County of _____ at _____o'clock _____ .M. on the _____day of_____,

20_____, by delivering to the within named

_____

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery. The distance actually traveled by

me in serving such process was _____miles and my fees are as follows:  To certify which witness my hand.

|   |   |   |
|---|---|---|
| For serving Citation | $_____ | _____ |
| For mileage | $_____ | of_____County,_____ |
| For Notary | $_____ | By_____ Deputy |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said_____ before me this_____day of_____, 20_____,

to certify which witness my hand and seal of office.

_____

Notary Public_____County_____

FILED
10/5/2020 1:36 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Deondria Grant DEPUTY

**EXHIBIT 20**

## CAUSE NO. <u>DC-20-14152</u>

| | | |
|---|---|---|
| **DEIRDRE LEANE AND IPNAW, LLC,** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **Plaintiff(s),** | § | |
| **VS.** | § | **298TH JUDICIAL DISTRICT** |
| | § | |
| **UNIFIEDONLINE, INC AND CHANBOND,** | § | |
| **LLC,** | § | |
| **Defendant(s).** | § | **DALLAS COUNTY, TEXAS** |

## <u>RETURN OF SERVICE</u>

Came to my hand on **Friday, October 2, 2020 at 7:51 AM,**
Executed at: **251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808**
within the county of **NEW CASTLE** at 1:45 PM, on **Friday, October 2, 2020,**
by individually and personally delivering to the within named:

### CHANBOND, LLC

By delivering to its **Registered Agent, CORPORATION SERVICE COMPANY**
By delivering to its **Authorized Agent, LYNANNE GARES**
a true copy of this

### TEMPORARY RESTRAINING ORDER and TEMPORARY RESTRAINING ORDER

**BEFORE ME,** the undersigned authority, on this day personally appeared **KEVIN DUNN** who after being duly sworn on oath states: "My name is **KEVIN DUNN**. I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Delaware. I have personal knowledge of the facts and statements contained in this affidavit and aver that each is true and correct. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude."

By: _____
**KEVIN DUNN - Process Server**
served@specialdelivery.com

Subscribed and Sworn to by KEVIN DUNN, Before Me, the undersigned authority, on this
__5__ day of October, 2020.

DENORRIS ANGELO BRITT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires May 1, 2022

_____
Notary Public in and for the State of Delaware

**TEMPORARY RESTRAINING ORDER – Form 322**

# THE STATE OF TEXAS

TO **CHANBOND, LLC, ITS REGISTERED AGENT, THE CORPORATION SERVICE COMPANY, 251 LITTLE FALLS DRIVE, WILMINGTON, DE 19808**

WHEREAS, in a certain suit pending in the District Court of the **298th District Court** of Texas, wherein **DEIRDRE LEANE ET AL** Plaintiff (s) and **UNIFIEDONLINE, INC AND CHANBOND LLC** Defendant (s), and the said **DEIRDRE LEANE AND IPNav , LLC,** Prayed for and obtained from the Hon. **TOBOLOWSKY EMILY** Judge of the **298th District Court** , his most gracious TEMPORARY RESTRAINING ORDER and the said having given bond, as required by the fiat of the judge of the **298th District Court**.

Now, therefore, you, the said **CHANBOND, LLC,** your Counselors, Solicitors, Attorneys, Agents, Servants and employees are hereby commanded to DESIST and REFRAIN from **SEE ATTACHED COPY OF TRO**
until further order of the District Court to be holden within and for the County of Dallas
Judicial District of Texas at the Courthouse thereof, in the City of Dallas, at **9:00AM ON OCTOBER 12 2020**, when and where this writ is returnable.

HEREIN FAIL NOT, under the penalty of the law.
WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas County, Texas.
Given under my hand and the seal of said Court, at office in the City of Dallas, **ON THIS THE 1ST DAY OF OCTOBER, 2020.**

Attest: FELICIA PITRE
Clerk, District Courts, Dallas County, Texas.

By_____*Courtney Rutledge*_____, Deputy
**COURTNEY RUTLEDGE**

** SEE ATTACHED**
***AFFIDAVIT***

SHERIFF'S RETURN

Came to hand on the _____ day of _____ 20_____ at
_____ o'clock_____M., and executed the _____ day of _____
20_____ at _____ o'clock_____M., by delivering to _____

the within named defendant_____ in person, a true copy of this writ.

