IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEIRDRE LEANE and IPNAV, LLC, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:20-cv-3097 |
| UNIFIEDONLINE, INC. and | § | |
| CHANBOND, LLC, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS UNIFIEDONLINE, INC. AND CHANBOND, LLC'S RESPONSE TO PLAINTIFFS' EMERGENCY MOTION TO EXTEND TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

I.      FACTUAL BACKGROUND ..................................................................................... 1

II.    ARGUMENT AND AUTHORITIES ...................................................................... 4

      A.    Plaintiffs have not shown good cause to further extend the state court's *ex parte* temporary restraining order ............................................. 4

      B.    Plaintiffs failed to meet their burden to show imminent and irreparable harm ................................................................................. 7

              1.    Money damages would adequately compensate Plaintiffs .......................... 8

              2.    Plaintiffs' fear of injury is purely speculative ........................................... 10

              3.    Plaintiffs have not demonstrated that harm is imminent ........................... 11

      C.    Plaintiffs are unlikely to succeed on the merits .................................................... 12

      D.    Any potential injury to Plaintiffs is clearly outweighed by the harm to the Defendants       .................................................................. 15

III.   CONCLUSION ..................................................................................................... 16

CERTIFICATE OF SERVICE ......................................................................................... 18

## INDEX OF AUTHORITIES

*Billing Concepts, Inc. v. OCMC, Inc.*, CIVA SA05CA1084FB(NN, 2005 WL 3348940 (W.D. Tex. Nov. 14, 2005), *report and recommendation adopted*, SA-05-CA-1084-FB(NN), 2005 WL 8156358 (W.D. Tex. Dec. 9, 2005) .................................................6

*Bradley v. Sebelius*, 621 F.3d 1330 (11th Cir. 2010) ....................................................16

*Brink's Inc. v. Patrick*, 3:14-CV-775-B, 2014 WL 2931824 (N.D. Tex. June 27, 2014).........................................................................................................................10

*Bullion Group, LLC v. Liberty Metals Group, LLC*, 3:13-CV-3945-D, 2013 WL 5637601 (N.D. Tex. Oct. 15, 2013).................................................................................5

*Clouding IP, LLC v. Google Inc.*, 61 F. Supp. 3d 421 (D. Del. 2014).........................11

*Complete Fire Prot., Inc. v. Kolman*, 19-CV-1134-WJM-STV, 2019 WL 1755280 (D. Colo. Apr. 19, 2019)...............................................................................................15

*Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761 (N.D. Tex. 2012) .............8, 11

*DFW Metro Line Servs. v. Sw. Bell Tel. Co.*, 901 F.2d 1267 (5th Cir. 1990) ................8

*Farrow v. Citimortgage, Inc.*, 3:15-CV-3813-L, 2016 WL 302315 (N.D.Tex. Jan. 25, 2016).....................................................................................................................5–6

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970)...........................................................................................................8

*Gonzalez v. Wells Fargo Bank, N.A.*, 5:12-CV-03842-EJD, 2012 WL 3249499 (N.D. Cal. Aug. 7, 2012) ...............................................................................................6

*Granato v. Am. Cotton Shippers Ass'n*, 5:12-CV-184-C, 2012 WL 12892732 (N.D. Tex. Oct. 12, 2012).....................................................................................................15

*Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992 (5th Cir.1985) ...................10

*Howell v. CitiMortgage, Inc.*, 4:16-CV-00943-O-BP, 2016 WL 6820471 (N.D. Tex. Oct. 31, 2016) , *report and recommendation adopted*, 4:16-CV-943-O, 2016 WL 6804818 (N.D. Tex. Nov. 17, 2016) .......................................................................5

*Jackson HMA, LLC*, 2018 WL 4401712 (citing *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826 (5th Cir. 1975) ....................................................................16

Lee v. Verizon Commc'ns Inc., 2012 WL 6089041 (N.D. Tex. Dec.7, 2012)................4

*Lewis v. S. S. Baune,* 534 F.2d 1115 (5th Cir. 1976).........................................9, 11, 16

*Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618 (5th Cir.1985) ........................ 7

*Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300 (5th Cir. 1988) .......................... 5

*NTR Bullion Group, LLC v. Liberty Metals Group, LLC*, 3:13-CV-3945-D, 2013 WL 5637601 (N.D. Tex. Oct. 15, 2013) ................................................................... 5–6

*Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*, 4:15-CV-571-ALM-CAN, 2015 WL 9876952 (E.D. Tex. Dec. 23, 2015), *report and recommendation adopted*, 4:15-CV-571, 2016 WL 231160 (E.D. Tex. Jan. 19, 2016) .............................................. 8, 10–11

