IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEIRDRE LEANE and IPNAV, LLC, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:20-cv-3097 |
| UNIFIEDONLINE, INC. and CHANBOND, LLC, | § § § § | |
| Defendants. | § | |

**DEFENDANTS UNIFIEDONLINE, INC. AND CHANBOND, LLC'S SUR-REPLY IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO EXTEND TEMPORARY RESTRAINING ORDER**

1

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT AND AUTHORITIES ............................................................................. 1

   1.   New evidence confirms Plaintiffs Leane and her company IPNAV are attempting to "destroy" ChanBond just as she promised she'd do ................................................................................................................................. 1

   2.   Plaintiffs use of self-serving parol evidence cannot create a new contractual ambiguity where none has existed for five years, much less demonstrate a likelihood of success on the merits ........................................... 4

   3.   Plaintiffs' speculative assertions do not create evidence of an irreparable injury necessary to grant injunctive relief ............................................. 9

# **INDEX OF AUTHORITIES**

*A & A Global Industries, Inc. v. Wolfe*, No. 3:01-CV-1515-D, 2001 WL 1388020
(N.D. Tex. Nov. 6, 2001) ................................................................................................. 10

*Baker Hughes Inc. v. Nalco Co.,* 676 F. Supp. 2d 547 (S.D. Tex. 2009), *aff'd*, 374
Fed. Appx. 979 (Fed. Cir. 2010) ..................................................................................... 10

*Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090 (Fed. Cir. 1998) .......................... 4

*Expo Group, Inc. v. Castillo*, 3:19-CV-1356-G, 2019 WL 4671511 (N.D. Tex. Sept.
25, 2019) .......................................................................................................................... 10

*Freytag v. C.I.R.,* 501 U.S. 868 (1991) ............................................................................... 6

*ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586 (5th Cir. 2003) ........ 10

*Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445 (Tex. 2015) .................................... 4

*Lewis v. Nationstar Mortg.*, 5 F. Supp. 3d 890 (E.D. Mich. 2014) ................................... 4

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517
(Tex. 1995) ........................................................................................................................ 4

*Rapanos v. United States,* 547 U.S. 715 (2006) ................................................................. 6

*Rehab Choice Inc. v. CLC Healthcare, Inc*., CIV.A. 4:07-CV-314-Y, 2007 WL
1944344 (N.D. Tex. July 2, 2007) ................................................................................... 11

*Summit 6, LLC v. Samsung Elecs. Co., Ltd*., 802 F.3d 1283 (Fed. Cir. 2015) ................ 10

*Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659 (E.D. Pa. 2018) ......................... 7

*Thomas v. Reeves*, 961 F.3d 800 (5th Cir. 2020) .............................................................. 7

*United States ex rel. Vaughn v. United Biologics, LLC*, 907 F.3d 187 (5th Cir. 2018)
 ........................................................................................................................................... 7

*Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154 (Tex. 1951) ............................ 4


Bryan A. Garner, *The RedBook: A Manual On Legal Style* § 10.39 (3d. ed. 2013) .... 5–6

Antonin Scalia & Bryan A. Garner, *Reading Law* (2012) ............................................ 6–8

Defendants file this Sur-Reply in Opposition to Plaintiffs' Emergency Motion to Extend Temporary Restraining Order (the "Motion").

# I.
# INTRODUCTION

Now that Plaintiffs' *ex parte* run is over, they are forced finally to address the merits. Plaintiffs' Reply and 179-page Reply Appendix confirm that Plaintiffs' underlying case is grounded in a completely new reading of the ISA that is wrong as a matter of law. Indeed, it is an awkward construction of miscellaneous Section 8.3 that (a) Leane apparently hadn't been able to think up for the last five years, (b) would violate multiple canons of construction applied consistently by the Fifth Circuit Court of Appeals and other federal courts, and (c) would turn an anti-assignment clause into an onerous anti-license clause preventing ChanBond from performing its core function without interference from the company's former owner, Leane, who vowed to "destroy" ChanBond earlier this year. Moreover, Plaintiffs rely on unrealistic speculation to identify a purported harm, which would be quantifiable anyway.

