IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| | ) | |
| IN RE CHANBOND, LLC, | ) | C.A. No. 15-842 (RGA) |
| PATENT LITIGATION | ) | CONSOLIDATED |
| | ) | |
| | ) | REDACTED -- PUBLIC VERSION |
| | ) | |
| | ) | |
| | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF
## THEIR MOTION TO REOPEN FACT DISCOVERY
## FOR LIMITED INVESTIGATION OF STANDING ISSUES

OF COUNSEL:

Thomas M. Melsheimer
WINSTON & STRAWN LLP
2121 North Pearl Street, Suite 900
Dallas, TX  75201
(214) 453-6500

Michael L. Brody
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
(312) 558-5600

David P. Enzminger
Nimalka Wickramasekera
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA  90071-1543
(213) 615-1780

Krishnan Padmanabhan
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY  10166-4193
(212) 294-6700

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Defendants*

Original Filing Date:  October 8, 2020
Redacted Filing Date:  October 15, 2020

# <u>TABLE OF CONTENTS</u>

**Page**

I.     Introduction & Summary of the Argument..................................................... 1

II.    Nature and Stage of the Proceedings ............................................................ 1

III.   Statement of Relevant Facts.......................................................................... 2

       A.     Formation of ChanBond by Deirdre Leane ......................................... 2

       B.     Ms. Leane Now Asserts a Right to Control Licensing of the Asserted
              Patents................................................................................................. 2

       C.     Defendants Promptly Raised Their Concerns with ChanBond ............. 4

IV.    Legal Standard ............................................................................................. 4

V.     Argument ..................................................................................................... 5

       A.     Good Cause Exists Because Ms. Leane Now Disputes Whether
              ChanBond has Key Rights with Respect to the Asserted Patents,
              Creating a Potential Standing Issue .................................................... 5

       B.     Defendants Acted Diligently Both Before and After Receiving the
              September 2020 Email......................................................................... 6

       C.     Re-opening Fact Discovery for The Limited Purpose of Determining
              Standing Does Not Unduly Prejudice ChanBond. ............................... 10

VI.    Conclusion .................................................................................................. 11

APP 002

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*,
   604 F.3d 1354 (Fed. Cir. 2010).............................................................................5

*AntennaSys, Inc. v. AQYR Techs., Inc. et al.*,
   No. 19-2244, slip op. (Fed. Cir. Oct. 7, 2020).......................................................11

*Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738 (Tex. 1998) .............................8

*Clouding IP, LLC v. Google Inc.*,
   61 F.Supp.3d 421 (D. Del. 2014)............................................................................6

*Dow Chem. Canada Inc. v. HRD Corp.*, 287 F.R.D. 268 (D. Del. 2012)...................4, 9

*Harris v. Ass'n of Water Bd. Directors*,
   No. 14-19-00199-CV, 2020 WL 4211691 (Tex. App. July 23, 2020) ....................8

*Int'l Constr. Prod. LLC v. Caterpillar Inc.*,
   No. CV 15-108-RGA, 2018 WL 4611216 (D. Del. Sept. 26, 2018) ....................4, 7

*MAZ Partners LP v. Shear*, 208 F. Supp. 3d 384 (D. Mass. 2016) ...............................7

*Siemens Medical Solutions USA, Inc. v. Humedica, Inc.*,
   No. CV 14-880-LPS-CJB, 2015 WL 1738186 (D. Del. Apr. 8, 2015)................4, 5

*Waterman v. Mackenzie*,
   138 U.S. 252 (1891)................................................................................................5

**Rules**

Fed. R. Civ. P. 16(b) ................................................................................................1, 4

APP 003

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---|---|
| Ex. A | Corporate Formation (CHANBOND_011226-41) |
| Ex. B | Excerpts from April 24, 2018 Leane Dep. Tr. |
| Ex. C | April 2015 Agreement (CHANBOND_001483-536) |
| Ex. D | October 2015 Agreement (CHANBOND_011835-69) |
| Ex. E | September 2, 2020 A. Cohen Email |
| Ex. F | September 9, 2020 K. Padmanabhan Email to ChanBond's Counsel |
| Ex. G | Emails Between Defendants' Counsel and ChanBond |
| Ex. H | April 22, 2016 Defendants' First Set of Common Requests for Production to Plaintiff |
| Ex. I | July 26, 2016 ChanBond's Supplemental Responses to Defendant's First Set of Interrogatories |
| Ex. J | August 16, 2017 Subpoena to Produce Documents to Deirdre Leane |
| Ex. K | May 17, 2016 Subpoena to Produce Documents to Unified Online |
| Ex. L | August 23, 2018 ChanBond LLC Seventh Amended Privilege Log |
| Ex. M | *AntennaSys, Inc. v. AQYR Techs., Inc. et al.*, No. 19-2244, slip op. (Fed. Cir. Oct. 7, 2020) |

APP 004

## I.      Introduction & Summary of the Argument

Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, Defendants respectfully move to modify the schedule to reopen discovery for a limited purpose.  Recently, counsel for a non-party wrote Defendants' counsel for the first time claiming an interest in the asserted patents and advised that ████████████████████████████████████ and, by implication, any judgment rendered in the present case could be nullified subsequently by a lack of standing.  This issue therefore must be resolved prior to any attempt to resolve the case through ████████ trial.    Defendants seek documents regarding the agreements transferring the ChanBond entity and asserted patents, and two depositions, of Ms. Leane and Unified Online, the potential co-owner of the patents and the present owner of ChanBond, to investigate the rights held by these parties in the asserted patents.

Because the facts giving rise to this issue are newly revealed, and the issue of standing can be raised at any juncture, good cause exists to reopen discovery for these limited purposes.

## II.     Nature and Stage of the Proceedings

ChanBond filed lawsuits against thirteen defendants on September 21, 2015.  The cases were consolidated for pretrial purposes on March 6, 2017.  D.I. 107.  Fact discovery closed on July 6, 2018 and expert discovery closed on February 22, 2019.  D.I. 271, 347.  At the February 18, 2020 scheduling conference, the Court selected defendant Cox Communications, Inc. ("Cox") as being the first case to be tried.  D.I. 484 at 72:18-21, 79:10-11.  The Court held a pre-trial conference for the Cox case on July 2, 2020.  D.I. 507.

A trial for the Cox case was originally set to begin on August 18, 2020, but was postponed due to the current COVID-19 pandemic.  D.I. 513.  A new trial date for the Cox case has not yet been set, but is expected to be sometime in spring 2021.  Trial dates have not been scheduled for the remaining twelve Defendants.

### III.    Statement of Relevant Facts

#### A.    Formation of ChanBond by Deirdre Leane

ChanBond is a patent holding company that was setup by, and solely owned by, Deirdre Leane in August 2014.  *See* Ex. A, Corporate Formation (CHANBOND_011226-41) at 11226, 11241; *see also* Ex. B, April 24, 2018 Leane Dep. Tr., at 59:12-15.  At the time, Ms. Leane was also a principal at IP Navigation, which was an entity that invested in patent litigation and patent monetization campaigns.  *See* Ex. B at 14:8-16:15. On April 9, 2015, ChanBond entered into an agreement to acquire the patents-in-suit from the inventors.  *See* Ex. C, April 2015 Agreement (CHANBOND_001483-536).

A few months later, ChanBond filed these cases on September 23, 2015.  A month later, on October 27, 2015, Ms. Leane executed an agreement to sell ChanBond to Unified Online, which is a company run by one of her former business partners at IP Navigation, Mr. William Carter. *See* Ex. D, October 2015 Agreement (CHANBOND_011835-69).  The October 2015 Agreement grants Ms. Leane a right to a ███████████████████████████████████████████████ and various other rights.  *Id*. §§ 3.1, 3.2, 8.2-8.3.

#### B.    Ms. Leane Now Asserts a Right to Control Licensing of the Asserted Patents



████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████.  On the evening of September 2, 2020, Akiva Cohen, counsel for third-party Deirdre Leane, sent correspondence ("the September 2020 Email") (Ex. E) to Defendants' counsel, copying Plaintiff ChanBond's counsel.  Mr. Cohen's correspondence was sent to place Defendants on ████████████████████████████████

████████████████████████████████████████████████████████████████████

██████  the patents-in-suit.  *See* Ex. E, September 2, 2020 A. Cohen Email.  The correspondence continues by explaining that according to Ms. Leane's understanding of the October 2015

APP 006

Agreement between Ms. Leane, ChanBond, and Unified Online, the patents-in-suit cannot be licensed without Ms. Leane's written authorization.  Mr. Cohen's correspondence warned that



Ex. E (emphasis added).

Prior to this new correspondence, Ms. Leane did not appear to assert the right to control licensing of the asserted patents.  In fact, Ms. Leane previously testified at her deposition that she has transferred all rights and interests to the asserted patents, termed the "ChanBond Patents" below, to Unified Online pursuant to the October 2015 Agreement.



Ex. B at 106:3-19.

However, as explained by the recent correspondence from Ms. Leane's counsel, Ms. Leane now contends that under the October 2015 Agreement she holds rights that limit the Plaintiff's

ability to license the asserted patents.

