IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DEIRDRE LEANE AND IPNAV, LLC ,** | § § § | |
| Plaintiffs, | § | Civil Action No. 3:20-cv-03097-B |
| v. | § § | |
| **UNIFIEDONLINE, INC and CHANBOND, LLC,** | § § § § | |
| Defendants. | | |

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO AMEND DOCKET NO. 47

Plaintiffs Deirdre Leane ("Leane") and IPNAV, LLC respectfully submit this Brief in Support of their Motion to Amend Docket No. 47, pursuant to Rules 52(b), 60(b)(6), and Local Rule 7, to vacate that portion of the Court's decision and order denying their application for a preliminary injunction (the "Decision") that addressed the Court's findings regarding the proper construction of the Interest Sale Agreement ("ISA") between Leane and Defendants ChanBond LLC ("ChanBond") and UnifiedOnline, Inc. ("Unified").[1]

## I.
## INTRODUCTION

As the Court is aware, the ISA contains an arbitration provision that requires all disputes regarding the ISA to be resolved in arbitration, and thus committed the interpretation of the ISA to the authority of the arbitrators, not any court. Plaintiffs commenced arbitration in which they asked the arbitration panel to do just that and invoked the Court's jurisdiction solely for purposes of obtaining injunctive relief to maintain the *status quo* pending arbitration. While that application

---

[1] Filed concurrently herewith is Plaintiffs' Appendix in Support of their Motion to Amend Docket No. 47 ("APP.__").

for injunctive relief asked the Court to evaluate Plaintiffs' likelihood of success on the merits, it did so only in the context of seeking injunctive relief; the Court's role, *if the other elements for injunctive relief were satisfied*, was to assess how the arbitrators might eventually interpret the ISA.

Respectfully, the Court's Decision exceeded that limited role. Having determined that Plaintiffs had not established irreparable harm, and therefore could not receive injunctive relief even if successful on the merits, the Court's interpretation of the ISA was not necessary to its ultimate decision, and therefore amounted to a mere advisory opinion regarding its interpretation of the ISA. That is particularly true where the Court's interpretation of the ISA in the Decision relied on a grammatical theory – the "series qualifier canon" – that Defendants raised for the first time in their surreply and which the Court specifically prevented Plaintiffs from addressing at the hearing and in oral argument. Plaintiffs do not intend to seek appellate review of the Court's determination as to irreparable harm, in light of the closeness of the question and timing issues such an application would present. Given that, and that the ultimate interpretation shall be decided in arbitration, the Court should vacate that portion of its Decision that addressed interpretation of the ISA.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

Given the Court's familiarity with the record, Plaintiffs respectfully incorporate by reference the Court's recitation of the factual background in the Decision. At the hearing referenced therein, Plaintiffs attempted to address Defendants' argument that the "series qualifier canon" required interpreting the ISA as allowing ChanBond to license the Patents absent Leane's consent. Declaration of Akiva M. Cohen, ¶ 3 (APP 03). The Court specifically refused to take argument on that issue, directing counsel that it was not concerned with the canons of construction

and would not hear argument addressing them, given that the ISA did not, in the anti-assignment provision, expressly mention the words "settlement" or "license." *Id.*

On November 12, 2020, the Court issued the Decision. In the Decision, the Court found that Plaintiffs had not established irreparable harm, Decision at 10-13, and that injunctive relief would not be available for that reason alone. *See* Dkt-No. 47; Decision at 12-13 (*quoting White v. Carlucci*, 862 F.2d 1209, 1212 (5th Cir. 1989) for the proposition that "no injunction may issue" where a plaintiff fails to establish irreparable harm "by independent proof"). Nevertheless, the Court also provided its "interpretation of the anti-assignment provision," Decision at 10, relying on the series qualifier canon, *id.* at 7, and making factual findings about "the parties' apparent intent upon entering the ISA," *id.*, and what Leane "knew or should have known" and "was aware of" at the time she entered the ISA. *Id.* at 9. On that basis, the Court found that Leane had not established a likelihood of success on the merits. *Id.* at 6-7.

Respectfully, because the Court's finding as to irreparable harm rendered the Court's opinion regarding the interpretation of the contract unnecessary to its ruling and therefore a mere advisory opinion regarding an issue that the parties contractually committed to the province of the arbitrators, the Court exceeded its jurisdiction in offering that opinion. As such, the Court should grant the instant motion and vacate that portion of its Decision which addressed the interpretation of the ISA.

### III.
### ARGUMENT AND AUTHORITIES

It is well-settled that where parties to a contract agree that disputes regarding the contract will be addressed in arbitration, the correct interpretation of a disputed contractual provision is for the arbitrators to determine, not the courts. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003) (vacating State Supreme Court ruling interpreting contract, and arbitral decision relying on

such interpretation, because "this matter of contract interpretation should be for the arbitrator, not the courts, to decide"); *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S. Ct. 1358, 1362, 4 L. Ed. 2d 1424 (1960) ("interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different"); *City of Meridian, Miss. v. Algernon Blair, Inc.*, 721 F.2d 525, 528–29 (5th Cir. 1983) (courts have no authority to review substance of arbitrable claims).