_____
Sheriff_____County, Texas.

By_____Deputy
                    FEES:
Serving Copy       $_____
Mileage            $_____
       Total       $_____

ESERVE

No. DC-20-14152

IN
298th District Court

DEIRDRE LEANE, ET AL
VS.
UNIFIEDONLINE, INC, ET AL

Temporary Restraining Order

ISSUED
ON THIS THE 1ST DAY OF OCTOBER,
2020

FELICIA PITRE
Clerk, District courts, Dallas County, Texas
By COURTNEY RUTLEDGE, Deputy

J SEAN LEMOINE
WICK PHILIPS GOULD & MARTIN LLP
3131 MCKINNEY AVENUE
SUITE 100
DALLAS TX 75204
214-692-6200
SEAN.LEMOINE@WICKPHILLIPS.COM

DALLAS COUNTY
SERVICE FEES
NOT PAID

**EXHIBIT 21**



## FELICIA PITRE, DISTRICT CLERK
## REGISTRY DEPOSIT INFORMATION SHEET
## FOR MINORS, INTERPLEADERS & CASH BONDS

CASE # _DC-20-14152-M_          AMOUNT **$5,000.00**
                                CHECK # _____
                                AMOUNT _____
BOND TYPE _T.R.O._              CHECK # _____

CASE STYLE _Deirdre Leane & IRNAK_ vs. _Unified online, Inc. &_ _Chanbond LLC_

ARE THESE FUNDS TO BE INVESTED? _____ YES     _X_ NO

TAX ID #. or SOC. SEC. # _____
                        *(TRUST MUST HAVE A COPY TO HAVE FUNDS INVESTED)*

PARTY NAME or MINOR'S NAME _____
                                    *(REQUIRED)*

MINOR'S DATE OF BIRTH _____
                                *(REQUIRED)*

MINOR'S PARENT OR GUARDIAN NAME & ADDRESS, PH. # & DRIVERS LICENSE #____
_____ PH.# _____ D.L.# _____
                                    *(REQUIRED)*          *(REQUIRED)*

PLAINTIFF ATTY._____   DEFENDANT ATTY. or GAL._____
ADDRESS_____   ADDRESS_____
_____   _____

PHONE #_____   PHONE # _____

NOTE: <u>REGISTRY FUNDS WILL BE INVESTED ONLY IF A COPY OF SOCIAL SECURITY OR TAX ID NUMBER IS PROVIDED.</u>

TYPES OF INTEREST BEARING ACCOUNTS ALLOWED PER SECTION 117.053 OF THE LOCAL GOVERNMENT CODE: INTERLOCAL INVESTMENT POOLS, LOCAL INTEREST BEARING DEPOSITS THAT ARE FDIC INSURED (CD, MMA'S, SAVINGS ACCOUNTS), UNITED STATES TREASURY BILLS AND NO LOAD MONEY MARKET MUTUAL FUNDS. ALL OF THESE INTEREST BEARING VEHICLES ARE SUBJECT TO THE STRICT GUIDELINES SET FORTH IN SECTION 117.053 OF THE LOCAL GOVERNMENT CODE. **A FEE OF 10% OF THE INTEREST EARNED WILL BE ASSESSED AT THE TIME OF WITHDRAWAL ON INVESTED ACCOUNTS PER SECTION 117.122 OF THE LOCAL GOVERNMENT CODE.**

IT IS DISTRICT CLERK POLICY REGARDING FINAL JUDGMENTS TO WAIT 30 DAYS TO DISPERSE REGISTRY FUNDS. THIS IS DUE TO THE FACT THAT THE CASE CAN BE APPEALED WITHIN 30 DAYS. THE EXCEPTION TO THIS IS: AGREED FINAL JUDGMENTS, OR THE FINAL JUDGMENT CONTAINS WORDING ORDERING THE DISTRICT CLERK TO FORGO THE 30 DAY WAIT. ALSO A NON-JUDGMENT ORDER OF THE COURT WILL SUFFICE IN ORDER TO RELEASE COURT REGISTRY FUNDS IMMEDIATELY. THE DISTRICT CLERK TRUST OFFICE WILL ALSO WAIT TO DISBURSE FUNDS FROM THE COURT'S REGISTRY IF THE DEPOSIT WAS RECENTLY MADE BY CHECK. THIS WILL ALLOW THE TRUST OFFICE ENOUGH TIME TO SEE IF THE CHECK HAS CLEARED.

IT IS THE RESPONSIBILITY OF THE ATTORNEYS OF RECORD TO SUBMIT A COURT ORDER TO REQUEST A DISBURSEMENT OF ANY MONIES DEPOSITED IN LIEU OF BOND OR INTERPLEADER ACTIONS AND TIMELY NOTIFY THE TRUST DEPARTMENT OF ANY INVESTMENT OR WITHDRAWAL. IF YOU WIRE TRANSFER FUNDS INTO THE COURT'S REGISTRY, THEN YOU NEED TO FILL OUT A REGISTRY DEPOSIT FORM LOCATED UNDER DOWNLOADABLE FORMS ONLINE UNDER THE DISTRICT CLERK'S WEB SITE www.dallascounty.org/department/districtclerk/districtclerk_index.html AND SUBMIT A COPY TO THE D.C. TRUST OFFICE.