*Sec. & Exch. Comm'n v. AriseBank*, No. 3:18-CV-186-M, 2018 WL 10419828 (N.D. Tex. Mar. 9, 2018) ..................................................................................... 6

*United States ex rel. Vanderlan v. Jackson HMA, LLC*, 3:15-CV-767-DPJ-FKB, 2018 WL 4401712, (S.D. Miss. Sept. 14, 2018) .............................................. 9

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) ......................................................... 8

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) .................................... 16

White v. Carlucci, 862 F.2d 1209 (5th Cir.1989) ......................................................... 7

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) ..................................................................................................... 10

*Xtria, LLC v. Int'l Ins. All., Inc.*, No. 309-CV-2228-G, 2009 WL 4756365 (N.D.Tex. Dec. 11, 2009) .................................................................................... 6

Plaintiffs Deirdre Leane ("Leane") and IPNAV, LLC have asked this Court to extend not an anti-suit injunction, but an anti-***settlement*** injunction. Specifically, Plaintiffs seek to extend a state-court TRO issued *ex parte* that bars Defendants UnifiedOnline, Inc. and ChanBond, LLC from settling 13 separate lawsuits currently pending in a sister federal district court. Plaintiffs do so based on their speculative and wholly unsubstantiated fear that ChanBond will take less money in settlement than Leane supposes she could negotiate herself, though she gave up ownership and control of ChanBond five years ago. Plaintiffs' contract claims asserted in arbitration have no merit whatsoever, being grounded in an unjustifiable rewriting of the contract by which Leane sold ChanBond. Even more importantly in this procedural context, the harm alleged is neither imminent nor irreparable—it is fully compensable in money damages. Moreover, the requested relief would undermine the overriding public interest in settling litigation. Accordingly, the application to extend the *ex parte* TRO should be denied.

## I.
## FACTUAL BACKGROUND

Plaintiff Dierdre Leane and Defendant ChanBond's current Manager, William Carter ("Carter"), worked together for a consulting firm called IP Navigation Group, LLC ("IPNG"). Defs.' App. at 1. IPNG's business was to assist patent owners in monetizing their patents by licensing the technology or, when infringers refused to voluntarily enter licenses, by pursuing litigation. *Id.* While often patent owners chose to consult with IPNG and maintain ownership of their patents, others preferred to assign the patents but maintain an interest in any future licenses or settlements. *Id.* When patent owners chose this latter route, IPNG would either establish a single-purpose entity or arrange for an affiliate to take ownership of the patents, and IPNG would

1

provide services to that entity through an advisory services agreement that gave IPNG a percentage of the revenue generated from any monetization of the patents. *Id.* at 1–2.

The patents at issue in this dispute were originally owned by CBV, Inc. ("CBV"). *Id.* at 2. CBV began discussions with IPNG in 2013, but never entered into an advisory services agreement with IPNG. *Id.* CBV ultimately chose to sell its patents (the "CBV Patents") in exchange for a 50% interest of the net recoveries of any monetization. *Id.* After negotiations with CBV for approximately a year, Carter and CBV came to an agreement by which Carter would purchase CBV's patents; however, due to IPNG's refusal to provide financial backing and advisory services, Leane (through her entity at the time, ChanBond) was substituted in for Carter at the end of negotiations. *Id.*

On April 9, 2015, CBV and ChanBond entered into a patent purchase agreement ("PPA") by which ChanBond acquired the CBV Patents. *Id.* at 2, 5, 8. CBV retained a right to 50% of the net recovery in litigation involving the CBV Patents, after certain expenses, which included "reasonable fees and expenses of any other advisors or agents." *Id.* at 2, 7. Because this created a risk that CBV's recovery could be diminished by consulting arrangements between ChanBond and other companies controlled by Leane, the PPA required that "any cost or expense which is paid to an Affiliate of Purchaser [ChanBond] or to a stakeholder of Purchaser shall require the prior approval of Seller. . . ." *Id.* at 2, 6.

As Carter and Leane got closer to consummating the sale of ChanBond, on July 31, 2015, Leane executed the Advisory Services Agreement ("ASA") between her recently created entity IPNAV, LLC (which was distinct from and not a successor to IPNG) and ChanBond. *Id.* at 3; Pls.' App. at 97 (Dkt #5). Leane signed for both entities and back-dated the agreement to April 9, 2019, to coincide with the date of the PPA. *Id.* Leane executed the agreement (for both sides) without

2

obtaining consent from CBV. Defs.' App. at 3. The first time Carter recalls seeing a copy of the ASA was May 2, 2018, which was the same day he received a termination of the ASA, in which IPNAV, LLC agreed to cancel the ASA "as if the ASA never existed and never had any force or effect." *Id*.