# II.
# ARGUMENT AND AUTHORITIES

1. *New evidence confirms Plaintiffs Leane and her company IPNAV are attempting to "destroy" ChanBond, just as she promised she'd do.*

Leane boldly claims in her Reply that giving her complete veto power over ChanBond's patent licensing business would be fine. She assures the Court that she is "an experienced and savvy patent monetization professional" who can be trusted—that Defendants would "simply" need to obtain Leane's consent and that "there is no reason to expect she would disapprove a reasonable settlement." Pls.' Reply at 15 (Dkt #18). But this is the same person who wrote to William Carter (sole manager of ChanBond pursuant to ISA § 2.2.2) earlier this year—after getting confirmation that ChanBond and Carter would not participate in her fraudulent attempts to extract

a massive 22%-of-gross interest in the Delaware patent litigation—cursed him and promised, "I'll destroy CB" ("CB" refers to Defendant ChanBond). Pls.' Reply App. at 176 (Dkt# 18). Rarely are threats in civil cases so explicit. Rarely are they so brazenly attempted, using the court system no less.

Leane's angry curses and threat were anything but "professional" and provide "reason to expect" she is, to put it mildly, unconcerned with the best interests of ChanBond. She is already well-positioned to be paid millions of dollars if and when the ChanBond patents begin to monetize. Indeed, according to her Promissory Note, her take increases by $25,000 *per month* starting tomorrow, and it is paid before ChanBond and UnifiedOnline get to keep a dime. *See id.* at 140. Yet, ever since ChanBond, without Leane at the helm, has survived a massive five-year assault on its patents from the 13 largest cable companies in the United States and has become well positioned to enforce its patents against these infringers, Leane has busied her legal team to find creative ways to extract substantially more revenue for herself, at ChanBond's further expense.

In addition to her court filings in this case and the related arbitration filing, Leane has sued ChanBond's patent litigation attorneys for malpractice, insisting that they were her personal attorneys, too. Her September 22, 2020 complaint in New York state court blames those attorneys for allegedly encouraging her to sign the Termination Agreement in 2018 that nullified the unauthorized, self-serving, backdated ASA (*see* Dkt# 11 at 2–3) she executed in 2015 on behalf of both parties (IPNAV and ChanBond) in an attempt to obtain a right to 22% of gross proceeds. In that complaint, Leane claims that "via the ASA" in 2015, her company Plaintiff IPNAV "became an assignee of an interest in the ChanBond Patents." Pls.' Malpractice Compl. at 7, Defs.' Sur-Reply App. at 27.

That same month, Leane also had her lawyers send email correspondence to the cable-company defendants in the Delaware patent litigation to tell them she is now claiming the patents-in-suit could not be licensed without her authorization. All 13 defendants quickly filed a motion this month in the Delaware federal court seeking to re-open fact discovery to investigate standing. These defendants—*ChanBond's adversaries*—explained in their motion:

> Prior to this new correspondence, Ms. Leane did not appear to assert the right to control licensing of the asserted patents. In fact, Ms. Leane previously testified at her deposition that she has transferred all rights and interests to the asserted patents, termed the "ChanBond Patents" below, to UnifiedOnline pursuant to the October 2015 [ISA] Agreement.
> . . .
> ***The email from Mr. Cohen, who serves as Ms. Leane's attorney, reflects a change in Ms. Leane's understanding of her rights in the asserted patents from the testimony given during fact discovery.***
>
> In particular, ***the September 2020 Email calls into question whether there exists standing sufficient to proceed to trial*** with the current parties. An entity with fewer than all substantial rights fails to meet the definition of a "patentee," and therefore cannot sue on its own.

Delaware Defs.' Mot. to Reopen Disc. at 3 & 5, Defs.' Sur-Reply App. at 7, 9 (emphasis added).

Thus, Leane's statements through counsel suggest she is now asserting both she and her company have rights in the ChanBond patents, despite ChanBond's five-year litigation odyssey as the sole plaintiff in the Delaware patent litigation. Apparently, when Leane wrote her threat, "I'll destroy CB [ChanBond]," it previewed patent litigation's version of a suicide bombing.