### C.    Defendants Promptly Raised Their Concerns with ChanBond

Upon receiving the September 2020 Email from Ms. Leane's counsel, Defendants promptly reached out to counsel for ChanBond explaining the significant concern raised by the correspondence.  *See* Ex. F, September 9, 2020 K. Padmanabhan Email to ChanBond's Counsel. Defendants explained that it appears Ms. Leane now believes that she is a necessary party ██████ ████████   ████████   involving the asserted patents.  Defendants further explained that the September 2020 Email, and Ms. Leane's understanding of the October 2015 Agreement, suggest that Ms. Leane may have retained residual rights in the asserted patents, and thus, transferred less than all substantial rights in the asserted patents to ChanBond.[1]  *See* Ex. G, Emails Between Defendants' Counsel and ChanBond, at 1.

The parties met and conferred on September 24, 2020, during which Defendants asked counsel for ChanBond whether it would agree to the limited discovery requests for deposition testimony and documents.  ChanBond refused, thus necessitating this motion.

### IV.    Legal Standard

"Federal courts have broad discretion in managing discovery."  *Siemens Med. Sols. USA, Inc. v. Humedica, Inc.,* No. CV 14-880-LPS-CJB, 2015 WL 1738186, at *1 (citing *Dow Chem. Canada Inc. v. HRD Corp.*, 287 F.R.D. 268, 270 (D. Del. 2012), *aff'd*, 587 F. App'x 741 (3d Cir. 2014)).  Under Rule 16(b) of the Federal Rules of Civil Procedure, a party must show good cause to modify the case schedule to reopen discovery.  *See* FED. R. CIV. P. 16(b)(4).  "Good cause" exists when, "despite diligence on the part of the party seeking to amend, the deadline in the

---

[1]    During the meet and confer process, ChanBond provided no substantive explanation as to why less than "all substantial rights" were transferred, but rather, simply stated it disagrees that ChanBond possesses less than "all substantial rights."

APP 008

scheduling order 'cannot reasonably be met.'" *Int'l Constr. Prod. LLC v. Caterpillar Inc.*, No. CV 15-108-RGA, 2018 WL 4611216, at *2 (D. Del. Sept. 26, 2018(citing Fed. R. Civ. P. 16. Advisory Committee's Notes (1983 Amendments)).  Thus, whether the "good cause" requirement is met depends on the "diligence of the movant, and not on prejudice to the non-moving party." *Siemens Med. Sols.*, 2015 WL 1738186, at *1 (citations omitted).

## V.   Argument

### A.   Good Cause Exists Because Ms. Leane Now Disputes Whether ChanBond has Key Rights with Respect to the Asserted Patents, Creating a Potential Standing Issue

Defendants seek to reopen discovery for limited purposes because, despite their diligence during fact discovery, Defendants could not have reasonably obtained discovery on the issues raised by the September 2020 Email, which came well after fact discovery closed.  The email from Mr. Cohen, who serves as Ms. Leane's attorney, reflects a change in Ms. Leane's understanding of her rights in the asserted patents from the testimony given during fact discovery.

In particular, the September 2020 Email calls into question whether there exists standing sufficient to proceed to trial with the current parties.  An entity with fewer than all substantial rights fails to meet the definition of a "patentee," and therefore cannot sue on its own.  *See Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891) ("Any assignment or transfer, short of [conveying the whole patent, an undivided part of the patent, or the exclusive right under the patent within a specified part of the United States], is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement."); *Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010) ("When a plaintiff lacking a sufficiently large portion of rights brings suit, that plaintiff does not have standing to sue on his own, and the suit must be dismissed, or additional holders of rights under the patent must be joined as parties to the suit . . . .").  And in assessing whether all substantial rights were

5

conveyed, courts look to the intention of the parties and the substance of the agreement. *See Clouding IP, LLC v. Google Inc.*, 61 F.Supp.3d 421, 430–32 (D. Del. 2014).

**B.** **Defendants Acted Diligently Both Before and After Receiving the September 2020 Email**

Defendants diligently sought discovery on the ownership of the asserted patents during fact discovery. In Defendants' First Set of Common Requests for Production to Plaintiff (Nos. 1-81) (Ex. H), served on April 22, 2016, Defendants sought discovery regarding the ownership of, and transfer of rights in, the asserted patents. *See, e.g.*, Ex. H at Request for Production No. 44 ("All documents, communications, and/or things concerning the acquisition, ownership, or assignment of the Asserted Patents, Related Applications, and/or Related Patents."); *see also id.* at Request for Production Nos. 61-64, 72. Further, Defendants specifically requested discovery concerning the sale of the asserted patents to Unified Online, which is captured in the October 2015 Agreement now at issue. *See, e.g.*, Ex. H at Request for Production No. 63 ("All documents, communications, and/or things concerning ChanBond's sale, assignment, transfer, lease, or license of any of their rights, assets, facilities, operations, or services to UnifiedOnline."); *see also id.* at Request for Production No. 67 ("All documents, communications, and/or things concerning the ownership and financing of ChanBond from its formation to the present."). And Defendants posed an interrogatory seeking information regarding all ownership interests in the asserted patents, but ChanBond simply declined to respond on the basis of relevance and privilege. *See* Ex. I, July 26, 2016 ChanBond's Supplemental Responses to Defendant's First Set of Interrogatories, at Interrogatory No. 6.

In addition to party discovery, Defendants also served document and deposition subpoenas on third parties, including Ms. Leane and Unified Online. These subpoenas explicitly requested documents about, and set forth deposition topics centered around, the transfer of rights in the

APP 010

asserted patents.  *See, e.g.*, Ex. J, August 16, 2017 Subpoena to Produce Documents to Deirdre

Leane, at Request No. 8 ("Documents related to the agreement between ChanBond and Unified

Online attached as Exhibit 1 to this Subpoena."); Ex. K, May 17, 2016 Subpoena to Produce

Documents to Unified Online, at Document Request No. 2 ("All documents or communications

related to the agreement between ChanBond and UnifiedOnline, as discussed in the agreement

attached as exhibit Ex. 2 to this Subpoena.").  Despite numerous document requests concerning

the October 2015 Agreement (s*ee* Ex. K at Document Request No. 2; *see also, e.g., id*. at Document

Request Nos. 3, 4, 5, 6, 7, 10, 17, and 18), Unified Online, represented by the same attorneys as

ChanBond, only produced two relevant documents during fact discovery and no privilege log.

As shown above, Defendants made diligent efforts to investigate the rights-holders in the

asserted patents during fact discovery, but only received limited discovery which did not indicate

the present dispute between Ms. Leane and ChanBond.  It is only one month ago, on September

2nd, that Defendants were made aware that ChanBond may lack ownership rights sufficient to

resolve these matters.  The recent nature of this information justifies reopening discovery to permit

investigation.  *See MAZ Partners LP v. Shear,* 208 F. Supp. 3d 384, 388 (D. Mass. 2016) ("Given

that plaintiff happened upon the information . . . after discovery was closed and then diligently

sought discovery about it, one cannot fault plaintiff for any delay."); *see also Int'l Constr. Prod.*,

2018 WL 4611216, at *2–3 (finding that plaintiff has shown diligence and good cause to modify

the deadline to amend because plaintiff "only discovered the evidence motivating its motion for

leave to amend after the . . . deadline . . . had passed").

After receiving the September 2020 Email, Defendants promptly reached out to ChanBond

with their concerns, only to have ChanBond dismiss them because it finds Ms. Leane's

interpretation of the October 2015 Agreement to be "objectively inaccurate in view of the

APP 011

agreement itself and Ms. Leane's extensive deposition testimony on the subject." *See* Ex. G, Emails Between Defendants' Counsel and ChanBond, at 2. But this "dispute" over the party's intent in entering the October 2015 Agreement is precisely the reason that reopening discovery for limited purposes is appropriate at this juncture. Ms. Leane testified in April 2018 that she transferred 100% membership interest and all rights and obligations to the asserted patents in the October 2015 Agreement (Ex. B at 106:3-19) but now in September 2020 warns Defendants in these matters ███████████████████████████████████ (Ex. E (emphasis added)).

Notwithstanding Defendants' previous efforts during fact discovery, Defendants believe there exist specific documents that may inform the rights retained by Ms. Leane that have not yet been produced. For example, Defendants have not received any negotiation documents, correspondence, or draft agreements related to the October 2015 Agreement. These negotiation documents are relevant to resolving a dispute regarding the agreement and determining whether Ms. Leane in fact has the rights she now claims. *See* Ex. D § 8.2 (all disputes arising under the agreement are resolved under the laws of Texas); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998) (stating that under Texas law, a "contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists."); *Harris v. Ass'n of Water Bd. Directors*, No. 14-19-00199-CV, 2020 WL 4211691, at *3 (Tex. App. July 23, 2020) (Under Texas law, parole evidence is considered to resolve the ambiguity. . . . ."). Similarly, Defendants have not received correspondence subsequent to the October 2015 Agreement between Ms. Leane and either ChanBond or Unified Online. That correspondence may either corroborate, or undermine Ms. Leane's recently expressed understanding regarding her rights in the asserted

patents.[2]

A review of ChanBond's privilege log also indicates that documents regarding Ms. Leane's and ChanBond's rights in the asserted patents may exist, but were withheld on the basis of privilege. *See, e.g.*, Ex. L, August 23, 2018 ChanBond LLC Seventh Amended Privilege Log, at Nos. 124, 282-88, 1304.[3] Given that the subject of those documents – the transfer of rights in the patents-in-suit – is now a source of dispute between Ms. Leane and ChanBond, there is no common interest to protect, and those documents should be produced so the issue can be investigated. Similarly, Ms. Leane should have additional relevant documents. As consideration for the October 2015 Agreement, Unified Online granted Ms. Leane ▆▆▆▆▆▆▆▆▆▆. Defendants have not received the agreement that conveyed ▆▆▆▆▆▆▆▆▆ or any agreement regarding the rights Ms. Leane may have in Unified Online ▆▆▆▆▆▆▆▆. Production of these documents can be performed quickly, through enforcement of existing requests, and issuance of fewer than ten additional requests. In addition to production of the relevant documents, Defendants would seek to depose Ms. Leane and Unified Online again to investigate the bases for the change in their positions between 2018 and now.