The ability of courts to consider the likelihood of success on the merits of a motion for an injunction in aid of arbitration has occasioned comment and confusion among the courts. *See RGI, Inc. v. Tucker & Assocs., Inc.*, 858 F.2d 227, 229–30 (5th Cir. 1988) (noting circuit split on issue of whether injunctive relief is available at all). While a minority of courts have held that they may not grant injunctive relief because assessing likelihood of success would invade the province of the arbitrators, *see*, *e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286, 1292 (8th Cir. 1984) ("judicial inquiry requisite to determine the propriety of injunctive relief necessarily would inject the court into the merits of issues more appropriately left to the arbitrator"), the majority view is that the Court could have granted injunctive relief in aid of arbitration and therefore could assess likelihood of success on the merits where that assessment was required to determine whether Plaintiffs were entitled to injunctive relief. *RGI*, 858 F.2d at 229 (noting that the majority of circuits allow injunctions in aid of arbitration).

However, where, as here, the assessment of the merits was not necessary to denial of injunctive relief, the Court had no basis to address and opine on the proper interpretation of the contract at all, as that was a subject the parties committed to the jurisdiction of the arbitrators. *See*,

*e.g.*, *United Steelworkers of Am.*, 363 U.S. at 568 (explaining that courts "have no business weighing the merits of [an arbitrable claim] considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim"); *State Farm Fire & Cas. Co. v. Hutchins*, 927 F.2d 605 (6th Cir. 1991) (where interpretation of contract at issue was matter for the state courts, the Federal District Court should not have addressed it and "declaratory judgment entered below is merely an advisory opinion"); *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1560 (11th Cir. 1988) (once court had determined to grant judgment n.o.v., ruling with respect to damages was inappropriate advisory opinion); *Backjoy Orthotics, LLC v. Forvic Int'l Inc.*, No. 614CV249ORL41TBS, 2015 WL 12915119, at *4 (M.D. Fla. July 28, 2015) (where plaintiff was awarded injunctive relief on trade secret claims, and additional claims raised in plaintiff's motion would not impact the scope of that relief, Court could not address likelihood of success of the merits on those claims: "In a very real sense, judicial commentary on these claims, without altering the ultimate relief, would effectively be advisory"). *See also Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649 (3d Cir. 1990) (in declaratory judgment context, unnecessarily "[c]onstruing a contract and making law without finding the necessary facts constitutes advisory opinion writing, and that is constitutionally forbidden"); *Victory v. Barber*, No. 1:05CV1578LJODLBP, 2009 WL 465892, at *1 (E.D. Cal. Feb. 24, 2009) ("Plaintiff is seeking … an advisory opinion as to his likelihood of success on a FOIA complaint ... Plaintiff is advised that the court may not issue an advisory opinion"); *Frank Calandra, Inc. v. 4i Consulting, Inc.*, No. CV 16-159, 2016 WL 2895133, at *5 (W.D. Pa. May 18, 2016) (declining to issue declaratory judgment interpreting contract where "any judgment entered by this Court does not necessarily bind a Canadian Court to the same result, making this Court's opinion on the matter essentially advisory, something that this Court is generally expected to avoid").

Here, the Court ruled that Plaintiffs had not established irreparable harm, a ruling that in and of itself required denial of injunctive relief. Decision at 12-13. Having made that determination, the Court "ha[d] no business weighing the merits," *United Steelworkers of America*, 363 U.S. at 568, because it had already rendered its view of the proper interpretation of the contract irrelevant to the outcome of the motion, and therefore entirely advisory. *Backjoy Orthotics*, 2015 WL 12915119 at *4. Under the limited circumstances where the ultimate determination of contract interpretation is left to a panel of arbitrators, and the Court's interpretation became advisory once it found a lack of irreparable harm, the Court should not have interpreted the contract in the Decision. That is particularly true given the Court's reliance on an argument raised by Defendants for the first time on surreply, and as to which the Court precluded Plaintiffs from responding. As such, the Court should amend its decision, pursuant to Rules 52 and 60 of the Federal Rules of Civil Procedure, to delete its findings with respect to the interpretation of the ISA. *See Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986) (amendment under Rule 52 is appropriate to "correct manifest errors of law" as well as fact).

## IV.
## CONCLUSION

Given that likelihood of success on the merits is an element of injunctive relief, the Court's decision to address it in the Decision was reasonable. But, in these unique circumstances – a motion for a preliminary injunction, in connection with a contract that provided for arbitration, and as to which the Court found that injunctive relief was separately unavailable for lack of irreparable harm – it was actually unnecessary, and therefore improper, for the Court to opine as to the proper interpretation of the contract. As such, the Court should grant Plaintiffs' motion, under Rules 52 and 60(b), and vacate that portion of the Decision as addressed the interpretation of the relevant contractual provisions.

Respectfully submitted,

*/s/ J. Sean Lemoine*
J. Sean Lemoine
Texas State Bar No. 24027443
sean.lemoine@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

**ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

On November 18, 2020, a conference was held between Akiva M. Cohen (counsel for the Plaintiffs) and Linda Stahl (counsel for the Defendants). Defendants are opposed to the relief sought in this motion.

*/s/ J. Sean Lemoine*
J. Sean Lemoine

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2020, a true and correct copy of the foregoing documents was served through the Court's CM/ECF System on all counsel of record.

*/s/ J. Sean Lemoine*
J. Sean Lemoine