SIGNATURE _____          DATE _09/30/2020_

# OFFICIAL RECEIPT
## DALLAS COUNTY OFFICIAL RECEIPT FELICIA PITRE, DISTRICT CLERK

| Payor | Receipt No. |
|---|---|
| WICK PHILLIPS GOULD & MARTIN, LLP OPERATING ACCOI | **60635-2020-DCLK** |

|  | Transaction Date |
|---|---|
|  | 09/30/2020 |

| Description | Amount Paid |
|---|---|
| On Behalf Of  LEANE, DEIRDRE | |
| DC-20-14152 | |
| DEIRDRE LEANE, et al vs. UNIFIEDONLINE, INC, et al | |
| Bond Account | |
| CASH BOND DEPOSIT (CIVIL) | 5,000.00 |
| SUBTOTAL | 5,000.00 |

| | **PAYMENT TOTAL** | **5,000.00** |
|---|---|---|

| CHECK (Ref #18349) Tendered | 5,000.00 |
|---|---|
| Total Tendered | 5,000.00 |
| Change | 0.00 |

| 09/30/2020 | Cashier | Audit |
|---|---|---|
| 09:39 AM | Station DC144 | 63630487 |

## OFFICIAL RECEIPT

FILED
2020 SEP 30 AM 9: 43
FELICIA PITRE
DISTRICT CLERK
DALLAS CO. TEXAS
Nikiya Harris DEPUTY

TBD Bond

DC-20-14152
Deirdre Leane, et al
vs.
ChiefsOnline, Inc.
et al

# CIVIL COVER SHEET

**EXHIBIT 22**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Dierdre Leane and IPNAV, LLC

**(b)** County of Residence of First Listed Plaintiff ___Dallas Cty.___
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
J. Sean Lemoine,
Wick Phillips Gould & Martin LLP, 3131 McKinney Avenue, Suite 100, Dallas, Texas 75204
Tel: 214-692-6200

## DEFENDANTS

UnifiedOnline, Inc. and ChanBond, LLC

County of Residence of First Listed Defendant ___Fairfax County, Virginia___
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Courtney Barksdale Perez, Linda R. Stahl, Scott W. Breedlove,
Carter Arnett PLLC, 8150 N. Central Expressway, Suite 500, Dallas, Texas, 75206
Tel: 214-550-8100

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [x] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | [ ] 871 IRS—Third Party 26 USC 7609 | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | **IMMIGRATION** | | |
| | | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | |
| | | [ ] 555 Prison Condition | [ ] 465 Other Immigration Actions | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1332, 1441. & 1446

Brief description of cause:
Request for injunctive relief in aid of arbitration.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE October 9, 2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Linda R. Stahl

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**EXHIBIT**

**23**

# Supplemental Civil Cover Sheet for Cases Removed
# From State Court

**This form must be attached to the Civil Cover Sheet at the time the case is filed in the U.S. District Clerk's Office. Additional sheets may be used as necessary.**

1. **State Court Information:**

   Please identify the court from which the case is being removed and specify the number assigned to the case in that court.

   | Court | Case Number |
   |---|---|
   | Dallas County District, 298th J.D. | No. DC-20-14152 |

2. **Style of the Case:**

   Please include all Plaintiff(s), Defendant(s), Intervenor(s), Counterclaimant(s), Crossclaimant(s) and Third Party Claimant(s) still remaining in the case and indicate their party type. Also, please list the attorney(s) of record for each party named and include their bar number, firm name, correct mailing address, and phone number (including area code).

   | Party and Party Type | Attorney(s) |
   |---|---|
   | Dierdre Leane - Plaintiff | J. Sean Lemoine, TBA No. 24027443, Wick Phillips |
   | IPNAV, LLC - Plaintiff | Gould & Martin LLP, 3131 McKinney Ave., Ste. 100 |
   |  | Dallas, TX 75204; (214) 692-6200 |
   | UnifiedOnline, Inc. - Defendant | Courtney Barksdale Perez, Linda R. Stahl, Scott W. Breedlove |
   | ChanBond, LLC - Defendant | Carter Arnett PLLC, 8150 N. Central Expy, Ste 500, Dallas, TX 75206 |
   |  | (214) 550-8100 |

3. **Jury Demand:**

   Was a Jury Demand made in State Court?    ☐ Yes      ☑ No

   If "*Yes,*" by which party and on what date?

   _____        _____

   Party                                                          Date

Supplemental Civil Cover Sheet
Page **2** of **2**

4. **Answer:**

Was an Answer made in State Court?  ☐ Yes  ☑ No

If "*Yes*," by which party and on what date?

_____   _____
Party                                                    Date

5. **Unserved Parties:**

The following parties have not been served at the time this case was removed:

| Party | Reason(s) for No Service |
|-------|--------------------------|
|       |                          |
|       |                          |
|       |                          |
|       |                          |
|       |                          |

6. **Nonsuited, Dismissed or Terminated Parties:**

Please indicate any changes from the style on the State Court papers and the reason for that change:

| Party | Reason |
|-------|--------|
|       |        |

7. **Claims of the Parties:**

The filing party submits the following summary of the remaining claims of each party in this litigation:

| Party | Claim(s) |
|-------|----------|
| Dierdre Leane & IPNAV, LLC (Plaintiff) | Plaintiffs seek injunctive relief in aid of arbitration of contractual dispute. |
| UnifiedOnline, Inc. & ChanBond, LLC (Defendants) | Defendants are not currently asserting counterclaims. |