Accordingly, at the time the PPA was executed and continuing up to October 27, 2015 when UnifiedOnline purchased ChanBond, IPNAV, LLC and ChanBond were both owned and controlled by Leane and were thus Affiliates as defined by the PPA. Defs.' App. at 2.

On October 27, 2015, Carter and Leane executed an interest sale agreement ("ISA") by which UnifiedOnline purchased 100% of the limited liability company membership interests of ChanBond. *Id.*; Pls.' App. at 116 (Dkt #5). Under the ISA, Leane received 44,700,000 shares in UnifiedOnline and a note for $5 million. Defs.' App. at 3; Pls.' App. at 116, 119 (Dkt #5). In exchange, UnifiedOnline received 100% of the membership interests of ChanBond. *Id.* Payment of the note takes priority over ChanBond and UnifiedOnline, and thus litigation proceeds (up to the note amount) will be paid to Leane before ChanBond or UnifiedOnline can retain any share of the proceeds. Defs.' App. at 3.

Currently, there are 13 patent infringement suits by ChanBond pending in the District of Delaware against 13 separate defendants. *Id.* The Delaware defendants and their agents filed 14 separate requests for *inter partes review* ("IPR") of the three ChanBond asserted patents. *Id.* ChanBond completely defeated 13 of these IPR requests, and the remaining IPR resulted in invalidation of only some (the broadest) claims of just one of the three asserted patents. *Id.* ChanBond's claims have also survived two motions for summary judgment. *Id.* Only thereafter, for the first time, by her lawyer's demand letter dated August 29, 2020, did Leane assert that the anti-assignment provision in the ISA gave her a right to approve (or hold hostage) ChanBond's

settlements. *Id.* But ChanBond has never suggested it would assign patents to settle these cases, with or without Leane's approval. *Id.* Moreover, due to COVID-19, the first case is not set for jury trial until May 17, 2021, and the Delaware litigants are not actively negotiating. *Id.* at 3–4. So, settlement is not imminent. *Id.* at 4.

On September 29, 2020, Leane and IPNAV, LLC obtained an *ex parte* Temporary Restraining Order against Defendants in the District Court of Dallas County, Texas, 298th Judicial District, styled *Dierdre Lane, et al. v. UnifiedOnline, Inc., et al.*, Cause No. DC-20-14152. *See* ECF No. 1, Ex. 4. Plaintiffs effected service of the TRO and the state court suit on October 2, 2020. Defendants removed the case on October 9, 2020. Plaintiffs then moved to extend the TRO, which this Court allowed to provide Defendants an opportunity to respond.

## II.
## ARGUMENT & AUTHORITIES

A. <u>Plaintiffs have not shown good cause to further extend the state court's *ex parte* temporary restraining order</u>.

The state court's *ex parte* TRO should not be extended through a preliminary injunction hearing because Plaintiffs' evidence does not satisfy the Fifth Circuit's criteria for granting injunctive relief. A TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief" and requires the party seeking such relief to establish the same four elements for obtaining a preliminary injunction. *Lee v. Verizon Commc'ns Inc.,* 2012 WL 6089041, at *1 n.2 (N.D. Tex. Dec. 7, 2012).

Consequently, Plaintiffs must establish four elements to obtain the requested extension of the TRO: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm to them if the TRO is not extended, (3) that the threatened harm outweighs any damage that the TRO might cause Defendants, and (4) that the TRO will not disserve the public interest. *NTR*

*Bullion Group, LLC v. Liberty Metals Group, LLC*, 3:13-CV-3945-D, 2013 WL 5637601, at *1 (N.D. Tex. Oct. 15, 2013) (citing *Jones v. Bush,* 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) and *Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 777 F.Supp. 1349, 1353 (N.D. Tex. 1991), *aff'd,* 948 F.2d 1286 (5th Cir. 1991)). This is true even where the applicant seeks continuation of a TRO granted by a state court prior to removal. *See generally NTR Bullion,* 2013 WL 5637601, at *2 (denying emergency motion to extend TRO post-removal where prerequisites for injunctive relief not satisfied).

Yet Plaintiffs make no attempt to show good cause for an extension apart from arguing the mere fact that removal occurred before the state court held a temporary injunction hearing is sufficient. But this is not the applicable standard. While it is true that a state court-issued TRO remains in effect following removal, upon removal to this Court, the TRO became "federalized insofar as federal, rather than state, procedure governs the manner of its enforcement ***as well as supplies whatever policy justification that might support its continuance***." *Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300, 1303-304 & n.2 (5th Cir. 1988) (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423 (1974), and discussing the interplay between 28 U.S.C. § 1450 and Federal Rule of Civil Procedure 65(b) applicable to temporary restraining orders in federal court))(emphasis added).