ChanBond, of course, disputes both Leane's new position and the Delaware defendants' related standing argument. As noted in their Delaware Motion, ChanBond explained to the Delaware defendants that Leane's new interpretation of the ISA is "objectively inaccurate in view of the agreement itself and Ms. Leane's extensive deposition testimony on the subject." *Id*. at 7–8. Indeed it is.

3

2. *Plaintiffs' use of self-serving parol evidence cannot create a new contractual ambiguity where none has existed for five years, much less demonstrate a likelihood of success on the merits.*

The Delaware defendants are exactly right that Leane's new argument "reflects a change in Ms. Leane's understanding of her rights in the asserted patents." Defs.' Sur-Reply App. at 9. Indeed, Leane now argues UnifiedOnline's transfer of an interest in patent recovery proceeds to its affiliate "without Leane's prior written consent" was a breach of the anti-assignment provision of ISA's Section 8.3. Pls.' Reply at 9–10 (Dkt# 18). Yet that transfer was a public transaction *five years ago*. She even supports the new accusation with her declaration's Exhibit 5, UnifiedOnline's 10-Q for the quarterly period ended December 31, **2015**, admitting this was one of the "documents in [her] possession." Leane Decl. ¶ 15, Pls.' Reply App. at 08 (Dkt# 18). To turn this aged transaction into a breach, Leane now argues, buttressed by her own self-serving declaration, for a strained, unnatural reading of ISA's Section 8.3 that would effectively give her veto power over ChanBond's business.[1]

Section 8.3 is entitled "Limitations on Assignment" and provides that, absent Leane's approval, ChanBond may not "sell, transfer, or spin-off" two listed items. These items are described with a consistent structure, both beginning with the modifier "any of": (1) "any of ***the*** interests in ChanBond" or (2) "any of its material assets" (emphasis added). To transform the limitation on "assignment" into a limitation on a mere non-exclusive patent license[2], Plaintiffs

---

[1] In Texas, interpretation of a contract is not a fact issue to be resolved by extrinsic evidence unless applying the pertinent rules of construction leaves a genuine uncertainty as to which of two meanings is proper, *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951), and evidence of intent is not admissible to create the ambiguity, *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex. 1995). A party's interpretation of its own contract, such as Leane's declaration, "is parol evidence and cannot be used to create ambiguity or show motive." *Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 453 (Tex. 2015).

[2] The Federal Circuit has explained that, in a license, "title remains with the owner of the patent." *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1993 (Fed. Cir. 1998). So, a mere license

4

ignore this structure, as well as (a) the article "the"; (b) the Series-Qualifier Canon; (c) the Nearest-Reasonable-Referent Canon; and (d) common sense.

The list in Section 8.3 does not refer to "any ~~of the~~ interest~~s~~ in ChanBond." But Plaintiffs act as if it does, ignoring the article "the" preceding "interests in ChanBond," and even misquoting the provision to lose that pesky word. *See* Pls.' Reply at 10 (Dkt# 18) ("Thus, the only relevant question is whether licensing the patents without Ms. Leane's consent would 'transfer any interest' [sic] in ChanBond's material assets."). The use of the article "the" (missing from Plaintiffs' misquote) indicates an antecedent basis for "interests." That is, "the" is used as a definite article to identify a specific noun known to the reader. Bryan A. Garner, *The RedBook: A Manual On Legal Style* § 10.39 (3d. ed. 2013); *Lewis v. Nationstar Mortg.*, 5 F. Supp. 3d 890, 900 (E.D. Mich. 2014) (explaining that the "definite article 'the' particularizes the subject which it precedes and is [a] word of limitation as opposed to [the] indefinite or generalizing force [of] 'a' or 'an'") (brackets in original). This is because the specific plural noun—namely, "interests in ChanBond"—are the focus of the entire ISA: they are the membership interests in ChanBond, LLC, and Plaintiffs have now admitted this. Pls.' Reply at 7 (Dkt# 18) ("As Defendants correctly note, the 'interests in ChanBond' are the membership interests that Leane was selling to Unified via the ISA.").[3]

Therefore, the modifier "the interests in" cannot be forced to carryover to modify the second item in the list, "any of its material assets." Referring to "the" interests in "any of its

---

to the patents would not be a "transfer" or "sale" of any ChanBond asset because no asset would be transferred; *i.e.*, the patents would remain with ChanBond.