Any ownership dispute between Ms. Leane and ChanBond must be investigated, and

---

[2]   Defendants asked for documents and correspondence between Ms. Leane and either ChanBond or Unified Online subsequent to the October 2015 Agreement during the parties' September 24, 2020 meet and confer. ChanBond, however, claimed that no documents *relevant to the provision at issue* exist. ChanBond did not confirm that no documents or correspondence relevant to the parties' respective interests in the asserted patents exist.

[3]   Ms. Leane and Unified Online did not produce privilege logs, on the representation of Plaintiff's counsel, which also served as counsel to Ms. Leane and Unified Online in response to Defendants' subpoenas, that Ms. Leane's and Unified Online's privileged documents would be reflected on ChanBond's privilege log. The present dispute brings that into question, and Ms. Leane and Unified Online should prepare separate privilege logs. In addition, it does not appear that documents after the date of the complaint were identified on ChanBond's privilege log. Post-complaint documents are certainly relevant in view of the dispute between Ms. Leane and ChanBond, which relates to an agreement that was signed after the filing of the complaint.

APP 013

resolved, so that the parties and the Court do not proceed with litigations that ChanBond may not have had the authority to bring in its own name, and which the Court therefore lacks the authority to adjudicate.

   **C.    Re-opening Fact Discovery for The Limited Purpose of Determining Standing Does Not Unduly Prejudice ChanBond.**

   Though the good cause standard turns on the diligence of the movant, the Court, when deciding to modify a scheduling order, may consider any prejudice to the party opposing the motion. *Dow Chem. Canada Inc.*, 287 F.R.D at 270. ChanBond, however, will not suffer any prejudice should the Court reopen discovery because the discovery sought is limited, and therefore (1) will not delay trial, (2) will not be costly to ChanBond, and (3) will benefit ChanBond in determining its rights to conclude the dispute.

   First, the limited discovery will cause no delay. The limited discovery requested by Defendants—production of documents and correspondence related to the October 2015 Agreement and subsequent correspondence regarding Ms. Leane's and ChanBond's relative rights, as well as two depositions—can be completed well before the trial date proposed for the Cox trial,[4] which is seven months away. In fact, the proposed discovery is so narrow that any subsequent briefing to challenge ChanBond's ability to bring suit in its own name should also be fully complete before the Cox trial date. Further, with no other pending pretrial deadlines, the case schedule can accommodate Defendants' discovery because it will not impact any other deadlines.

   Second, the limited discovery will cause minimal expense. For the proposed depositions, Defendants plan to depose only two witnesses (*e.g.*, Ms. Leane and a representative of Unified

---

[4]    Cox notified counsel for ChanBond that it is available for trial on the May 17, 2021 trial date proposed by the Court. ChanBond has confirmed that it is available on any of the trial dates proposed by the Court, including the May 17, 2021 date.

APP 014

Online) and to conduct those depositions via videoconference.  This will mitigate costs and travel time for the attorneys and deponents.  Defendants have also identified the documents (negotiation documents, correspondence, draft agreements, and ███████ related to the October 2015 Agreement) they seek to request, which are limited in scope and consistent with the document requests previously served during fact discovery.  This narrow subset of documents will be neither costly nor burdensome to produce.

Lastly, this discovery will not prejudice ChanBond because it has as much a reason as Defendants to ascertain if any ownership issue exists before attempting what could be a futile effort at ███████ judicial resolution.  *AntennaSys, Inc. v. AQYR Techs., Inc. et al.*, No. 19-2244, slip op. at 5, 12 (Fed. Cir. Oct. 7, 2020) (declining to address claim construction and summary judgment issues and remanding for district court to resolve "threshold" factual issues pertaining to "whether the agreement limits one patent co-owner's right to practice a patent in a way that prevents it from issuing a license to the alleged infringer").  If Ms. Leane indeed retains the patent rights she alleges, ChanBond will not be able to resolve this matter, or further license the asserted patents, without her consent.  During the meet and confer process, ChanBond could not identify any prejudice to providing the requested discovery.  By contrast, the prejudice to Defendants in not granting this limited discovery is substantial, as they cannot be reasonably asked to proceed to trial against a party that may not hold all substantial rights in the asserted patents, and therefore may not even have sufficient standing to maintain this litigation by itself.

## VI.   Conclusion

Based on the above, Defendants respectfully request that the Court grant their motion to reopen discovery for the limited purpose of investigating Ms. Leane's claims regarding an interest in the asserted patents, so that it may subsequently raise any standing issues for the Court's consideration.

11

OF COUNSEL:

Michael L. Brody
Saranya Raghavan
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
(312) 558-5600

David P. Enzminger
Nimalka Wickramasekera
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA  90071-1543
(213) 615-1780

Krishnan Padmanabhan
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY  10166-4193
(212) 294-6700

James C. Lin
WINSTON & STRAWN LLP
275 Middlefield Road
Menlo Park, CA  94025
(650) 858-6500

Thomas M. Melsheimer
Renee Skinner
Alex C. Wolens
WINSTON & STRAWN LLP
2121 North Pearl Street, Suite 900
Dallas, TX  75201
(214) 453-6500

October 8, 2020

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Defendants*

12

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 8, 2020, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                    *VIA ELECTRONIC MAIL*
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE 19801
*Attorneys for Plaintiff*

Lana Milojevic, Esquire                          *VIA ELECTRONIC MAIL*
Eric P. Berger, Esquire
MISHCON DE REYA NEW YORK LLP
156 Fifth Avenue, Suite 904
New York, NY 10010
*Attorneys for Plaintiff*

Mark Raskin, Esquire                             *VIA ELECTRONIC MAIL*
Robert Whitman, Esquire
John F. Petrsoric, Esquire
Michael S. DeVincenzo, Esquire
Andrea Pacelli, Esquire
KING & WOOD MALLESONS LLP
500 Fifth Avenue, 50th Floor
New York, NY 10110
*Attorneys for Plaintiff*

                              */s/ Jennifer Ying*
                              _____
                              Jennifer Ying (#5550)

# EXHIBIT A

APP 018

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM INDEX NO. 654614/2020
NYSCEF DOC. NO. 1 Case 1:20-cv-08127-PGG Document 1-1 Filed 09/29/20 Page 2 of 32 RECEIVED NYSCEF: 09/22/2020
Case 3:20-cv-03097-B Document 26 Filed 10/27/20 Page 19 of 49 PageID 964

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------X

                                :

DEIRDRE LEANE and IPNAV, LLC,      :

                                :

                 Plaintiffs,    :     Index No.:

                                :

        - against –         :

                                :     **SUMMONS**

MISHCON DE REYA LLP, MISHCON   :

DE REYA NEW YORK LLP, KING &   :

WOOD MALLESONS LLP, ROBERT   :

WHITMAN and MARK RASKIN,      :

                                :

              Defendants.  :

                                :

------------------------------------------------------X

TO THE PERSONS NAMED AS DEFENDANTS ABOVE:

      PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED TO ANSWER the complaint of the plaintiff herein, and to serve a copy of your answer on the plaintiff at the address indicated below, within 20 days after the service of this Summons (not counting the day of service itself) or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

      YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated:  September 22, 2020
       New York, New York

                            KAMERMAN UNCYK SONIKER &
                             KLEIN P.C.

                      By:_____*/s/ Akiva M. Cohen*_____
                             Akiva M. Cohen
                             1700 Broadway
                             New York, New York  10019
                             (212) 400-4930

                             *Attorneys for Plaintiffs*

APP 019

Defendants Addresses:

Mishcon de Reya LLP, 70 Kingsway, London, United Kingdom, WC2B 6AH

Mishcon de Reya New York LLP, 2 Park Avenue, New York, New York, 10016

King & Wood Mallesons LLP, 500 Fifth Avenue, New York, New York, 10110

Robert Whitman, 80 Varick Street, Apt 8C, New York, NY 10013

Mark Raskin, 300 Mercer Street, Apt 8M, New York, NY 10003


Plaintiff designates New York County as the place of trial.  The basis for this designation is
Defendant Mishcon De Reya New York LLP's principal place of business and the residence of
Defendants Raskin and Whitman.