Those considerations include whether the state-court *ex parte* TRO should have issued under federal law. *See Howell v. CitiMortgage, Inc.*, 4:16-CV-00943-O-BP, 2016 WL 6820471, at *2 (N.D. Tex. Oct. 31, 2016), *report and recommendation adopted*, 4:16-CV-943-O, 2016 WL 6804818 (N.D. Tex. Nov. 17, 2016) ("An analysis of 'good cause shown' required for an extension of a previously-obtained temporary restraining order necessitates consideration of the well-established prerequisites for preliminary injunctive relief."); *Farrow v. Citimortgage, Inc.*, 3:15-

CV-3813-L, 2016 WL 302315, at *1 (N.D. Tex. Jan. 25, 2016) (denying TRO upon independent

inquiry into 4 prerequisites for extraordinary injunctive relief, despite earlier grant of TRO by state

court prior to removal); *NTR Bullion*, 2013 WL 5637601, at *2; *see also Gonzalez v. Wells Fargo*

*Bank, N.A.*, 5:12-CV-03842-EJD, 2012 WL 3249499, at *2 (N.D. Cal. Aug. 7, 2012) ("A federal

court's determination of whether 'good cause' exists to extend a TRO must therefore be made in

view of the federal law governing injunctions. If an order issued by a state court would not be

supportable under federal law, a federal court cannot affirmatively extend it; to do so would give

the order the extra "life" prohibited by the Supreme Court in *Granny Goose Foods*.").

Plaintiffs' cited authorities do not establish otherwise.  In *Sec. & Exch. Comm'n v.*

*AriseBank*, the TRO that was extended had originally been issued by the federal district court. No.

3:18-CV-186-M, 2018 WL 10419828, at *1 (N.D. Tex. Mar. 9, 2018). Thus, the federal standard

for issuance of a preliminary injunction had already been considered and met. Similarly, the court

in *Xtria, LLC v. Int'l Ins. All., Inc.*, recognized that a TRO should continue or not based on its

merits. No. 309-CV-2228-G, 2009 WL 4756365, at *5 (N.D.Tex. Dec. 11, 2009). The court in

*Xtria* did not hold that a federal court should never consider the merits of a pre-removal state-court

TRO—only that the state court's determination was due "some deference." *Id.* at *5. Such

deference is unwarranted here, where Plaintiffs failed to give Defendants notice and an opportunity

to be heard before the TRO was issued, based on the unsubstantiated (and untrue) claim that

Defendants would rush to settle claims that have been pending for years in Delaware if given notice

of the TRO application. *See Billing Concepts, Inc. v. OCMC, Inc.*, CIVA SA05CA1084FB(NN,

2005 WL 3348940, at *2 (W.D. Tex. Nov. 14, 2005), *report and recommendation adopted*, SA-

05-CA-1084-FB(NN), 2005 WL 8156358 (W.D. Tex. Dec. 9, 2005) (denying motion to extend

TRO post-removal, where plaintiff's TRO was "tainted from the beginning by its being obtained without notice (with no sufficient reason)").

A TRO, like all preliminary injunctive relief, "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci,* 862 F.2d 1209, 1211 (5th Cir.1989). Granting a TRO should thus "be treated as the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line,* 760 F.2d 618, 621 (5th Cir.1985). As demonstrated below, Plaintiffs have not met this burden. Accordingly, the motion to extend should be denied.

B. <u>Plaintiffs failed to meet their burden to show imminent and irreparable harm</u>

Plaintiffs claim they will be irreparably injured by settlement of the Delaware cases for less than fair value. In particular, Plaintiffs allege:

> Billy Carter–[Defendants'] principal–[is incentivized] to quickly accept an Unauthorized Settlement that provide [sic] less than fair value to ChanBond, in order to allow Defendants to address the claims in the Arbitration. For instance, a settlement for less than fair value on the ChanBond Patents might still provide Unified with desperately needed funds to finally pay the long-past-due Note and defend against Plaintiffs' claims in the arbitration, motivating Unified to accept a settlement it might otherwise reject as insufficient.

Pls.' App. at 14 (Dkt #5). In other words, Plaintiffs argue they may be successful in sabotaging ChanBond's efforts to enforce its patents at fair value. There are at least three problems with Plaintiffs' argument. First, the alleged injury is fully compensable in money damages. Second, the injury posited is wholly speculative and contingent. And third, there is no reason to believe that any risk of injury is imminent, despite Plaintiffs' attempt to inflict it.