[3] Plaintiffs go on to argue that the Court should ignore this undisputed fact because the clause does not use the capitalized term "Interests." Reply at 7 (Dkt# 18). Two problems: First, Plaintiffs' argument would prove too much, because the capitalized term "Interests" is not used in the ISA at all after it is defined in the very first "Whereas" clause. Second, Plaintiffs offer no alternative to the common-sense conclusion that the phrase "the interests in ChanBond" does indeed refer to "the" membership interests in the company.

material assets" would be both awkward and grammatically incorrect because there is no antecedent basis for known "interests" in "any of its material assets." Instead, one would refer to "any interest in" the assets, were that intended. But it was not intended, which is the reason Plaintiffs' Reply repeatedly omits the "the" article (and changes plural "interests" to singular).[4]

Plaintiffs' flawed reasoning has been rejected at the highest level. *See Rapanos v. United States,* 547 U.S. 715, 732 (2006) ("**The use of the definite article ('the') and the plural number** ('waters') shows plainly that § 1362(7) does not refer to water in general.") (emphasis added); *Freytag v. C.I.R.,* 501 U.S. 868, 901–02 (1991) (Scalia, J., concurring) (highlighting the "definite article 'the'" and noting the Appointments Clause refers to "*the* Courts of Law"; concluding that "this does not mean *any* 'Cour[t] of Law'") (emphasis and brackets in original).

Plaintiffs attempt to distort the agreement by reading far too much into the absence of a comma. Plaintiffs argue, "Grammatically, terms in a list joined by the word 'or' are considered independent only when they are set off with a comma." Pls.' Reply at 6 (Dkt# 18). Yet the four cases they cite, *id*. at 6-7, are inapposite, having nothing to do with determining whether a modifier ("any of the interests in") preceding a list's first item ("ChanBond") should be carried over to the list's second item ("any of its material assets"). The applicable canon of textual interpretation is actually the Series-Qualifier Canon, and it is not defined by the presence or absence of a comma. Antonin Scalia & Bryan A. Garner, *Reading Law* at 147 (2012); Garner, *The Redbook* § 10.50.

---

[4] *See, e.g.*, Pls.' Reply at 7 (Dkt# 18) ("The language of the Anti-Assignment Provision thus barred Defendants from transferring not only ChanBond's material assets themselves, but ***any interest*** in those material assets.") (emphasis in original); *id*. at 8 ("Thus, the Anti-Assignment Provision barred Defendants from transferring ***any interest*** in any of ChanBond's rights under or obtained via the Contracts . . . ."); *id*. at 10 ("Thus, the only relevant question is whether licensing the patents without Ms. Leane's consent would 'transfer ***any interest***' in ChanBond's material assets."); *id*. at 12 (quoting a 1962 Sixth Circuit statement, "The term '***any interest***' must be defined in the broadest sense") (emphases added). The modifier in 8.3 is "any of ***the*** interest**s** in," not "***any*** interest in."

This canon demonstrates that "any of the interests in" does not carryover to modify "any of its material assets." The Series-Qualifier Canon holds that "a prepositive or postpositive modifier normally applies to the entire series" when there is "a straightforward, parallel construction that involves all nouns or verbs in a series." *Thomas v. Reeves*, 961 F.3d 800, 812 (5th Cir. 2020) (quoting Scalia & Garner, at 147). But this carryover modification "applies only when context clearly establishes that it is intended," which is "usually the case when the nouns and verbs are listed 'without any intervening modifiers.'" *United States ex rel. Vaughn v. United Biologics, LLC*, 907 F.3d 187, 195 (5th Cir. 2018) (reciting "unreasonable searches and seizures" as an example). Thus, the determiner exception holds that if there is "a determiner (*a, the, some, etc.*) repeated before the second element," then there is no carryover modification because the purpose of having a determiner is to set the second phrase apart. Scalia & Garner, at 148.