**APP 020**

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM
NYSCEF DOC. NO. 1

INDEX NO. 654614/2020

RECEIVED NYSCEF: 09/22/2020

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 4 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 21 of 49   PageID 966

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------X
                                              :

DEIRDRE LEANE and IPNAV, LLC,         :

                                              :

                     Plaintiffs,      :      Index No.:

                                              :

        - against –                  :

                                              :      **COMPLAINT**

MISHCON DE REYA LLP, MISHCON       :

DE REYA NEW YORK LLP, KING &      :

WOOD MALLESONS LLP, ROBERT       :

WHITMAN and MARK RASKIN,         :

                                              :

                       Defendants.     :

                                              :
------------------------------------------------------------X

Plaintiffs, Deirdre Leane and IPNAV, LLC, by their attorneys, Kamerman, Uncyk,

Soniker & Klein P.C., as and for their Complaint against Defendants, Mishcon de Reya LLP,

Mishcon de Reya New York LLP, King & Wood Mallesons LLP, Robert Whitman and Mark

Raskin, respectfully allege as follows:

     1.        The attorney-client relationship is – should be – sacred.  Clients rely on their

attorneys to protect their interests in complex legal matters in which the attorneys are experts,

advisors, and confidants, and attorneys therefore owe their clients a duty of undivided loyalty

and integrity.  This litigation arises out of Defendants' egregious breach of that duty, to the

significant harm of Plaintiffs, who were their clients.

     2.        As detailed below, Plaintiffs Deirdre Leane ("Leane") and IPNAV, LLC

("IPNav"), in which Leane is the sole member, were clients of Defendants Mishcon de Reya

LLP ("Mishcon") and Mishcon de Reya New York LLP ("Mishcon NY" and, collectively

with Mishcon, "MdR"), and particularly of Defendants Robert Whitman ("Whitman") and

APP 021

Mark Raskin ("Raskin" and, together with MdR and Whitman, the "Mishcon Defendants"),

who were Partners at Mishcon NY.

3.    Despite that, in April, 2018, the Mishcon Defendants advised Ms. Leane and

IPNav to retroactively terminate an Advisory Services Agreement ("ASA") between IPNav

and non-party ChanBond, LLC ("ChanBond"), pursuant to which IPNav was entitled to 22%

of the "Gross Recovery" (as defined in the ASA) on certain patents owned by ChanBond (the

"ChanBond Patents"), which patents ChanBond had retained MdR to litigate.

4.    The Mishcon Defendants advised Plaintiffs that terminating the ASA was needed

for the benefit of the patent litigation, and therefore was to her and IPNav's interest, and that

ChanBond would put IPNav in an identical economic position via a new agreement that

would be entered later.  MdR then drafted and advised Leane to sign a termination agreement

between ChanBond and IPNav (the "Termination Agreement"), by which the ASA was

retroactively terminated as of April 9, 2015 – the date as of which the ASA had first been

executed.

5.    At no point did the Mishcon Defendants convey to Leane that MdR did not

consider itself to be representing Leane or IPNav in connection with the Termination

Agreement.  At no point did the Mishcon Defendants advise Plaintiffs to obtain independent

counsel relating to the Termination Agreement.  At all times, and to all appearances, the

Mishcon Defendants appeared to be performing their role as Leane's and IPNav's counsel, in

addition to ChanBond's, and representing the parties' common (and, to Leane's knowledge,

still wholly aligned) interests.

6.    That was not so, however.  The sole consideration for the Termination Agreement

was ChanBond's representation that it would put IPNav in an economically identical position

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM INDEX NO. 654614/2020
NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 09/22/2020

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 6 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 23 of 49   PageID 968

by a new agreement to be later executed. Stunningly, MdR failed to document ChanBond's agreement to restore IPNav to an identical economic position, opting to protect the interests of one of its clients (ChanBond) by placing the interests of its other clients (Leane and IPNav) at risk.

7.     Moreover, when, after initially indicating that it would honor its commitment to restore IPNav's economic position, ChanBond reneged on the agreement, refused to do so, and attempted to strong-arm Plaintiffs into taking a reduced share of the Gross Recovery, Defendants Whitman and Raskin, now Partners in Defendant King & Wood Mallesons LLP ("KWM"), abandoned their duty to Plaintiffs and defended ChanBond's breach of contract.

8.     Indeed, and, upon information and belief, attempting to protect his own interests and the interests of MdR and KWM in addition to ChanBond, and directly adverse to the interests of his former clients Leane and IPNav, Raskin has argued that the ASA was never enforceable in the first instance.

9.     As set out below, Defendants' conduct is a wholesale breach of their duties to Plaintiffs, and has resulted in significant harm to Plaintiffs.  As such, Plaintiffs bring this action against Defendants for malpractice, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and fraud.

### THE PARTIES, JURISDICTION AND VENUE

10.     Plaintiff Leane is a foreign national and lawful permanent resident of Texas, residing at 6422 Bryan Parkway, Dallas, TX 75214.

11.     Plaintiff IPNav is a Texas limited liability company with a principal place of business located at 6422 Bryan Parkway, Dallas, TX 75214.  Ms. Leane is the sole member of IPNav.

3

APP 023

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM
INDEX NO. 654614/2020
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 09/22/2020

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 7 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 24 of 49   PageID 969

12.     Defendant Mishcon is a British law firm with a principal place of business located at 70 Kingsway, London, United Kingdom.

13.     Defendant Mishcon NY is a New York limited liability partnership with a principal place of business located at 2 Park Avenue, New York, New York.  Upon information and belief, Mishcon NY ceased doing business in or about January, 2020, but is still an active New York entity.

14.     Defendant KWM is a New York limited liability partnership with a principal place of business located at 500 Fifth Avenue, New York, New York.

15.     Defendant Robert Whitman is a Partner at KWM, a former Partner at Mishcon NY, an attorney licensed to practice in the State of New York, and, upon information and belief, is a citizen of the State of New York residing at 80 Varick Street, Apt 8C, New York, NY 10013.

16.     Defendant Mark Raskin is a Partner at KWM, a former Partner at Mishcon NY, an attorney licensed to practice in the State of New York, and, upon information and belief, is a citizen of the State of New York residing at 300 Mercer Street, Apt 8M, New York, NY 10003.

17.     Venue is appropriate in New York County in that at least Defendants KWM and Mishcon NY are residents of New York County.

## FACTUAL BACKGROUND

A.  ChanBond, IPNav, and the ASA

18.     Plaintiff Leane formed ChanBond on or about August 15, 2014, while she was employed at IPNav's business predecessor, IP Navigation Group, LLC ("IP Navigation").

4

APP 024

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 8 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 25 of 49   PageID 970

19.     Like IPNav, IP Navigation was in the business of providing patent monetization

consulting services to patent owner clients in exchange for an interest on the recovery

generated by the client's patents.

20.     On or about October 31, 2014, IP Navigation's principal, Erich Spangenberg,

decided to retire, and turn over his business to Ms. Leane (the "IPNav Transition").  Ms.

Leane incorporated IPNav as a new entity through which to engage in the IPNav consulting

business.

21.     While employed at IP Navigation, Ms. Leane became aware of the ChanBond

patents, when the patents' then-owner, CBV, Inc. ("CBV"), reached out to IP Navigation

about potentially monetizing the patents.

22.     CBV and IP Navigation discussed various fee structures by which CBV, IP

Navigation, and the vendors and professionals IP Navigation would retain in any licensing-

and-litigation campaign would be paid out of the proceeds generated by the licensing-and-

litigation campaign.

23.     At all times, IP Navigation clearly communicated to CBV that it would provide

consulting services in exchange for a percentage of the "Gross Revenue" derived from the

patents – that is, the total money made available to the patent owner by virtue of the licensing-

and-litigation campaign.

24.     Eventually, CBV and IP Navigation agreed that the consulting fee would be 22%

of the Gross Revenue.  Before the parties came to an agreement on the remaining terms of

their relationship, however, the IPNav Transition occurred.

APP 025

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM   INDEX NO. 654614/2020
NYSCEF DOC. NO. 1                                     RECEIVED NYSCEF: 09/22/2020

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 9 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 26 of 49   PageID 971

25.     After the IPNav Transition, Leane and CBV agreed that ChanBond would purchase the ChanBond Patents from CBV, on terms documented in a Patent Purchase Agreement dated as of April 9, 2015 (the "PPA").

26.     CBV and Leane also agreed that IPNav could provide patent monetization consulting to ChanBond on the fee terms first discussed by CBV and IP Navigation: 22% of the Gross Recovery.

27.     Reviewing her files in July 2015 in response to requests from litigation funders that she provide documents for their review as they considered funding ChanBond's patent litigation, Leane realized that, despite her intent and CBV's agreement, and the fact that IPNav had been providing consulting services since ChanBond acquired the ChanBond Patents, she had never formally had IPNav and ChanBond enter into an Advisory Services Agreement.

28.     As such, she asked in-house counsel at IP Navigation to re-review the draft ASA (which counsel had last reviewed in early June) and noted she was changing the date on the ASA to reflect that it had been in effect since April 2015 (the time of ChanBond's purchase, consistent with the intent of the parties and the services IPNav had been providing since that date).

29.     On or about July 31, 2015, Leane executed the ASA on behalf of both ChanBond and IPNav, and dated it as of April 9, 2015.

30.     Pursuant to the ASA, IPNav was entitled to 22% of any Gross Recovery obtained by ChanBond on the ChanBond Patents.

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM
NYSCEF DOC. NO.

INDEX NO. 654614/2020

RECEIVED NYSCEF: 09/22/2020

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 10 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 27 of 49   PageID 972

B.  Leane Sells ChanBond to UnifiedOnline, Inc.

31.     On October 27, 2015, Leane and UnifiedOnline, Inc. ("Unified") entered into an

Interest Sale Agreement ("ISA"), by which Leane sold her membership interest in ChanBond

to Unified.