**1. Money damages would adequately compensate Plaintiffs.**

A plaintiff must be threatened with irreparable injury for a court to issue injunctive relief. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 392 (1981). "There can be no irreparable injury

where money damages would adequately compensate a plaintiff." *DFW Metro Line Servs. v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990) (citing *Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir. 1981)); *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975). Plaintiffs bear the burden of presenting evidence of irreparable injury by showing that the loss cannot be measured in money damages. *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 778 (N.D. Tex. 2012).

In this case, any damage to Plaintiffs would be measured by their claimed share of the difference between the settlements actually entered by Defendants in the Delaware cases and the value of the licenses that would have been achieved absent the alleged pressure Plaintiffs purport to be applying on Defendants to settle at a discount. This type of reasonable royalty based on a "hypothetical negotiation" is the standard means by which patents are valued in litigation, *see generally Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). Plaintiffs fail to explain why that method (with appropriate adjustments) would not suffice to determine damages in the arbitration.

Similarly, any argument that settlement of the Delaware cases will depress the value of the patents going forward is insufficient because that, too, is quantifiable and subject to money damages. *See Pruvit Ventures, Inc. v. Forevergreen Int'l LLC,* 4:15-CV-571-ALM-CAN, 2015 WL 9876952, at *3 (E.D. Tex. Dec. 23, 2015), *report and recommendation adopted*, 4:15-CV-571, 2016 WL 231160 (E.D. Tex. Jan. 19, 2016) (holding price erosion of patented product and loss of future market share subject to money damages). The argument is especially unavailing here, where Plaintiffs specifically allege that "the defendants in the ChanBond Litigations represent the universe of potential infringement claims relating to, or licensees of, the ChanBond Patents." Pls.' App. at 10 (Dkt #5). That is, Plaintiffs concede there is no untapped pool of potential licensing revenue to be realized in the future.

Indeed, the Fifth Circuit, in *Lewis v. S. S. Baune,* held that concern over an unfavorable settlement by the holder of a contingency interest in the litigation could not obtain injunctive relief barring settlement precisely because money damages provide an adequate remedy. 534 F.2d 1115, 1122 (5th Cir. 1976). In *Lewis*, a law firm had contingency fee contracts for five wrongful death lawsuits against multiple defendants. *Id.* In the course of the lawsuit, one of the defendants attempted to negotiate a settlement with the plaintiffs without including the attorneys, who then obtained an injunction preventing settlement between the parties without their approval. *Id.* On appeal, the Fifth Circuit noted that "[a] settlement reached by parties, even sans attorneys, would not create irreparable injury per se," even where the attorneys feared their clients "might succumb to the offers of appellants and settle their suits for only a small percentage of their actual worth." *Id.* at 1122–23. As is the case with Plaintiffs' claimed interest here, the Fifth Circuit found that there "is no irreparable injury to [the] attorneys . . . , since they would have an adequate remedy at law to obtain any fees due them were the parties here to settle." *Id.*

*United States ex rel. Vanderlan v. Jackson HMA, LLC* is similarly analogous. 3:15-CV-767-DPJ-FKB, 2018 WL 4401712, (S.D. Miss. Sept. 14, 2018). In that case, Dr. Vanderlan brought a *qui tam* action against Jackson HMA, a medical center, for alleged violations of the Emergency Medical Treatment and Labor Act (EMTALA). *Id.* at *3. Dr. Vanderlan sought a temporary restraining order because he was "afraid the Government may settle the EMTALA claims against Jackson HMA" and therefore, diminish or extinguish his recovery. *Id.* at *2. In denying the request for a temporary restraining order, the court noted that the fact that the government may settle claims which may reduce his recovery does not meet the irreparable harm requirement. *Id.* The same principle precludes injunctive relief in this case.

### 2.    Plaintiffs' fear of injury is purely speculative

Moreover, to obtain a TRO, Plaintiffs must show—not just that potential harm is irreparable—but that such irreparable harm is ***likely***. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22, 129 S. Ct. 365, 375, 172 L. Ed. 2d 249 (2008) ("A court may only issue injunctive relief if irreparable harm is 'likely'; granting an injunction based on a mere possibility of remote injury is insufficient, even if a [movant] has shown a nearly certain likelihood of success.")."This is a heavy burden to overcome, and ***mere speculative injury will not suffice***." *Brink's Inc. v. Patrick*, 3:14-CV-775-B, 2014 WL 2931824, at *6 (N.D. Tex. June 27, 2014) (emphasis added); *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir.1985) ("Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."); *Pruvit*, 2015 WL 9876952, at *3 (denying preliminary injunction because claim that defendant's conduct might cause possible price erosion of their products, reputational harm, reduction in shareholder value, loss of market share, and future lost profits was too speculative to meet the "likely" requirement for irreparable injury).