In *Vaughn*, the disputed language provided the action "may be dismissed only if the court and the Attorney General give **written** consent to the dismissal and their reasons for consenting," and the Appellant argued "that the modifier 'written' applies both to 'consent' and to 'reasons for consenting.'" 907 F.3d at 195. Citing the exception to the Series-Qualifier Canon, however, the Fifth Circuit held that "the possessive determiner, 'their,' is attached to the second noun in the list, 'reasons.' This makes clear that 'written' was not intended to modify both 'consent' and 'reasons.'" *Id*. Likewise, in the ISA's Section 8.3, there are not just one, but at least two determiners prior to the second item in the list: the possessive determiner "its" and the quantifying determiner "any."

Indeed, the use of "any" is a classic method to break the series and prevent a modifier from carrying over. *Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 672–73 (E.D. Pa. 2018) provides an example similar to the language in the ISA. The disputed language in *Teva* defined

7

loss as "any reasonable cost to any victim . . . and any revenue lost, cost incurred, or other consequential damages incurred *because of interruption of service*." *Id*. at 672 (emphasis added). In this case, the modifier was postpositive, meaning it was "positioned after what it modifies," and the same rule applies: "A postpositive modifier may not apply to multiple series when the statutory language also includes a determiner—a modifying word that introduces and provides context to the word or words it modifies." *Id.* The court explained, "When a determiner, such as 'any,' is repeated at the beginning of the second series, the syntax suggests that the postpositive modifier does not operate to modify both series." *Id*. It then concluded:

> Here, the definition of loss is comprised of two series, each beginning with the determiner "any." In other words, appearing a second time in the definition, "any" signals the beginning of a second series. The two series are separated by "and," and each is introduced by "any." . . .
>
> The postpositive modifier "because of interruption of service" appears at the end of the second series. The syntax suggests that it modifies only the second series because the determiner "any" signals the start of the second series, which begins after the word "and."

*Id*. at 673 (citing Scalia & Garner, at 148–50). Thus, the Series-Qualifier Canon demonstrates Plaintiffs' new interpretation holds no grammatical water.

The Nearest Reasonable-Referent Canon likewise supports Defendants' common-sense interpretation of Section 8.3. When the Series-Qualifier Canon doesn't support carryover, as is the case here, then "the nearest reasonable referent canon applies, and "a prepositive or postpositive modifier normally applies only to the nearest reasonable antecedent." Scalia & Garner, at 152. Thus, the modifier "any of the interests in" applies only to the nearest reasonable antecedent—in this case, "ChanBond." It does not apply to the more distant phrase, "any of its material assets."

At bottom, Plaintiffs' recipe to rewrite the anti-assignment provision is:

1. take a list including two "any of" clauses, but ignore the parallel structure;

8

2. copy a known term—"any of the interests in," referring to "the" membership interests—out of the first clause;

3. rewrite the known term to eliminate the revealing article "the," and change the noun from plural to singular;

4. carry the rewritten term over to the second "any of" clause, where the original term would have lost its meaning (i.e., "the" membership interests are not in "any of its material assets"); and

5. insert the rewritten term at the beginning of the second clause, to destroy the parallel "any of" structure and change the meaning, as illustrated:



*Illustration: Plaintiffs' Re-Imagining of ISA Section 8.3*

Plaintiffs' grammatical gymnastics fall short, unable to overcome standard canons of construction and the unambiguous meaning of "the interests" in Section 8.3. Thus, Plaintiffs cannot establish any likelihood of success on the merits of their claim for relief—relief that would allow Leane to "destroy" ChanBond by gaining veto power over its core business: ***licensing*** infringers of its patents in exchange for reasonable compensation.

3. *Plaintiffs' speculative assertions do not create evidence of an irreparable injury necessary to grant injunctive relief.*

Leane claims she will suffer irreparable harm because (1) her damages are not easily quantified; and (2) she does not believe Defendants can satisfy a future judgment *if* her reading of the agreements is correct, *and if* her termination of the ASA is deemed invalid, *and if* ChanBond settles for an amount that leaves insufficient funds after senior interests are paid. Neither argument supports the grant of injunctive relief in this case.