32.     The ISA expressly provided that Unified was taking ChanBond subject to

ChanBond's obligations under certain listed contracts, including the IPNav ASA.

33.     Indeed, in a September 2015 email, Billy Carter, Unified's principal, expressly

acknowledged that Unified would "assume/honor all engagements re the litigation ie

agreements with – IPNAV [sic] …"

C.  The Attorney-Client Relationship Between Plaintiffs & the Mishcon Defendants

34.     On April 20, 2015, ChanBond retained Defendant Mishcon NY to represent it in

litigation relating to the ChanBond patents.  While the engagement agreement (Exhibit A,

hereto, the "Retention Agreement") identified only ChanBond as the "Client," Paragraph 17

of the Retention Agreement expressly acknowledged that MdR's representation and duties ran

to more than just its named client:

> Successors and Assigns.  This Retention Agreement is and shall be binding
> and inure to the benefit of the Parties and their respective subsidiaries and
> affiliates, heirs, executors, administrators, legal representatives, successors,
> and assigns, including successors and assigns of any interest in the
> [ChanBond] Patents"

35.     Because IPNav and ChanBond were under common control at the time ChanBond

executed the Retention Agreement, IPNav was a ChanBond affiliate at the time of the

retention.  In addition, IPNav became an assignee of an interest in the ChanBond Patents via

the ASA.  For both those reasons, the Retention Agreement "inure[d] to [IPNav's] benefit"

7

APP 027

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM                    INDEX NO. 654614/2020
NYSCEF DOC. NO.    Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 11 of 32   RECEIVED NYSCEF: 09/22/2020
                   Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 28 of 49   PageID 973

and IPNav was entitled to undivided loyalty from Mishcon NY and its attorneys, including Defendants Whitman and Raskin.

36.     In addition, during the ensuing litigations, Mishcon undertook to represent Ms. Leane personally, defending her deposition as her counsel.

37.     Indeed, at the outset of Ms. Leane's April 24, 2018 deposition, Mr. Whitman identified himself, on the record, as counsel "for Plaintiff ChanBond and Deirdre Leane."

38.     At no point prior to the execution of the Termination Agreement did any of the Mishcon Defendants ever suggest to Ms. Leane, expressly or by implication, that their representation was limited to ChanBond, and not to its affiliates.

D.   The Mishcon Defendants Advise Leane and IPNav to Terminate the ASA

39.     During the course of Ms. Leane's deposition on April 24, 2018, just prior to the lunch break, Ms. Leane testified about the ASA, and counsel for the defendants noted that it had not been produced in the litigation.

40.     On the lunch break, while still representing Ms. Leane and ostensibly protecting her interests, along with IPNav's and ChanBond's – which interests, until that moment, had been completely aligned – Whitman advised Ms. Leane that the failure to produce the ASA was going to create problems for the litigation, and advised her that the best course for the litigation would be for Ms. Leane to terminate and cancel the ASA, and have ChanBond place her in the same economic position by executing a new agreement to that effect at a later date.

41.     According to Whitman, leaving the ASA in place would require reopening document discovery and might severely delay the case and harm ChanBond's chances of recovery.

APP 028

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM INDEX NO. 654614/2020
NYSCEF DOC. NO. Case 1:20-cv-08127-PGG Document 1-1 Filed 09/29/20 Page 12 of 32 RECEIVED NYSCEF: 09/22/2020
Case 3:20-cv-03097-B Document 26 Filed 10/27/20 Page 29 of 49 PageID 974

42.     Whitman therefore advised Leane that it would be in everyone's interest –

including Leane's and IPNav's – for IPNav to terminate the ASA, and enter into a different

agreement, at a later date, documenting Leane's and IPNav's 22% interest in the proceeds of

the litigation-and-licensing campaign.

43.     Indeed, both that day and thereafter, the Mishcon Defendants reiterated to Leane

their 100% agreement that she deserved the compensation to which IPNav was entitled under

the ASA given the amount of work she had put into the ChanBond litigations, both before and

after executing the ISA.

44.     Mishcon NY followed up on the advice that terminating the ASA was necessary,

drafting a termination agreement between ChanBond and IPNav and transmitting it to Leane

for signature.

45.     On April 27, 2018, Whitman emailed Leane a copy of the draft Termination

Agreement, writing: "Hello Deirdre, Per our discussion, please find attached a termination of

the advisory services agreement.  If OK, kindly execute and return to me.  I will then have

Billy Execute and I'll send you a final copy.  Kind regards, Bob."

46.     Though IPNav was a beneficiary of the Retention Agreement pursuant to

Section 17 thereof, and though Whitman first advised Leane to terminate the ASA while he

was expressly acting as her personal attorney on the day of her deposition, at no point did

Whitman say or suggest to Leane that he and MdR were not acting as her and IPNav's

counsel in connection with the Termination Agreement.

47.     Though IPNav was a beneficiary of the Retention Agreement pursuant to

Section 17 thereof, and though Whitman first advised Leane to terminate the ASA while he

APP 029

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM INDEX NO. 654614/2020
NYSCEF DOC. NO.                                                    RECEIVED NYSCEF: 09/22/2020
Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 13 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 30 of 49   PageID 975

was expressly acting as her personal attorney on the day of her deposition, at no point did Whitman suggest to Leane that she ought to have independent counsel review the draft.

48.    Consistent with the fact that Leane and IPNav were terminating the ASA only in exchange for ChanBond's agreement to later restore them to an identical economic position, the Termination Agreement was not a unilateral termination by IPNav, which IPNav had the authority under the ASA to execute had it wished to unilaterally terminate the ASA.

49.    Instead, the Termination Agreement provided that ChanBond and IPNav were entering into an *agreement* to terminate the ASA, in exchange for their mutual agreements and "other good and valuable consideration."

50.    The only consideration IPNav received for terminating the ASA was ChanBond's representation and agreement, conveyed by the Mishcon Defendants, that it would execute a separate agreement binding itself to pay IPNav 22% of the Gross Consideration, exactly as it had been required to do under the ASA.

51.    Yet the Mishcon Defendants neither documented that promise in writing, in the Termination Agreement or otherwise, nor advised their clients, Leane and IPNav, that they should require documentation of that promise.

52.    In so doing, the Mishcon Defendants privileged the interests of one client – ChanBond – over another (Ms. Leane and IPNav).

53.    Leane, individually and on behalf of IPNav, relied on the Mishcon Defendants' advice, and the ChanBond promise that the Mishcon Defendants conveyed, in executing the Termination Agreement.

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM INDEX NO. 654614/2020
NYSCEF DOC. NO.                                                                    RECEIVED NYSCEF: 09/22/2020
Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 14 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 31 of 49   PageID 976

E.  ChanBond Refuses to Uphold Its Promise

54.     In or about October 2019, Ms. Leane reached out to ChanBond to begin the process of having ChanBond execute the contemplated agreement that would restore her and IPNav to their previous economic position.

55.     In response, ChanBond repeatedly reiterated its promise to restore Plaintiffs to their previous economic position, both expressly and implicitly.

56.     For example, on October 16, 2019, Ms. Leane texted Billy Carter, principal of Unified, to inform him that she "didn't see the replacement consulting Agreement" and asking if he had sent it to her Yahoo email account.  The next day, Mr. Carter replied "Email will go out today …"

57.     On October 23, having not received the promised email, Ms. Leane again texted Mr. Carter to inquire about the status.  The next day, Mr. Carter responded that they needed "to talk about the waterfall" before he sent the email.

58.     By "the waterfall," Mr. Carter was referring to the manner in which any recovery on the patents would be distributed among the various players who would be paid from the recovery: first to the litigation funder in agreed amounts, next to ChanBond's attorneys, and so on, until each of the litigation funder, attorneys, IPNav, inventors, and ChanBond had received distributions.

59.     Ms. Leane then asked if Mr. Carter could send her the waterfall "as it currently exists", and he agreed to do so, saying that he needed to make adjustments based on the "latest amendment" of ChanBond's agreement with its litigation funder ("Bentham").

11

APP 031

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM    INDEX NO. 654614/2020
NYSCEF DOC. NO.                                                    RECEIVED NYSCEF: 09/22/2020

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 15 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 32 of 49   PageID 977

60.     Later that evening, Mr. Carter sent Ms. Leane an email attaching the revised

waterfall reflecting, among other things, the terms of ChanBond's amended agreement with

Bentham.

61.     Mr. Carter's email was sent at 10:51 p.m. on October 25, 2019 (the "10/25

Email"), and included four attachments: the initial litigation funding agreement with Bentham

(which had been executed by Ms. Leane prior to her sale of ChanBond to Unified), two

amendments to that litigation funding agreement, and an Excel spreadsheet.

62.     The file name of the Excel spreadsheet attached to the 10/25 Email was "Copy of

Chanbond Waterfal_Billy Carter_Final.xlsx" (the "10/25 ChanBond Waterfall").

63.     Fully consistent with the parties' agreement that the "replacement consulting

Agreement" would restore IPNav to its economic position under the ASA, the 10/25

ChanBond Waterfall created by Mr. Carter identified the "IPNav Return" as "22% of gross."

64.     Similarly consistent, the 10/25 ChanBond Waterfall Carter created identified the

"IPNav Return" as being paid from whatever proceeds were left over after payment of

Bentham and ChanBond's litigation counsel.