Plaintiffs' assertion that the Delaware cases are on the precipice of settling for less than fair value is completely unsupported, speculative, and factually incorrect. Plaintiffs are not involved in the Delaware cases, Leane has not participated in settlement discussions since 2016, and neither Plaintiff has provided services to ChanBond since it was sold to UnifiedOnline in 2015. As such, Plaintiffs have no actual knowledge regarding the likelihood of settlement in any case, let alone knowledge of what settlement amount might be accepted. Instead, Plaintiffs allege that "[b]ased on Ms. Leane's extensive experience in patent litigation, settlement of the ChanBond Litigations is imminent." Pls.' App. at 10 (Dkt #5). Plaintiffs arrive at this conclusion because "this is the time-frame in which she would expect a settlement to occur," but then walk back from even

that assertion by stating, "and a settlement could happen any day and at any time. . . . she cannot say whether that means within a week or a month or a few months, but it could happen at any time." *Id.* Plaintiffs' entire injury case relies on pure speculation, and that is simply not enough. *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 778 (N.D. Tex. 2012) (denying injunction where claim of irreparable injury based on belief about defendant's "ability to inflict" harm that "potentially will" reduce future revenue" that is "perhaps" unrecoverable); *Lewis*, 534 F.2d at 1122; *Pruvit Ventures*, 2015 WL 9876952, at *3 (collecting cases).

### 3.   Plaintiffs have not demonstrated that harm is imminent

Even if the harm alleged were not plainly quantifiable as is the case here, injunctive relief is still unwarranted because Plaintiffs have not shown that such harm is imminent. Defendants deny that they are close to settling and, Plaintiffs' petition admits that they have no idea when a settlement may occur. Defs.' App. at 4; Pls.' App. at 10 (Dkt #5) (noting settlement may not occur for weeks or months). Plaintiffs posit settlement is more likely as trial approaches, but at the time Plaintiffs filed their state-court petition, none of the Delaware cases was even set for trial. Presently, only one of the cases is set for trial on May 17, 2021. Defs.' App. at 3.

Nor do Defendants' finances establish an incentive to settle for a song. The note, which Plaintiffs contend might cause ChanBond to rush a settlement, is structured to automatically extend with an increase in the principal amount if not paid at maturity, and does not grant any security interest to be foreclosed in the event of nonpayment. Pls.' App. at 140 (Dkt #5). Further, Plaintiffs have no competent evidence that UnifiedOnline or ChanBond are unable to continue the Delaware litigation. To the contrary, Plaintiffs acknowledge that Defendants have secured litigation funding and after offer no evidence that continuing the Delaware cases puts that funding at risk. *Id.* at 13,

23. Plaintiffs bear the burden of demonstrating risk of imminent irreparable injury. Because they cannot do so, the TRO should be dissolved.

C. <u>Plaintiffs are unlikely to succeed on the merits.</u>

Plaintiffs' application for an anti-settlement TRO is premised entirely on the novel argument that the ISA's anti-assignment provision precludes Defendants from licensing the ChanBond patents.[1] The four corners of the ISA confirm, however, that the anti-assignment provision in the "Miscellaneous" section of the ISA is simply not an anti-license or anti-settlement provision.

1. <u>"Miscellaneous" Section 8.3 of the ISA</u>

In her Petition, Leane argues she should regain ownership in ChanBond because the company has supposedly been violating Section 8.3 since it was entered in 2015. Pls.' App. at 12 (Dkt #5). She argues in the alternative that this same Section 8.3 means ChanBond should not be able to enter even non-exclusive licenses in settlement of its patent enforcement litigation without her written consent. *See id*.

Such an onerous requirement is nowhere to be found in Section 8.3. In relevant part, Section 8.3 provides:

> <u>Limitations on Assignment</u>.  Except as expressly permitted in this Section, none of Purchaser [UnifiedOnline] or ChanBond may grant or assign any rights or delegate any duties under this Agreement to any Third Party (including by way of a "change in control") or may sell, transfer, or spin-off any of the interests in ChanBond or any of its material assets without the prior written consent of Seller [Leane].

Pls.' App. at 126 (Dkt #5). Thus, without Leane's consent, ChanBond and UnifiedOnline may not "sell, transfer, or spin-off" two restricted categories: (1) any of "the interests in ChanBond"; or (2) any of ChanBond's "material assets." As explained below, both quoted phrases have clear

---

[1] Plaintiffs' expressly disclaim that their TRO application is premised on any other alleged breaches of the ISA. Pls.' App. at 9 (Dkt #5).

meanings throughout the ISA; and the anti-assignment provision as a whole is unambiguous and does not impact ChanBond's ability to monetize its patents through litigation and non-exclusive patent licenses without interference from Leane.