9

Leane offers no compelling reason why her damages cannot be calculated. Under her own theory of recovery, she is entitled to 22% of litigation proceeds to ChanBond and the principal amount of the note. Her damages (were she to prevail in arbitration) would be determined from the plainly calculable note amount plus her alleged share of the difference between what ChanBond settles for and her claimed more reasonable royalty. That reasonable royalties are not an exact science does not mean they are not compensable in money damages. Rather, numerous methodologies for reliably determining the royalty are available, based upon the particular facts of the case. *See, e.g., Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). Leane offers no explanation as to why these methodologies are inadequate here.[5]

Leane's cited authorities do not demonstrate otherwise. *Expo Group, Inc. v. Castillo*, 3:19-CV-1356-G, 2019 WL 4671511, at *1 (N.D. Tex. Sept. 25, 2019), concerns breach of a noncompetition agreement, damages from which this Court has recognized are "the epitome of irreparable injury." *A & A Global Industries, Inc. v. Wolfe*, No. 3:01-CV-1515-D, 2001 WL 1388020, at *5 (N.D. Tex. Nov. 6, 2001). Similarly, *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586 (5th Cir. 2003), concerned trademark dilution and thus the determination of what portion of future sales could be attributed to intangible factors such as the goodwill associated with a trademark imbued with secondary meaning. Because the damages here are not to intangible goods and are the kind commonly calculated in patent litigation, Leane's cited cases do not apply.

Leane's fallback position is that her injury is irreparable because she may not be able to collect on some future arbitration award. Leane's fears of nonrecovery are not well-founded. As

---

[5] Tellingly, there is no claim for injunctive relief in the Delaware cases, nor would there be. That remedy is typically limited to circumstances where the plaintiff and the alleged infringer are direct competitors. *See Baker Hughes Inc. v. Nalco Co.,* 676 F. Supp. 2d 547, 553–54 (S.D. Tex. 2009), *aff'd*, 374 Fed. Appx. 979 (Fed. Cir. 2010).

an initial matter, payment on the note takes precedence over any recovery by ChanBond, UnifiedOnline, and UO! IP of NC, LLC. Thus, once attorneys and litigation funders are paid, she is in line for payment ahead of Defendants. Even the "below value" settlement amounts indicated in Leane's submission would ensure the note is paid. Similarly, it is completely speculative that ChanBond will be unable to pay an arbitration award. *See Rehab Choice Inc. v. CLC Healthcare, Inc.*, CIV.A. 4:07-CV-314-Y, 2007 WL 1944344, at *3 (N.D. Tex. July 2, 2007) (irreparable injury not demonstrated where alleged inability to pay is speculative). That would be the case only if Leane prevails, her interest is deemed superior to CBV, the difference between actual recovery and what an arbitrator found should have been recovered is sufficiently large, and ChanBond does not continue operations, acquire other assets, or identify other infringers to further monetize the patents. This is simply too many inferences for the Court to draw in awarding extraordinary injunctive relief.

For all of these reasons, Defendants respectfully request that this Court deny Plaintiffs' Emergency Motion to Extend Temporary Restraining Order and award Defendants all other relief, in both law and equity, to which they are justly entitled.

Respectfully submitted,

CARTER ARNETT PLLC

By: ___*/s/ Linda R. Stahl*___
    E. Leon Carter
    Texas Bar No. 03914300
    lcarter@carterarnett.com
    Courtney Barksdale Perez
    Texas Bar No. 24061135
    cperez@carterarnett.com
    Linda R. Stahl
    Texas Bar No. 00798525
    lstahl@carterarnett.com
    Scott W. Breedlove
    Texas Bar No. 00790361
    sbreedlove@carterarnett.com

Nathan Cox *(admission pending)*
Texas Bar No. 24105751
ncox@carterarnett.com

8150 N. Central Expressway, Suite 500
Dallas, Texas 75206
Telephone: (214) 550-8188
Facsimile: (214) 550-8185

ATTORNEYS FOR DEFENDANTS
UNIFIEDONLINE, INC. and CHANBOND, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been filed with the Clerk of Court using the Northern District of Texas CM/ECF System for filing and service on all counsel of record, in accordance with FED. R. CIV. P. 5(b)(2)(E), on October 26, 2020, as well as service by electronic mail.

**BY E-SERVICE AND/OR ELECTRONIC MAIL**

*/s/ Linda R. Stahl*
Linda R. Stahl

12