65.     Despite that confirmation of the parties' agreement that IPNav's 22% interest

would be reinstated, ChanBond simply refused to execute an agreement accomplishing that

result.

66.     Instead, ChanBond attempted to leverage the fact that the ASA had been cancelled

and not formally replaced to extract a settlement from IPNav at a reduced percentage.

67.     After a series of text exchanges where Ms. Leane pressed Carter to sign the

reinstated ASA and Carter deflected, in February 2020, Carter finally came clean: He had no

intent of reinstating IPNav as had been agreed.

APP 032

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM          INDEX NO. 654614/2020
NYSCEF DOC. NO.    Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 16 of 32 RECEIVED NYSCEF: 09/22/2020
                   Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 33 of 49   PageID 978

68.     On February 17, 2020, Carter texted Ms. Leane: "I'm not signing another ASA. Rob [Howe] and I executed one when you terminated the previous one to take the Technicolor job.  We can discuss the split or your compensation, but I'm not going to terminate the existing agreement in favor of another one with IPNAV, LLC."

69.     Carter's claim that Ms. Leane had terminated the ASA to 'take a job at Technicolor' was blatantly false.

70.     In fact, Ms. Leane had taken a position as Technicolor's head of IP in June of 2017, roughly a year before Whitman advised her that the case required that the ASA be terminated.

71.     Indeed, Ms. Leane had affirmatively disclosed to Technicolor that she had a connection to and financial interest in the ChanBond litigations, and her position at Technicolor had nothing at all to do with the termination of the ASA.

72.     Thus, Ms. Leane immediately rejected Carter's claim, responding: "No f [sic] way. I had to execute because you didn't disclose during discovery and I spoke to it during deposition.  That was always the deal – you got CB bc I had IPNAV and my big out …"

73.     On February 23, 2020, Ms. Leane texted Defendant Raskin – who by then had left MdR for KWM – to discuss Carter's attempt to renegotiate the deal.  Raskin responded "I spoke with him [Carter] briefly.  He said he's not trying to screw you out of anything but is worried about anything afdexting [sic] the case at this point."

74.     Upon information and belief, the word "afdexting" was meant to be "affecting."

75.     Upon information and belief, Carter had claimed in his discussion with Raskin that he had no objection to reinstating IPNav at the full 22%, as previously agreed, but was

13

APP 033

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM INDEX NO. 654614/2020
NYSCEF DOC. NO. Case 1:20-cv-08127-PGG Document 1-1 Filed 09/29/20 Page 17 of 32 RECEIVED NYSCEF: 09/22/2020
Case 3:20-cv-03097-B Document 26 Filed 10/27/20 Page 34 of 49 PageID 979

concerned that doing so might somehow negatively impact ChanBond's chances of success in the litigation.

76.     On February 27, 2020, Raskin texted Ms. Leane.

77.     Raskin wrote "[a]t this point I don't think you need the 'ASA' per se.  Just an agreement that you get paid whatever you were supposed to.  I think he said he'd do that."

78.     Upon information and belief, the "he" Raskin was referring to in the text message was Billy Carter.

79.     Upon information and belief, Carter had again conveyed his acknowledgement that, pursuant to the terms of the parties' prior agreement, IPNav was "supposed to" get paid 22% of the gross recovery.

80.     In April 2020, Ms. Leane again reached out to her attorneys at KWM, Raskin and Whitman, to obtain their help in getting the IPNav restoration accomplished.

81.     On April 6, 2020, Ms. Leane forwarded a draft letter agreement reinstating the ASA.

82.     Ms. Leane followed up with Whitman and Raskin throughout April, including in a call on April 9, 2020.

83.     At no point in those discussions did Whitman or Raskin convey that they considered themselves to be representing only ChanBond, to the exclusion of Ms. Leane and IPNav.

84.     To the contrary, their communication was consistent with Ms. Leane's understanding that Whitman, Raskin, and KWM were representing her and IPNav as joint clients with ChanBond.

14

APP 034

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM
NYSCEF DOC. NO.

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 18 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 35 of 49   PageID 980

INDEX NO. 654614/2020
RECEIVED NYSCEF: 09/22/2020

85.     For instance, on April 23, 2020, Raskin conveyed to Ms. Leane that Carter had not provided comments on the draft, and that Raskin "just g[o]t the sense that he [Carter] is hesitant to do anything so close to trial."

86.     Upon information and belief, ChanBond had not specifically authorized Raskin to convey to Ms. Leane his "sense" of Carter's thought process or their communications.

87.     Were Ms. Leane and IPNav not joint clients of Raskin and KWM, the April 23 disclosure, like Raskin's earlier comments, would have been a violation of ChanBond's privilege.

88.     Despite these acknowledgements and assurances, ChanBond continued to refuse to execute an agreement memorializing the 22% of the gross recovery that the parties had agreed IPNav would be paid.

F.   Raskin and Whitman Abandon Leane and IPNav in Favor of ChanBond

89.     As indicated by the above and upon information and belief, until April 2020, Defendant Raskin appropriately continued to support his clients Leane, IPNav and ChanBond by encouraging ChanBond to follow through on its agreement, and therefore maintaining his disparate clients' alignment of interests.

90.     Upon information and belief, over time Defendants Raskin and Whitman came to realize that Carter had no intention of ever making good on ChanBond's obligations to IPNav under the parties' agreement, placing the interests of their three clients, Leane, IPNav, and ChanBond, in irreconcilable conflict.

91.     Rather than withdrawing from the dispute between their clients, Defendants Raskin, Whitman and KWM decided to side with ChanBond.

15

APP 035

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM  INDEX NO. 654614/2020
NYSCEF DOC. NO.  RECEIVED NYSCEF: 09/22/2020

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 19 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 36 of 49   PageID 981

92.     On April 30, 2020, Raskin forwarded Ms. Leane a "proposal" from ChanBond, which Raskin said he hoped Leane would find "a reasonable compromise." The proposal suggested that, rather than reinstate IPNav's 22% interest in the Gross Recovery, Ms. Leane and ChanBond would agree that IPNav would take an 11% interest, which interest would also resolve and dispose of Unified's outstanding obligation to pay Ms. Leane $5,000,000 as part of the purchase of ChanBond.

93.     Since then, and in an attempt to pressure Plaintiffs into settling for a reduced interest in the Gross Recovery, Raskin and Whitman have variously asserted that: (1) the parties had never agreed to restore IPNav's 22% interest; (2) Whitman never advised Leane that the ASA needed to be terminated for the benefit of the litigation, adopting Carter's fantastical claim that Leane sought to terminate the ASA for reasons related to her (by-then year-old) job at Technicolor; and (3) that IPNav's ASA was purportedly unenforceable *ab initio*.

94.     Most recently, Raskin affirmatively accused Ms. Leane of committing a fraud by executing the ASA.

95.     By taking positions adverse to Leane and IPNav, Raskin, Whitman, and KWM effectively terminated their representation of Plaintiffs.

96.     At no point prior to doing so did any of Defendants formally terminate their representation of Plaintiffs.

97.     Upon information and belief, Raskin, Whitman and KWM joined in the pressure campaign against their former clients out of concern for their own liability for advising Plaintiffs to enter into the Termination Agreement without formally documenting the consideration supporting the termination.

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM

NYSCEF DOC. NO.

INDEX NO. 654614/2020

RECEIVED NYSCEF: 09/22/2020

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 20 of 32

Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 37 of 49   PageID 982

## COUNT I
(Malpractice and Negligence, against the Mishcon Defendants)

98.     Plaintiffs repeat and reallege the allegations of Paragraphs 1-97 of the Complaint as though more fully set forth herein.

99.     Upon information and belief, Mishcon and Mishcon NY were affiliates.

100.    Upon information and belief, Mishcon was a partner in or owner of Mishcon NY.

101.    Mishcon identified Mishcon NY to the public as Mishcon's "New York Office."

102.    Upon information and belief, at the time that Ms. Leane retained Mishcon NY on behalf of ChanBond and IPNav, Mishcon's website held Mishcon NY out to the public as a part of Mishcon, rather than a separate entity.

103.    Upon information and belief, upon the closure of Mishcon NY, Mishcon authorized press releases describing the closure of Mishcon's "New York office."

104.    Based upon the nature of the relationship between Mishcon and Mishcon NY, Mishcon is liable for any malpractice or other tort committed by Mishcon NY or any of Mishcon NY's partners in their activities as Mishcon NY partners.

105.    In the alternative, regardless of the actual relationship between Mishcon and Mishcon NY, because Mishcon held Mishcon NY out to the public as an office of Mishcon, rather than a distinct entity as to which Mishcon had no liability, Mishcon should be estopped from denying liability for any torts of Mishcon NY or any of the Mishcon NY partners in their activities as partners of Mishcon NY.

106.    Additionally, Paragraph 17 of the Retention Agreement set forth that the obligations of the Retention Agreement would be binding on affiliates of Mishcon NY.

APP 037

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM
NYSCEF DOC. NO.

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 21 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 38 of 49   PageID 983

INDEX NO. 654614/2020
RECEIVED NYSCEF: 09/22/2020

107.   Upon information and belief, the language of Paragraph 17 of the Retention Agreement was form language that Mishcon NY included in some or all of its retention agreements.

108.   Upon information and belief, Mishcon gave general approval to Mishcon NY to use the language of Paragraph 17 of the Retention Agreement in Mishcon NY's retention agreements.