A non-exclusive license of a patent is qualitatively different than a sale or assignment of a patent. It is well established, for example that, "if a patentee transfers '***all substantial rights***' in the patent to an assignee, 'this amounts to an assignment or a transfer of title, which confers constitutional standing on the assignee to sue for infringement in its own name alone.'" *Clouding IP, LLC v. Google Inc.*, 61 F. Supp. 3d 421, 429 (D. Del. 2014) (emphasis in original). "By contrast, a bare licensee, i.e., a party with ***only a covenant from the patentee that it will not be sued*** for infringing the patent rights, lacks standing to sue third parties for infringement of the patent." *Id.* at 430 (emphasis in original). To summarize, a patent assignment is a transfer of the patent. And a non-exclusive license simply isn't that; rather, it is a promise not to sue for infringement. This contrast between an assignment and a license brings into sharper focus the two restricted categories of Section 8.3.

*Category 1: "the interests in ChanBond"*

This first restricted category refers to the membership interests in ChanBond, a Delaware limited liability company. The ISA's very first "Whereas" clause, for example, explains that Leane owned "100% of the limited liability company membership interests (the "**Interests**") of **ChanBond**." Section 4.1 explains more specifically that Leane owned "all of the membership interests in ChanBond" and that, after closing, UO would own "good and marketable title to ChanBond." Pls.' App. at 120 (Dkt #5). Thus, by virtue of Section 8.3's first restricted category, ChanBond and UnifiedOnline were restricted from transferring any of the ownership of ChanBond—i.e., any membership interests.

*Category 2: ChanBond's "material assets"*

13

There is no need to guess about the scope of the second category, either. In Section 5.1(e) of the ISA, Chanbond (for which Leane executed the agreement) represented and warranted: "Other than the assignments related to the Contracts, ChanBond has no material assets." *Id.* at 121. The term "Contracts," in turn, is defined in Definition 1.3 as the contracts listed in Schedule 1.3, which includes the PPA with CBV; a litigation funding agreement with Bentham; and a retention agreement with a patent litigation law firm, among others. *Id.* at 116, 130. Thus, by virtue of Section 8.3's second restricted category, the companies were restricted from selling or transferring these contracts, to the extent they were material.

At no time has ChanBond or UnifiedOnline violated or threatened to violate the anti-assignment provision of Section 8.3. They have not transferred any of the interests in ChanBond to anyone, nor threatened to do so. UnifiedOnline remains the 100% owner of the membership interests in ChanBond. Nor have these companies sold or transferred any of the Contracts, including the PPA, or threatened to do so. ChanBond continues as the 100% owner of the patents it purchased through the PPA, which is why ChanBond is the sole plaintiff with standing in the 13 patent infringement cases pending in Delaware.

When Leane's attempted transformation of the ISA is disregarded, the structure of the agreement as a whole makes good sense. Leane sold ChanBond to UnifiedOnline in exchange for the $5 million note and 44.7 million shares of UnifiedOnline stock. Leane's investment is adequately protected because (a) she gets paid under the Note before ChanBond and UnifiedOnline; (b) ChanBond is restricted from assigning its patents without Leane's consent; (c) UnifiedOnline is restricted from transferring ownership of ChanBond to a third party without Leane's consent; and (d) ChanBond is free to use its best judgment to litigate and monetize the

patents through standard licensing activity, which benefits Leane first and ChanBond/ UnifiedOnline only after her.

In order to obtain injunctive relief, Plaintiffs must prove there is a substantial likelihood that they will succeed on the merits. *Complete Fire Prot., Inc. v. Kolman*, 19-CV-1134-WJM-STV, 2019 WL 1755280, at *2 (D. Colo. Apr. 19, 2019). But Plaintiffs' attempt to rewrite the anti-assignment provision to preclude patent licensing or settlement of the Delaware lawsuits is so contrary to the plain language of the parties' agreements and novel as to preclude injunctive relief. *Cf. Granato v. Am. Cotton Shippers Ass'n*, 5:12-CV-184-C, 2012 WL 12892732, at *2 (N.D. Tex. Oct. 12, 2012) (denying TRO application and finding "reason for pause before treading into somewhat novel arguments of law"). This is especially so where the general anti-assignment clause conflicts directly with the express grant of "sole authority" over ChanBond's business to the Defendants in § 2.2.2. Pls.' App. at (Dkt #5) (granting William Carter "sole and exclusive authority over the business of ChanBond").