109.   Alternatively, upon information and belief, Mishcon was generally aware that Mishcon NY used the language of Paragraph 17 of the Retention Agreement in its engagement letters and did not take steps to prevent Mishcon NY from doing so.

110.   As such, Mishcon was bound by the Retention Agreement.

111.   Pursuant to Section 17 of the Retention Agreement, the retention of Mishcon NY inured to the benefit of ChanBond's affiliates.

112.   At the time of the retention, IPNav and ChanBond were under common control.

113.   At the time of the retention, IPNav and ChanBond were affiliates.

114.   In addition, as an assignee of a 22% interest in the Gross Recovery on the ChanBond Patents, IPNav was an "assign[] of any interest in the Patents" under Section 17 of the Retention Agreement.

115.   As such, pursuant to the express terms of the Retention Agreement, the Retention Agreement inured to IPNav's benefit.

116.   Moreover, ChanBond and IPNav had a community of interest relating to the ChanBond Patents and the litigation for which ChanBond had retained the Mishcon Defendants.

117.   IPNav and ChanBond were joint clients of the Mishcon Defendants.

18

APP 038

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM
INDEX NO. 654614/2020
NYSCEF DOC. NO.
Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 22 of 32
RECEIVED NYSCEF: 09/22/2020
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 39 of 49   PageID 984

118. At all relevant times, and until months after Raskin and Whitman left MdR for KWM, Leane reasonably believed IPNav and ChanBond were joint clients of the Mishcon Defendants.

119. Until late April 2020, Whitman and Raskin behaved as though IPNav and ChanBond were joint clients of the Mishcon Defendants.

120. For example, as indicated above and on other occasions, Whitman and Raskin would share with Leane the contents of their private conversations with Carter, which would have been privileged against Leane and IPNav but-for the fact that IPNav and ChanBond were joint clients of the Mishcon Defendants.

121. Moreover, Mishcon Defendants undertook to represent Leane, in her personal capacity, in connection with the discovery in the ChanBond litigations.

122. Mishcon Defendants communicated with Leane *as her counsel* in connection with the production of documents and her deposition in the ChanBond litigations.

123. On April 24, 2018, Whitman specifically represented, on the record, that he was appearing as Leane's personal counsel in addition to being counsel for ChanBond.

124. During a break in the April 24 deposition, while still representing Leane in her personal capacity (as well as IPNav and ChanBond generally in connection with the litigations as joint clients), Whitman advised Leane that issues with the production of documents – on which the Mishcon Defendants were expressly representing Leane in her personal capacity – required IPNav to terminate the ASA for the benefit of the litigation.

125. Whitman specifically noted that the benefit to the litigation would be to Leane's and IPNav's benefit as well.

APP 039

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM INDEX NO. 654614/2020
NYSCEF DOC. NO.                                                         RECEIVED NYSCEF: 09/22/2020

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 23 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 40 of 49   PageID 985

126.   Whitman specifically advised Leane that IPNav would not be harmed by terminating the ASA because ChanBond would restore IPNav to an identical economic position by means of a new agreement.

127.   Were the Mishcon Defendants not representing Leane and IPNav as joint clients, providing Plaintiffs with advice as to the advisability of terminating the ASA would have been unethical and in breach of Rule 4.3 of the Rules of Professional Conduct.

128.   Upon information and belief, Whitman was aware that Leane believed the Mishcon Defendants were representing her and IPNav as joint clients with ChanBond, in connection with the Termination Agreement.

129.   In the alternative, and to the extent that the Mishcon Defendants were not representing Leane and IPNav, the Mishcon Defendants should have known that Leane would reasonably perceive them as representing Lean and IPNav, including in connection with the Termination Agreement.

130.   Given the magnitude of the financial impact on IPNav of the termination of the ASA, no reasonably competent attorney would have counseled Leane and IPNav without documenting ChanBond's promise to restore IPNav to the identical economic position by means of a new agreement.

131.   Given the magnitude of the financial impact on IPNav of the termination of the ASA, no reasonably competent attorney would have advised Leane and IPNav to execute the Termination Agreement as drafted.

132.   Given the magnitude of the financial impact on IPNav of the termination of the ASA, no reasonably competent attorney would have failed to advise Leane and IPNav of the risks of executing the Termination Agreement as drafted.

20

APP 040

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM
NYSCEF DOC. NO.

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 24 of 32

Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 41 of 49   PageID 986

INDEX NO. 654614/2020

RECEIVED NYSCEF: 09/22/2020

133.   In the alternative, and to the extent that the Court finds that the Mishcon Defendants were not representing Plaintiffs, the Mishcon Defendants negligently or intentionally violated their duty to Plaintiffs as third parties by counseling them to execute the Termination Agreement and allowing Plaintiffs to believe that the Mishcon Defendants were their counsel.

134.   But for the Mishcon Defendants' actions, breaches, and advice discussed above, IPNav would not have executed the Termination Agreement.

135.   As a result, Plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably believed to be in the millions of dollars.

## COUNT II
### (Breach of Fiduciary Duty, against all Defendants)

136.   Plaintiffs repeat and reallege the allegations of Paragraphs 1-135 of this Complaint as though more fully set forth herein.

137.   Plaintiffs were clients of the Mishcon Defendants until Raskin and Whitman left MdR for KWM.

138.   Upon Raskin and Whitman joining KWM, and prior to KWM implicitly terminating the representation by abandoning Plaintiffs and joining in ChanBond's attacks on Plaintiffs, Plaintiffs were clients of Raskin, Whitman, and KWM.

139.   Beginning in or about April 2020, Raskin and Whitman joined ChanBond in arguing, contrary to the interests of Plaintiffs, that ChanBond had no obligation to reinstate IPNav's 22% interest in the Gross Recovery on the ChanBond Patents.

140.   Beginning in or about Spring 2020, Raskin and Whitman joined ChanBond in arguing, contrary to the interests of Plaintiffs, that the IPNav ASA was unenforceable *ab initio*.

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM
NYSCEF DOC. NO.                                                                    INDEX NO. 654614/2020
                                                                                   RECEIVED NYSCEF: 09/22/2020

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 25 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 42 of 49   PageID 987

141.    Beginning in or about Spring 2020, Raskin and Whitman joined ChanBond in arguing, contrary to the interests of Plaintiffs, that the ChanBond had never agreed to reinstate IPNav's 22% interest in the Gross Recovery on the ChanBond Patents.

142.    Beginning in or about Spring 2020, Raskin and Whitman joined ChanBond in arguing, contrary to the interests of Plaintiffs, that Leane had committed fraud in executing the IPNav ASA.

143.    In so doing, Raskin, Whitman, and KWM breached their fiduciary duty to Plaintiffs.

144.    In so doing, Raskin, Whitman, and KWM implicitly terminated their representation of Plaintiffs, dropping Plaintiffs "like a hot potato" in order to maintain their relationship with ChanBond once ChanBond and Plaintiffs were in conflict.

145.    As a result of such conduct, Plaintiffs have incurred and will continue to incur significant costs and expenses, including costs and expenses relating to asserting their rights as against ChanBond.

146.    Upon information and belief, had Raskin and Whitman advised ChanBond that they would refuse to deny the agreement ChanBond had made with their former clients, IPNav and Leane, to restore IPNav's 22% interest, ChanBond would have executed the required agreement.

147.    Instead, in order to maintain the relationship with ChanBond for the benefit of themselves and KWM, Whitman and Raskin have asserted legal and factual positions they know to be false and/or without merit, to the detriment of their former clients.

148.    In so doing, Whitman, Raskin, and KWM breached their fiduciary duty to Plaintiffs.

APP 042

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM
NYSCEF DOC. NO.

INDEX NO. 654614/2020
RECEIVED NYSCEF: 09/22/2020

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 26 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 43 of 49   PageID 988

149.    In so doing, Whitman, Raskin, and KWM breached their duty of loyalty to Plaintiffs.

150.    As a result of such conduct, Plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably believed to be in the millions of dollars.

151.    In addition, Whitman, Raskin, and KWM's conduct violated the "hot potato" rule, dropping Plaintiffs as clients in order to preserve their relationship with ChanBond.

152.    KWM's continued representation of ChanBond in the patent litigations is likely to require KWM to advise ChanBond on litigation matters as to which ChanBond, on the one hand, and Leane and IPNav, on the other, have divergent and conflicting interests.

153.    Indeed, KWM has already done so.

154.    For example, to protect the value of the shares in Unified that Leane received as partial consideration for her sale of ChanBond, and to protect Unified's ability to pay the $5,000,000 promissory note that was the remainder of the consideration, the ISA contains an anti-assignment provision barring Unified or ChanBond from selling, transferring, or spinning off any interest in the ChanBond's material assets without Leane's written consent.

155.    The ChanBond Patents and litigations were ChanBond's material assets.

156.    A license is an interest in the ChanBond Patents.

157.    Because any settlement of the ChanBond litigations would involve licensing the ChanBond Patents to the defendants, counsel for Leane reached out to KWM for confirmation that ChanBond would not settle the litigations without Leane's consent to the terms thereof, as required by the ISA.

158.    KWM refused to do so, and in fact argued that Unified and ChanBond did not need Leane's consent to patent licenses under the ISA.

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM
NYSCEF DOC. NO.