    D.  <u>Any potential injury to Plaintiffs is clearly outweighed by the harm to the Defendants</u>.

Plaintiffs argue their alleged irreparable harm outweighs the threatened harm to the Defendants because "the sole harm to Defendants will be the requirement that they comply with their [alleged] contract obligations, and their ability to [intentionally] sacrifice the value of the ChanBond Patents . . . in service of defending the arbitration." Pls.' App. at 14 (Dkt #5). Interference with ChanBond's ability to control its own patent litigation settlements, if any, would be harsh, unwarranted, and contrary to public policy favoring settlements. That is why such relief is rarely, if ever, granted.

> Unquestionably the settlement of litigation and the compromise of disputed claims are favored by the courts . . . . Courts have consistently held that parties have a right to settle or compromise their litigation [even] without the knowledge or consent of their counsel. . . . Clauses in a contract between attorney and client which prohibit

15

a settlement by the client without his attorney's consent are generally held to be unenforceable as against public policy . . . . Our research has revealed no case in which a court enjoined a settlement between the parties of a disputed claim. There have been cases where such an injunction was sought but, for various reasons, was denied, *see MacLeod v. Vest Transportation Company*, N.D.Miss.1964, 235 F.Supp. 369; *Raabe v. Universe Tankships*, S.D.N.Y.1966, 263 F. Supp. 786; *Karuse v. Hartford Accident & Indemnity Co.*, 1951, 331 Mich. 19, 49 N.W.2d 41.

*Lewis*, 534 F.2d at 1122. Because Plaintiffs' speculative assertions of irreparable harm are outweighed by Defendants' defined and recognized right to settle their lawsuits, Plaintiffs are not entitled to continued injunctive relief.

E. Granting the TRO will not be in the public's best interest as there is a strong public policy in favor of settlement.

Plaintiffs baldly assert that "[t]he requested injunction will not in any way undermine the public interest . . . .", Pls.' App. at 15 (Dkt. # 5), without any consideration for the "strong public interest in favor of settlements in various contexts." *Jackson HMA, LLC*, 2018 WL 4401712, at *3 (citing *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826 (5th Cir. 1975); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation."); *see also Bradley v. Sebelius*, 621 F.3d 1330, 1339 (11th Cir. 2010) ("Historically, there is a strong public interest in the expeditious resolution of lawsuits through settlement."). Nor do Plaintiffs address the comity concerns raised by asking this Court to impose restrictions affecting long-pending proceedings in a sister district court. The requested relief could effectively require the Defendants to continue ChanBond's litigation even if it were against ChanBond's best judgment, and to burden a sister court's docket by trying a case that might otherwise have been resolved. Public policy strongly disfavors continuation of the TRO or the grant of further injunctive relief.

**III.**
## CONCLUSION

A TRO is an extraordinary remedy that should be granted only where the plaintiff meets the high and cumulative burden of establishing all the elements necessary for injunctive relief. Plaintiffs have not met that burden, first because their entire argument is grounded in a radical departure from the plain meaning of the ISA; second because the injury they posit—even if it were not wholly speculative—is neither irreparable nor imminent; and third because, by impeding Defendants' ability to settle, the TRO invades the well-established right of litigants to resolve disputes through settlement, undermines the public policy in favor of settlements, and impedes proceedings in a sister court.  For all of these reasons, Defendants respectfully request that this Court deny Plaintiffs' Emergency Motion to Extend Temporary Restraining order and award Defendants all other relief, in both law and equity, to which they are justly entitled.

Respectfully submitted,

CARTER ARNETT PLLC

By:   */s/ Linda R. Stahl*
     E. Leon Carter
     Texas Bar No. 03914300
     lcarter@carterarnett.com
     Courtney Barksdale Perez
     Texas Bar No. 24061135
     cperez@carterarnett.com
     Linda R. Stahl
     Texas Bar No. 00798525
     lstahl@carterarnett.com
     Scott W. Breedlove
     Texas Bar No. 00790361
     sbreedlove@carterarnett.com
     Nathan Cox *(admission pending)*
     Texas Bar No. 24105751
     ncox@carterarnett.com


     8150 N. Central Expressway, Suite 500
     Dallas, Texas 75206
     Telephone: (214) 550-8188
     Facsimile: (214) 550-8185

ATTORNEYS FOR DEFENDANTS
UNIFIEDONLINE, INC. and CHANBOND, LLC

### CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing document has been filed with the Clerk of Court using the Northern District of Texas CM/ECF System for filing and service on all counsel of record, in accordance with FED. R. CIV. P. 5(b)(2)(E), on October 13, 2020, as well as service by electronic mail.

     **BY E-SERVICE AND/OR ELECTRONIC MAIL**


     */s/ Linda R. Stahl*
     Linda R. Stahl

18