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 27 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 44 of 49   PageID 989

INDEX NO. 654614/2020
RECEIVED NYSCEF: 09/22/2020

159.    In so doing, KWM adopted a position directly contrary to the interests of their former clients.

160.    Based on the foregoing, KWM, Whitman, and Raskin should be disqualified from representing ChanBond in the ChanBond litigations.

161.    Alternatively, KWM, Whitman, and Raskin should be required to disgorge to Plaintiffs some or all of benefit KWM, Whitman, and Raskin obtain as a result of their breaches of their duties to Plaintiffs, including but not limited to their fee in the ChanBond litigations.

## COUNT III
### (Breach of Contract, against all Defendants)

162.    Plaintiffs repeat and reallege the allegations of Paragraphs 1-161 of this Complaint as though more fully set forth herein.

163.    Raskin and Whitman specifically represented to Plaintiffs that, if IPNav agreed to terminate the ASA, they would ensure that IPNav was restored to its economic position by means of a later-executed agreement.

164.    That representation was a promise by Raskin and Whitman to achieve a specific result for their clients, IPNav and Leane.

165.    Raskin and Whitman have not achieved the promised result.

166.    Rather, they have failed to achieve that result and neglected to take steps that would have made that result possible, both while at MdR and while at KWM.

167.    For instance, during the time that Carter was indicating he still intended to restore IPNav's 22% interest, Whitman and Raskin could have, but did not, provided written confirmation that ChanBond had agreed to reinstate IPNav as consideration for Ms. Leane executing the Termination Agreement.

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM    INDEX NO. 654614/2020
NYSCEF DOC. NO.    Case 1:20-cv-08127-PGG    Document 1-1    Filed 09/29/20    Page 28 of 32    RECEIVED NYSCEF: 09/22/2020
Case 3:20-cv-03097-B    Document 26    Filed 10/27/20    Page 45 of 49    PageID 990

168. Such written confirmation would have prevented ChanBond from later reneging on the agreement, by rendering any attempt to do so.

169. Providing such written confirmation would not have violated any duty of Raskin or Whitman to ChanBond, as at the time ChanBond was still expressing an intent to follow through on its agreement.

170. Whitman and Raskin's failure to provide the promised result constitutes a breach of contract.

171. Each of MdR and KWM are liable for Whitman's and Raskin's breach of contract.

172. Plaintiffs have been harmed by Defendants' breach of contract in an amount to be determined at trial, but which is reasonably believed to be in the millions of dollars.

**COUNT IV**
(Aiding and Abetting Breach of Fiduciary Duty, against Raskin, Whitman, and KWM)

173. Plaintiffs repeat and reallege the allegations of Paragraphs 1-172 of this Complaint as though more fully set forth herein.

174. IPNav and ChanBond had entered into a common interest agreement dated as of April 9, 2015, reflecting their common interest in obtaining a favorable outcome to ChanBond's licensing-and-litigation campaign.

175. IPNav executed the Termination Agreement at the urgings of Whitman and Raskin for the express purpose of benefiting ChanBond's litigation success, in the pursuit of that common interest.

176. In so doing, IPNav reposed trust and faith in ChanBond that ChanBond would fulfill its promise to later restore IPNav to its economic position prior to terminating the ASA.

APP 045

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM INDEX NO. 654614/2020
NYSCEF DOC. NO. Case 1:20-cv-08127-PGG Document 1-1 Filed 09/29/20 Page 29 of 32 RECEIVED NYSCEF: 09/22/2020
Case 3:20-cv-03097-B Document 26 Filed 10/27/20 Page 46 of 49 PageID 991

177.   IPNav did so because it, Raskin, Whitman, MdR, and ChanBond were dealing with each other not as arms'-length participants in the market, but as entities with a common purpose dealing with each other in a relationship of trust and confidence.

178.   Under the circumstances, ChanBond had a fiduciary duty to IPNav to fulfill the executory portion of the Termination Agreement and provide IPNav with the agreed consideration therefor: a new agreement restoring IPNav's 22% interest in the Gross Recovery on the ChanBond Patents.

179.   Whitman, Raskin, and KWM were fully aware of ChanBond's fiduciary duty to IPNav in that regard.

180.   ChanBond's refusal to execute the contemplated agreement is a breach of its fiduciary duty to IPNav.

181.   Despite that, Whitman, Raskin, and KWM have aided and abetted ChanBond's breach of its fiduciary duty to IPNav.

182.   As a result of the foregoing, Plaintiffs have been injured in an amount to be proven at trial, but which is reasonably believed to be in the millions of dollars.

## COUNT V
### (In the Alternative, Aiding and Abetting Breach of Contract Under Texas Law, against Raskin, Whitman, and KWM)

183.   Plaintiffs repeat and reallege the allegations of Paragraphs 1-182 of this Complaint as though more fully set forth herein.

184.   The vast bulk of the interactions described herein, including Ms. Leane's deposition, occurred while the parties were in Texas.

185.   Plaintiffs are based in Texas.

26

APP 046

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM
NYSCEF DOC. NO. Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 30 of 32 09/22/2020
INDEX NO. 654614/2020
RECEIVED NYSCEF: 09/22/2020
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 47 of 49   PageID 992

186.    To the extent that Defendants deny that their relationship with Plaintiffs is governed by the Retention Agreement, and the finder of fact concludes that Defendants' relationship with Plaintiffs is not governed by the Retention Agreement, Plaintiffs' claims against Defendants would be governed by Texas law.

187.    Texas law recognizes a claim for aiding and abetting a breach of contract.

188.    ChanBond was contractually obligated to enter into an agreement restoring IPNav's 22% interest in the Gross Recovery on the ChanBond Patents.

189.    Whitman, Raskin, and KWM were aware of said contractual obligation.

190.    Whitman, Raskin, and KWM undertook a course of conduct designed deliberately to aid ChanBond in its attempts to breach said contractual obligation.

191.    As a result of the foregoing, Plaintiffs have been harmed in an amount to be proven at trial, but which is reasonably believed to be in the millions of dollars.

**COUNT VI**
(In the Alternative, Fraud or Negligent Misrepresentation, against Whitman and MdR)

192.    Plaintiffs repeat and reallege the allegations of Paragraphs 1-191 of this Complaint as though more fully set forth herein.

193.    This count is pled in the alternative, to the extent that Defendants assert that ChanBond never agreed to restore IPNav to its prior economic position in exchange for terminating the ASA.

194.    In his discussions with Ms. Leane relating to the Termination Agreement, Whitman assured Ms. Leane that ChanBond would agree to restore IPNav to its prior economic position if she terminated the ASA.

195.    Whitman subsequently urged Ms. Leane to sign the Termination Agreement on the basis of their prior discussion.

APP 047

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM INDEX NO. 654614/2020
NYSCEF DOC. NO.                                                                          RECEIVED NYSCEF: 09/22/2020

Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 31 of 32
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 48 of 49   PageID 993

196.    Given the prior representation by Whitman, Whitman and MdR had an obligation to affirmatively disclose to Leane that ChanBond had not agreed to restore IPNav to its prior economic position if she terminated the ASA.

197.    Given the relationship between Leane and IPNav on the one hand, and Whitman, Raskin, and MdR on the other, Whitman and MdR had an obligation to affirmatively disclose to Leane that ChanBond had not agreed to restore IPNav to its prior economic position if she terminated the ASA.

198.    To the extent that Whitman deliberately decided not to disclose to Ms. Leane that ChanBond had not agreed to restore IPNav to its prior economic position, upon information and belief he did so out of concern that Ms. Leane would not execute the Termination Agreement if he conveyed that information.

199.    If so, Whitman's failure to disclose that information was fraudulent.

200.    In the alternative, to the extent that Whitman and MdR simply forgot to disclose ChanBond's lack of agreement, or to confirm with ChanBond that it would restore IPNav to its prior economic position as Whitman had promised, Whitman and MdR were negligent in failing to do so.

201.    Plaintiffs were damaged by Whitman's and MdR's failures of disclosure in an amount to be proven at trial, but which is reasonably believed to be in the millions of dollars.

**WHEREFORE**, Plaintiffs respectfully request a judgment:

(1) On the First through Sixth Causes of Action, in an amount to be proven at trial, punitive damages to the extent applicable, and an award of costs, fees, and interest as allowed by statute or the parties' agreements;

28

APP 048

FILED: NEW YORK COUNTY CLERK 09/22/2020 11:06 AM
INDEX NO. 654614/2020
NYSCEF DOC. NO. Case 1:20-cv-08127-PGG   Document 1-1   Filed 09/29/20   Page 32 of 32   RECEIVED NYSCEF: 09/22/2020
Case 3:20-cv-03097-B   Document 26   Filed 10/27/20   Page 49 of 49   PageID 994

(2) On the Second Cause of Action, an order barring KWM, Raskin, and Whitman from representing ChanBond in the ChanBond litigations, disgorgement of fees related to such representation, and an award of costs, fees, and interest as allowed by statute or the parties' agreements; and

(3) Such other and further relief as the Court deems just and proper.

Respectfully submitted,

KAMERMAN, UNCYK, SONIKER & KLEIN P.C.

By: _____*Akiva M. Cohen*_____
     Akiva M. Cohen, Esq.
1700 Broadway, 16th Floor
New York, New York  10019
(212) 400-4930
acohen@kusklaw.com

*Attorneys for Plaintiffs*

29

APP 049